1 | BENJAMIN B. WAGNER
United States Attorney
2 | MATTHEW D. SEGAL
Assistant U.S. Attorney
3 | 501 I Street, Suite 10-100
Sacramento, California  95814
4 | Telephone: (916) 554-2708

**FILED**

JUN – 8 2011

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

SEALED

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

STEVEN ZINNEL, and
DERIAN EIDSON,

                    Defendants.

CASE NO. 2:11 CR 0234 FCD

VIOLATIONS: 18 U.S.C. § 152 (7) - Bankruptcy Fraud; 18 U.S.C. § 152(1)- Bankruptcy Fraud; 18 U.S.C. § 1956(h) - Money Laundering Conspiracy (2 Counts); 18 U.S.C. § 1956 - Money Laundering (10 Counts); 18 U.S.C. § 1957 - Transactions in Criminally Derived Property (2 Counts); 18 U.S.C. § 982(a)(1), 18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c) - Criminal Forfeiture

I N D I C T M E N T

COUNT ONE:     [18 U.S.C. § 152(7) -Bankruptcy Fraud

The Grand Jury charges:

STEVEN ZINNEL, and
DERIAN EIDSON,

defendants herein, as follows:

I. DEFINITIONS

1.   At all times material herein,

1

1    a.    Defendant STEVEN KEITH ZINNEL ("STEVEN ZINNEL") was an
2 individual residing in Gold River in Sacramento County in the State
3 and Eastern District of California.

4    b.    Defendant DERIAN EIDSON was an individual residing in Yorba
5 Linda, Orange County, California.  Defendant EIDSON was member of the
6 bar of the State of California and maintained a client trust account
7 and a personal bank account at Washington Mutual Bank.

8    c.    Corporate Control, Inc. was a California corporation owned
9 and controlled by defendant STEVEN ZINNEL.

10   d.    Done Deal was a California corporation whose titular owner
11 and president was defendant DERIAN EIDSON.

12   e.    Company 1, a company known to the Grand Jury, was a
13 California corporation engaged in the business of electrical utility
14 infrastructure contracting and whose titular owner was Nominee 1, a
15 person known to the Grand Jury.

16   f.    4Results, LLC was a California Limited Liability
17 corporation that was actually controlled by defendant STEVEN ZINNEL.

18   g.    Auto and Boat Store, Inc. was a California corporation that
19 was actually controlled by defendant STEVEN ZINNEL.

20   h.    "The Luyung Property" Sacramento County Parcel No.
21 072-0450-015-0000 was real estate in Rancho Cordova, California.

22                          II. <u>BACKGROUND</u>

23 2.   Defendant STEVEN ZINNEL separated from his then-wife in 1999 and
24 began what became a contentious divorce proceeding.  In April and
25 July of 2001, defendant STEVEN ZINNEL emailed his then-wife and told
26 her that he had retained counsel for bankruptcy and that his company
27 was going to file for bankruptcy.  On July 15, 2001, Defendant STEVEN
28 ZINNEL,  emailed his then-wife that, when his company went into

                                    2

1  bankruptcy, he would draw a smaller salary and her support would
2  "almost go to zero."  He went on, "[A]s soon as the bank and the
3  bonding company sue me for my personal obligation, I will file
4  personal bankruptcy as well."

5                III.  <u>PRE-FILING FRAUDULENT TRANSFERS AND CONCEALMENT</u>
6  3.    Defendant STEVEN ZINNEL, aided and abetted by DERIAN EIDSON,
7  between in or about October 2001 and on or about July 20, 2005, in a
8  personal capacity and as an officer and agent of at least one
9  corporation, in contemplation of a case under Title 11, United States
10 Code, by himself, and with intent to defeat the provisions of Title
11 11, did knowingly and fraudulently transfer and conceal some of his
12 property and the property of said corporation.

13                          IV.  <u>WAYS AND MEANS</u>
14 4.    In knowingly and fraudulently transferring and concealing
15 property in contemplation of his bankruptcy, defendant STEVEN ZINNEL
16 employed, among others, the following ways and means:

17        a.    In or about October 2001, defendant STEVEN ZINNEL and
18 Nominee 1 formed Company 1.  They agreed that defendant STEVEN ZINNEL
19 would be a "silent partner."  According to the agreement between
20 defendant STEVEN ZINNEL, Nominee 1, and another person, defendant
21 STEVEN ZINNEL "or his designated entity or individual," would own
22 shares of common stock in Company 1.  According to the agreement,
23 defendant STEVEN ZINNEL "or his designated entity or individual"
24 would put up all the initial startup capital.  Also, according to the
25 agreement, once certain conditions were satisfied,, defendant ZINNEL
26 would get back his initial capital contribution of $600,000 with 10%
27 interest per annum with the remaining equity distributed in
28 proportion to ownership at the time.  Nominee 1 was to be the

                                    3

President, Chief Financial Officer, and Corporate Secretary.
Defendant STEVEN ZINNEL created and filed Company 1's articles of
incorporation with the California Secretary of State.  Nominee 1
opened a bank account for Company 1 by placing $1,500 of his own
money into the account.  Defendant STEVEN ZINNEL contributed
approximately $300,000 worth of funds to start Company 1. Defendant
STEVEN ZINNEL's name appeared nowhere in this or any public filings
of Company 1.

b.   On or about March 20, 2002, 4Results was formed as a
California LLC.

c.   On or about January 26, 2004, Corporate Control, Inc. sent
a wire transfer in the amount of $169,804.27 to a bank account in the
name of 4Results.  The true controllers of this bank account were
persons associated with defendant STEVEN ZINNEL known to the Grand
Jury.

d.   On or about January 27, 2004, 4Results purchased a
cashier's check for $169,804.27 addressed to the then-titular owner
of the Luyung Property.

e.   On or about February 17, 2004, defendant STEVEN ZINNEL
convinced another person, known to the Grand Jury, to serve as
4Results's agent for service of process.  Defendant ZINNEL told that
person that his purpose was to control 4Results without using
ZINNEL'S name because ZINNEL's ex-wife had taken his money from his
other businesses, and defendant ZINNEL wanted to keep one separated.

f.   On or about February 18, 2004, 4Results acquired title to
the Luyung Property.

g.   On or about June 7, 2004, Auto and Boat Store, Inc. was
formed as a California Corporation held in title by Nominee 2, a

4

1  person known the the Grand Jury, but the Corporation was actually
2  controlled by STEVEN ZINNEL.

3       h.   On or about June 10, 2004, Auto and Boat Store, Inc. took
4  title to the Luyung Property from 4Results, LLC.

5       i.   On or about July 5, 2004, defendant DERIAN EIDSON formed
6  Done Deal as a California corporation.

7       j.   On or about July 13, 2004, defendants STEVEN ZINNEL and
8  DERIAN EIDSON created a document purporting to assign defendant
9  STEVEN ZINNEL's interest in Company 1 to Done Deal.

10      k.   On or about October 4, 2004, defendant DERIAN EIDSON opened
11 a bank account in the name of Done Deal.

12      l.   On or about February 22, 2005, defendant DERIAN EIDSON
13 added defendant STEVEN ZINNEL as a signatory on Done Deal's account.
14 Defendant STEVEN ZINNEL proceeded to use the funds in the Done Deal
15 account to for his personal expenses.

16                        V. BANKRUPTCY FILING

17 5.   On or about July 20, 2005, in the State and Eastern District of
18 California, defendant STEVEN ZINNEL filed and caused to be filed a
19 voluntary bankruptcy petition in his name, case number 05-28800-C7,
20 under Chapter 7 of Title 11 of the United States Code, in the United
21 States Bankruptcy Court for the Eastern District of California.   On
22 the schedule of assets and liabilities filed in his bankruptcy case
23 defendant STEVEN ZINNEL disclosed $842,620.00 in assets, excluding
24 any interests in assets transferred as alleged in paragraphs 4(a)
25 through 4(l) above, $2,013,896.29 in secured debt, and $4,036,466.25
26 in unsecured debt.

27 All in violation of Title 18, United States Code, Sections 2 and
28 152(7).

COUNT TWO:     [18 U.S.C. § 152(1) - Bankruptcy Fraud

The Grand Jury further charges that:

STEVEN ZINNEL, and
DERIAN EIDSON,

defendants herein, as follows:

1.    The allegations set forth in Paragraphs 1, 2, 4, and 5 of Count 1 are realleged as if fully set forth herein.

2.    Between on or about July 20, 2005, and on or about September 6, 2006, in the State and Eastern District of California, defendants STEVEN ZINNEL and DERIAN EIDSON did knowingly and fraudulently conceal from a custodian, trustee, and other officer of the court charged with the control and custody of property, and from creditors, in the bankruptcy case captioned "In re Steven Zinnel," Bankruptcy Case Number 05-28800-C7, the property set forth below belonging to the estate of the debtor, defendant STEVEN ZINNEL:

    a.    defendant STEVEN ZINNEL's interest in Company 1;

    b.    payments defendant STEVEN ZINNEL was receiving from Company 1 through Done Deal;

    c.    defendant STEVEN ZINNEL's interest in Done Deal's bank account;

    d.    defendant STEVEN ZINNEL's interest in 4Results;

    e.    defendant STEVEN ZINNEL's interest in Auto and Boat Store;

    f.    defendant STEVEN ZINNEL's interest in the Luyung Property.

3.    To further the concealment of assets, defendant STEVEN ZINNEL made the following false statements, among others:

    a.    On or about August 18, 2005, defendant STEVEN ZINNEL signed and filed with the Bankruptcy Court a "Summary of Schedules" with attached schedules of his assets and liabilities, declaring under

1   penalty of perjury therein that all of the information contained in

2   them was true and correct.   The Summary of Schedules and attached

3   schedules omitted any mention of defendant STEVEN ZINNEL interest in

4   Auto and Boat Store, 4Results, Done Deal, the Luyung Property, and

5   Company 1.

6       b.   On or about August 18, 2005, defendant STEVEN ZINNEL signed

7   and filed with the Bankruptcy Court a "Statement of Financial

8   Affairs," declaring under penalty of perjury therein that all of the

9   information contained in it was true and correct.   Question 18 of the

10  Statement of Financial Affairs concerned "Nature, location, and name

11  of business."   It stated,

> If the debtor is an individual, list the names, taxpayer
> identification numbers, nature of businesses, and beginning and
> ending dates of all businesses in which the debtor was an
> officer, director, partner, or managing executive of a
> corporation, partnership, sole proprietorship, or was a self-
> employed professional within the six years immediately preceding
> the commencement of this case, or in which the debtor owned 5
> percent or more of the voting or equity securities within six
> years immediately preceding the commencement of this case.

17  Defendant STEVEN ZINNEL omitted any mention of Auto and Boat Store,

18  4Results, Done Deal, and Company 1 from his answer to Question 18.

19      c.   On or about August 24, 2005, defendant STEVEN ZINNEL

20  testified under oath in a hearing of creditors called a "341

21  Hearing."

22          i.   In the 341 Hearing, defendant STEVEN ZINNEL falsely

23  stated under oath that he had no property that was not listed on his

24  schedules; and

25          ii.   In the 341 Hearing, defendant STEVEN ZINNEL falsely

26  stated under oath that all of Corporate Control's assets had gone to

27  First Bank and Trust in 2002.

28  4.   To further the concealment of assets, defendants STEVEN ZINNEL

                                    7

1  and DERIAN EIDSON employed the following ways and means, among

2  others:

3      a.   Defendant STEVEN ZINNEL used Auto and Boat Store to

4  disguise defendant STEVEN ZINNEL's control over the Luyung Property;

5      b.   Company 1 made payments to defendant STEVEN ZINNEL through

6  checks to Done Deal;

7      c.   The checks to Done Deal were deposited into the Done Deal

8  bank account; and

9      d.   defendant STEVEN ZINNEL used the Done Deal bank account to

10 pay for his own wine, travel, groceries, restaurant meals, and other

11 personal expenses.

12 5.   On or about September 6, 2006, defendant STEVEN ZINNEL'S Chapter

13 7 Bankruptcy was discharged.

14 All in violation of Title 18, United States Code, Sections 2 and

15 152(1).

16 <u>COUNT THREE</u>:   [18 U.S.C. § 1956(h) - Money Laundering Conspiracy]

17      The Grand Jury further charges:

18                       STEVEN ZINNEL, and
                          DERIAN EIDSON,
19

20 defendants herein, as follows:

21                       I.  <u>CONSPIRACY</u>

22  1.  Paragraphs 1 through 5 of Count Two are realleged as if fully

23 set forth herein.

24  2.  From on or about September 6, 2006 through on or about July 7,

25 2008, in the State and Eastern District of California and elsewhere,

26 defendants STEVEN ZINNEL and DERIAN EIDSON did knowingly combine,

27 conspire, and agree with each other and with at least one other

28 person known to the Grand Jury to commit offenses against the United

8

1   States in violation of Title 18, United States Code, Sections 1956

2   and 1957, to wit:

3          a.   to knowingly conduct and attempt to conduct financial
       transactions affecting interstate commerce, which transactions
4      involved the proceeds of specified unlawful activity, that is
       bankruptcy fraud, in violation of 18 U.S.C. § 152, knowing that
5      the transactions were designed in whole and in part to conceal
       and disguise the nature, location, source, ownership, and
6      control of the proceeds of specified unlawful activity, and that
       while conducting and attempting to conduct such financial
7      transactions, knew that the property involved in the financial
       transactions represented the proceeds of some form of unlawful
8      activity, in violation of Title 18, United States Code, Section
       1956(a)(1)(B)(i); and
9
           b.   to knowingly engage and attempt to engage in monetary
10     transactions by, through, and to a financial institution,
       affecting interstate and, in criminally derived property of a
11     value greater than $10,000, such property having been derived
       from a specified unlawful activity, that is bankruptcy fraud, in
12     violation of Title 18, United States Code, Section 152, in
       violation of Title 18, United States Code, Section 1957.
13
                          II.   WAYS AND MEANS
14
15   3. In executing the conspiracy, defendants employed, among others,

16   the following ways and means:

17     a.   After the September 6, 2006 discharge of defendant STEVEN

18   ZINNEL's bankruptcy until at least July 7, 2008, defendant STEVEN

19   ZINNEL intended to maintain a secret interest in Company 1 and

20   intended to receive distributions from Company 1 as a partner would.

21     b.   After the September 6, 2006 discharge of defendant STEVEN

22   ZINNEL's bankruptcy and until at least July 7, 2008, Nominee 1 caused

23   Company 1 to pay money to defendant STEVEN ZINNEL and another person

24   known to the Grand Jury.  As defendant STEVEN ZINNEL and Nominee 1

25   agreed, several of the payments were disguised as payments to Done

26   Deal for purported sales of goods and services to Company 1 from Done

27   Deal.

28     c.   Defendant STEVEN ZINNEL met periodically with Nominee 1 to

1  decide the appropriate amount for Company 1's distribution to

2  defendant STEVEN ZINNEL.

3       d.   Defendant STEVEN ZINNEL instructed Nominee 1 as to how to

4  disguise Company 1's distribution to defendant STEVEN ZINNEL.

5       e.   For the purpose of disguising Company 1's distributions to

6  defendant STEVEN ZINNEL, Company 1 directed money to Done Deal

7  purportedly to pay off Done Deal's invoices. Done Deal then paid

8  defendant STEVEN ZINNEL, purportedly as Done Deal's consultant and

9  employee.

10      f.   After the September 6, 2006 discharge of defendant STEVEN

11 ZINNEL's bankruptcy, defendant STEVEN ZINNEL maintained signature

12 authority and a debit card for Done Deal's Washington Mutual bank

13 account, and defendant STEVEN ZINNEL continued to use the account to

14 pay for his own personal expenses.

15      g.   As defendant STEVEN ZINNEL, defendant DERIAN EIDSON, and

16 Nominee 1 agreed, on or about April 21, 2006, Company 1 made a

17 $125,969 payment to defendant STEVEN ZINNEL through the client trust

18 account of defendant DERIAN EIDSON, which she deposited at her bank.

19      h.   On or about June 8, 2006, Company 1 made a $171,200.43

20 payment to the client trust account of defendant DERIAN EIDSON, which

21 she deposited at her bank.

22      i.   On or about December 19, 2006, DERIAN EIDSON transferred

23 $82,511.25 from her client trust acccount to her personal bank

24 account.

25      j.   On or about January 10, 2007, DERIAN EIDSON used a check

26 from her personal bank account to pay $75,158.00 owed by STEVEN

27 ZINNEL to the Superior Court of California.

28      k.   On or about August 7, 2007, Done Deal opened an E-Trade

account with a $10,000.00 check on Done Deal's account which was
signed by defendant STEVEN ZINNEL.  Both defendants STEVEN ZINNEL and
DERIAN EIDSON had signature authority over this account.

l.   On or about August 27, 2007, a $172,000 check from Company
1 was deposited into the Done Deal bank account.

m.   On or about August 28, 2007, defendant STEVEN ZINNEL signed
a check (#1196) to transfer $172,000 from the Done Deal bank account
to the Done Deal E-Trade account.

n.   On or about December 14, 2007, Done Deal's bank account was
used to pay $5,710.10 in property taxes due for the Luyung Property.

o.   Done Deal received payments for renting the Luyung Property
to Company 1.

All in violation of Title 18, United States Code, Sections 2 and
1956(h).

COUNT FOUR THROUGH TWELVE:     [18 U.S.C. § 1956(a)(1)(B)(i) - Money
                                Laundering]

     The Grand Jury further charges:

                         STEVEN ZINNEL, and
                         DERIAN EIDSON,

defendants herein, as follows:

6.   On or about the dates set forth below, in the State and Eastern
District of California and elsewhere, the defendants did knowingly
conduct and attempt to conduct a financial transaction affecting
interstate commerce, to wit, the negotiation of a check from Company
1 to Done Deal, as set forth below, which involved the proceeds of a
specified unlawful activity, that is, a violation of Title 18, United
States Code, Section 152, knowing that the transaction was designed
in whole and in part to conceal and disguise, the nature, location,

source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| COUNT | DEFENDANT(S) | DATE OF CHECK | FALSE PURPOSE | AMOUNT |
|---|---|---|---|---|
| 4 | ZINNEL and EIDSON | Dec. 27, 2006 | Substation equipment | $139,524.00 |
| 5 | ZINNEL and EIDSON | Oct. 4, 2007 | ~~Legal work~~ Consulting | $3,333.00 |
| 6 | ZINNEL and EIDSON | Oct. 4, 2007 | Legal work | $4,826.20 |
| 7 | ZINNEL | Oct. 9, 2007 | Safety training | $42,348.00 |
| 8 | ZINNEL | Dec. 28, 2007 | Safety training, legal work, and management consulting | $146,752.00 |
| 9 | ZINNEL | Feb. 14, 2008 | Safety training and other purposes | $42,534.00 |
| 10 | ZINNEL | Apr. 1, 2008 | Management consulting and yard rent | $111,341.00 |
| 11 | ZINNEL | June 12, 2008 | Consulting "Payout" | $162,171.00 |
| 12 | ZINNEL | July 7, 2008 | Consulting "Payout" | $162,171.00 |

All in violation of Title 18, United States Code, Sections 2 and 1956(a)(1)(B)(i).

COUNT THIRTEEN:          [18 U.S.C. § 1957 - Transactions in Criminally
                         Derived Property]

     The Grand Jury further charges: T H A T

DERIAN EIDSON defendant herein, on or about June 8, 2006, in the

1  State and Eastern District of California and elsewhere did knowingly

2  engage and attempt to engage in a monetary transaction by, through,

3  and to a financial institution, affecting interstate and foreign

4  commerce, in criminally derived property of a value greater than

5  $10,000, that is deposit $171,200.43 in U.S. funds, such property

6  having been derived from a specified unlawful activity, that is, a

7  violation of Title 18, United States Code, Section 152. All in

8  violation of Title 18, United States Codes, Sections 2 and 1957.

9  COUNT FOURTEEN:        [18 U.S.C. § 1957 - Transactions in Criminally
                          Derived Property]
10

11       The Grand Jury further charges: T H A T

12  STEVEN ZINNEL defendant herein, on or about August 28, 2007, in the

13  State and Eastern District of California and elsewhere did knowingly

14  engage and attempt to engage in a monetary transaction by, through,

15  and to a financial institution, affecting interstate and foreign

16  commerce, in criminally derived property of a value greater than

17  $10,000, that is a transfer of approximately $172,000 in U.S. funds

18  from Washington Mutual Bank to E-Trade, such property having been

19  derived from a specified unlawful activity, that is, a violation of

20  Title 18, United States Code, Section 152, all in violation of Title

21  18, United States Codes, Sections 2 and 1957.

22  COUNT FIFTEEN: [18 U.S.C. § 1956(h) - Money Laundering
                   Conspiracy]
23

24       The Grand Jury further charges:

25                        STEVEN ZINNEL, and
                          DERIEN EIDSON,
26

27  defendants herein, as follows:

28  1.   Paragraphs 1 and 3 of Count 3 are realleged as if fully set

                                 13

1  forth herein.

2  I.  BACKGROUND

3  2.   By February 3, 2009, the following background facts were true:

4       a.   The relationship between defendant STEVEN ZINNEL and

5  Nominee 1 had deteriorated.  In or about May 2008, Nominee 1 advised

6  defendant STEVEN ZINNEL that he wanted to terminate Company 1's

7  relationship with defendant STEVEN ZINNEL.  Defendant STEVEN ZINNEL

8  and Nominee 1 came to discuss Company 1 making a final payment to

9  terminate defendant STEVEN ZINNEL's secret interest in Company 1.

10 Nominee 1 had not come to an agreement with defendants STEVEN ZINNEL

11 and DERIAN EIDSON.

12      b.   On or about June 11, 2008, defendant STEVEN ZINNEL sent

13 Nominee 1 an email with the subject heading "Dist".  He wrote,

14 "Attached is the distribution schedule that I have."  Attached was a

15 spreadsheet entitled "Company 1 Distributions" and tracking various

16 distributions to defendant STEVEN ZINNEL, Nominee 1, and another

17 person known to the Grand Jury, from July 15, 2006 through February

18 11, 2008.  The transactions characterized as distributions included

19 purported payments for equipment purchases, legal work, and safety

20 invoices.

21      c.   On or about December 3, 2008, defendant STEVEN ZINNEL met

22 with Nominee 1 to discuss an agreement for defendant STEVEN ZINNEL to

23 receive payment to terminate his secret interest in Company 1.

24 Defendant STEVEN ZINNEL there and then presented Nominee 1 with what

25 purported to be an agreement in which Done Deal agreed to terminate a

26 consulting agreement with Company 1 in exchange for Company 1's

27 payment to Done Deal of $4 million.

28      d.   Defendants STEVEN ZINNEL and DERIAN EIDSON both understood

1   that Company 1, in fact, had paid partnership distributions disguised
2   by Done Deal's invoices to Company 1 for business expenses and that
3   the original agreement between Nominee 1 and defendant STEVEN ZINNEL
4   was that Nominee 1 would represent to the world that Company 1 was
5   solely Nominee 1's business and that Company 1's distributions would
6   be made to Done Deal and characterized as other things.

7       e.   Defendants STEVEN ZINNEL and DERIAN EIDSON were both
8   satisfied with that system of paying secret distributions as expense
9   items and intended to receive further disguised payments of
10  distributions from Company 1.

11      f.   Defendants STEVEN ZINNEL and DERIAN EIDSON agreed to demand
12  that Nominee 1 pay Done Deal four million dollars to buy out the
13  secret equity interest in Company 1 and that the payment should be
14  disguised as consideration for the termination of a consulting
15  agreement.

16      g.   There was no consulting agreement between Company 1 and
17  Done Deal, defendant STEVEN ZINNEL, or defendant DERIAN EIDSON such
18  that Company 1 would have had to pay to terminate the consulting
19  agreement.

20                      II.   THE CONSPIRACY

21  3.   Beginning no later than on or about February 17, 2009, and
22  continuing at least until on or about March 2, 2009, in the Eastern
23  District of California and elsewhere, defendants STEVEN ZINNEL and
24  DERIAN EIDSON did knowingly combine, conspire, and agree with each
25  other to commit offenses against the United States in violation of
26  Title 18, United States Code, Sections 1956 and 1957, to wit:

27      a.   to knowingly conduct and attempt to conduct financial
    transactions affecting interstate commerce, which transactions
28  involved the proceeds of specified unlawful activity, that is,

                              15

1  violation of 18 U.S.C. § 152, knowing that the transactions were
   designed in whole and in part to conceal and disguise the nature,
2  source, ownership, and control of the proceeds of specified unlawful
   activity, and that while conducting and attempting to conduct such
3  financial transactions, knew that the property involved in the
   financial transactions represented the proceeds of some form of
4  unlawful activity, in violation of Title 18, United States Code,
   Section 1956(a)(1)(B)(i); and

5

6      b.   to knowingly engage and attempt to engage in monetary
   transactions by, through or to a financial institution, affecting
7  interstate commerce, in criminally derived property of a value
   greater than $10,000, such property having been derived from a
8  specified unlawful activity, that is, violation of Title 18, United
   States Code, Section 152, in violation of Title 18, United States
9  Code, Section 1957.

10              III.   WAYS AND MEANS OF THE CONSPIRACY

11  4.   The defendants executed the conspiracy by the following ways and

12  means:

13      a.   On or about February 3, 2009, defendant DERIAN EIDSON sent

14  an attorney for Company 1 a letter stating that she represented

15  defendant STEVEN ZINNEL and Done Deal regarding to the

16  discontinuation of the business relationship with Company 1.

17      b.   On or about February 17, 2009, defendant DERIAN EIDSON

18  traveled to Sacramento, California, to meet with an attorney for

19  Company 1.  Defendant DERIAN EIDSON purported to act as owner and

20  principal of Done Deal and attorney for both Done Deal and defendant

21  STEVEN ZINNEL.  Defendant DERIAN EIDSON stated the following at this

22  meeting:

23          i.   "The original agreement at the time of the formation

24  [of Company 1] was that [Nominee 1] would represent to the world that

25  it was solely his business and that distributions would be made

26  pursuant to a consulting agreement and distributions were made to

27  Done Deal."

28          ii.   That defendant STEVEN ZINNEL had assigned to Done Deal

16

1   his interest in Company 1 in July 2004 for $35,000.

2          iii.  "You know, we're fine continuing on the way it was

3   before [Nominee 1] decided to, you know before he indicated   he

4   wanted to terminate.  So if he doesn't want to terminate the business

5   relationship, you know, then he needs to be providing an equal

6   shareholder with the financial information and distribution

7   information about the company."

8          iv.  "It was just my understanding that all along, you

9   know, that distributions would be characterized as consulting fees

10  and expensed by Company 1 as such."

11         v.  "My understanding was that each – originally – each,

12  Steve, and Done Deal and Tom owned 46% and [the other person] owned

13  8% and then last year either [Nominee 1] or Company 1 bought out [the

14  other person's] 8%[.]"

15         vi.  "I think those are STEVE ZINNEL's issues of what he

16  disclosed in bankruptcy and what he didn't disclose."

17         vii. Nominee 1 and defendant STEVEN ZINNEL "met, you know,

18  for seven years they met on a monthly or every other month basis to

19  talk about financials, so that's consistent all along and it wasn't

20  until [Nominee 1] got scared that he, you know, started backing

21  away."

22      c.  On or about March 2, 2009, defendant DERIAN EIDSON traveled

23  to Sacramento, California to meet with an attorney for Company 1.

24  Defendant DERIAN EIDSON purported to act as owner and principal of

25  Done Deal and attorney for both Done Deal and defendant STEVEN

26  ZINNEL.  Defendant DERIAN EIDSON stated the following at this

27  meeting:

28         i.  She wanted to resolve the dispute with Company 1 in

17

1  the form of terminating a consulting agreement and she thought "that

2  would shine as little light on this situation and what transpired."

3          ii.   She suggested that Nominee 1's attorney advise Nominee

4  1, "If you want to terminate your relationship with Steve, you can

5  either do a termination of ownership interest which has not been

6  disclosed, or do a termination of a consulting agreement.  And then

7  everyone walks away with the bad decisions that were made before –

8  can't really be changed at this point, but at least, you know,

9  everyone has followed through with what they agreed to do."

10 All in violation of Title 18, United States Code, Section 1956(h).

11 <u>COUNT SIXTEEN</u>: [18 U.S.C. § 1956(a)(1)(B)(i) - Money Laundering]

12      The Grand Jury further charges: T H A T

13 DERIAN EIDSON, defendant herein, on or about February 19, 2010 in the

14 State and Eastern District of California and elsewhere, did knowingly

15 attempt to conduct a financial transaction affecting interstate

16 commerce, to wit, she demanded that Nominee 1 pay Done Deal four

17 million dollars to buy out the secret equity interest in Company 1

18 and that the payment should be disguised as consideration for the

19 termination of a consulting agreement, which involved the proceeds of

20 a specified unlawful activity, that is concealment of assets in

21 connection with a bankruptcy in violation of Title 18, United States

22 Code, Section 152, knowing that the transaction was designed in whole

23 and in part to conceal and disguise, the nature, location, source,

24 ownership, and control of the proceeds of said specified unlawful

25 activity and that while conducting and attempting to conduct such

26 financial transaction knew that the property involved in the

27 financial transaction represented the proceeds of some form of

28 unlawful activity.  All in violation of Title 18, United States Code,

18

1   Section 1956(a)(1)(B)(i).

2   FORFEITURE ALLEGATION:   [18 U.S.C. § 981(a)(1)(C), 28 U.S.C. §
                                2461(c), 18 U.S.C. § 982(a)(1) & Fed. R.
3                               Crim. P. 32.2(a) – Criminal Forfeiture]

4   1.   Upon conviction of one or more of the offenses alleged in Counts

5   One through Two of this Indictment, defendants STEVEN ZINNEL and

6   DERIAN EIDSON shall forfeit to the United States, pursuant to Title

7   18, United States Code, Section 981(a)(1)(C) and Title 28, United

8   States Code, Section 2461(c), any property, real or personal,

9   constituting or derived from proceeds traceable to said violations,

10  including but not limited to the following:

11          a)   A sum of money equal to the total amount of money

12               involved in the scheme, for which defendants are

13               convicted;

14          b)   Vacant land known as "The Luyung Property" located in

15               Rancho Cordova, Sacramento County, CA, APN: 072-0450-

16               015-0000.

17  2.   Upon conviction of one or more of the offenses alleged in Counts

18  Three through Sixteen of this Indictment, defendants STEVEN ZINNEL

19  and DERIAN EIDSON shall forfeit to the United States, pursuant to

20  Title 18, United States Code, Section 982(a)(1), any property, real

21  or personal, involved in said violations, or any property traceable

22  to such property, including but not limited to the following:

23          a)   A sum of money equal to the total amount of money

24               involved in the scheme, for which defendants are

25               convicted.

26  3.   If any property subject to forfeiture, as a result of the

27  offenses alleged in Counts One through Sixteen of this Indictment:

28          (a)  cannot be located upon the exercise of due diligence;

19

1    (b)   has been transferred or sold to, or deposited with, a third

2          party;

3    (c)   has been placed beyond the jurisdiction of the Court;

4    (d)   has been substantially diminished in value; or

5    (e)   has been commingled with other property which cannot be

6          divided without difficulty;

7  it is the intent of the United States, pursuant to Title 18, United

8  States Code, Section 982(b)(1) and Title 28, United States Code,

9  Section 2461(c), incorporating Title 21, United States Code, Section

10  853(p), to seek forfeiture of any other property of said defendants,

11  including but not limited to any of the property listed in Paragraphs

12  22 and 23, up to the value of the property subject to forfeiture.

A TRUE BILL.



FOREPERSON

BENJAMIN B. WAGNER
United States Attorney

20

*No.* _____

# UNITED STATES DISTRICT COURT

*Eastern District of California*

*Criminal Division*

## THE UNITED STATES OF AMERICA
*vs.*

STEVEN ZINNEL,
and
DERIAN EIDSON

## I N D I C T M E N T

**VIOLATION(S):** 18 U.S.C. § 152 - Bankruptcy Fraud (2 Counts);
18 U.S.C. § 1956 (h) - Money Laundering (10 Counts); 18 U.S.C. §
1957 - Transactions in Criminally Derived Property (2 Counts); 18
U.S.C. § 982 (a) (1), 18 U.S.C. § 981 (a)(1)(C)
28 U.S.C. § 2461 (c)-Criminal Forfeiture

*A true bill,*

/S/

*Foreman.*

*Filed in open court this* _____ 8 _____ *day*

*of* ____ June ____ , *A.D. 20* 11 ___

_____ *Clerk.*

*Bail, $* _____ **NO BAIL WARRANT** - *pending hearing* - Zinnel
+ Eidson

GPO 863 525

<u>PENALTY SLIP</u>

**STEVEN ZINNEL AND DERIAN EIDSON**

| | |
|---|---|
| <u>**Counts 1-2**</u> | **STEVEN ZINNEL AND DERIAN EIDSON** |
| VIOLATION | 18 U.S.C. § 152(7) - Fraudulent Transfers and Concealment in Contemplation of Bankruptcy |
| | 18 U.S.C. § 152(1) - Concealment of Assets in Bankruptcy |
| PENALTY: | Not more than $250,000, |
| | Not more than 5 years imprisonment, or both, |
| | 3 years Term of Supervised Release |
| <u>**Count 3**</u> | **STEVEN ZINNEL AND DERIAN EIDSON** |
| VIOLATION: | 18 U.S.C. § 1956(h) - Money Laundering Conspiracy |
| PENALTY: | Not more than $250,000 or not more than twice the Criminally derived property |
| | Not more than 10 years imprisonment |
| | 3 years Term of Supervised Release |
| <u>**Counts 4-12**</u> | **STEVEN ZINNEL AND DERIAN EIDSON** |
| VIOLATION | 18 U.S.C. § 1956 (a)(1)(B) (i)-Money Laundering |
| PENALTY: | Not more than $500,000, Or Twice the value of the Property involved in the transactions, whichever is greater, Imprisonment for not more than 20 years, or both, |
| | 3 years Term of Supervised Release |
| <u>**Count 13**</u> | **DERIAN EIDSON** |
| VIOLATION: | 18 U.S.C. § 1957-Transactions in Criminally Derived Property |
| PENALTY: | Not more than $250,000, |
| | Not more than 10 years imprisonment or both, |
| | 3 years Term of Supervised Release |
| <u>**Count 14**</u> | **STEVEN ZINNEL** |
| VIOLATION | 18 U.S.C. § 1957-Transactions in Criminally Derived Property |
| PENALTY: | Not more than $250,000, |
| | Not more than 10 years imprisonment or both, |
| | 3 years Term of Supervised Release |
| <u>**Count 15**</u> | **STEVEN ZINNEL AND DERIAN EIDSON** |
| VIOLATION | 18 U.S.C. § 1956 (h) - Money Laundering Conspiracy |
| PENALTY: | Not more than $250,000 or not more than twice the criminally derived property, |
| | Not more than 10 years imprisonment, |
| | 3 years Term of Supervised Release |
| <u>**Count 16**</u> | **DERIAN EIDSON** |
| VIOLATION | 18 U.S.C. § (1)(B)(i)-Money Laundering |
| PENALTY: | Not more than $500,000, or twice the value of the property involved in the transactions, whichever is greater, Imprisonment for not more than 20 years, or both, |
| | 3 years Term of Supervised Release |
| <u>**Criminal Forfeiture**</u> | |
| VIOLATION | 18 U.S.C. § 982 (a)(1), 18 U.S.C. § 981 (a)(1)(C) and 28 U.S.C. § 2461(c) |
| PENALTY: | As Indicated in the Indictment |
| PENALTY ASSESSMENT: | $100.00 special assessment |