IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CR. NO. S-11-0234 MCE (GGH) |
| vs. | <u>ORDER</u> |
| STEVEN ZINNEL & DERIAN EIDSON, | |
| Defendants. / | |

*Introduction and Summary*

The backdrop of this criminal action is a protracted, bitter divorce proceeding between defendant Steven Zinnel ("defendant Zinnel" or "Zinnel") and his former wife, Michelle Zinnel. The contentiousness of the divorce allegedly led defendant Zinnel to tell his wife that he was going into bankruptcy and that Ms. Zinnel would ultimately receive no marital property. Zinnel ultimately did file for bankruptcy, but also, according to the indictment, created companies and implemented other mechanisms to hide assets from the bankruptcy court. All of these bankruptcy activities may have escaped the government's notice but for Zinnel's efforts in having the government investigate Ms. Zinnel's purported unlawful acquisition and use of Zinnel's private health insurance information, this also, a tit-for-tat stemming from the divorce proceedings. But Zinnel, having roused the beast, like the professor in *Frankenstein*, was soon

fighting off his own creation.

After contact with Ms. Zinnel, the government became much more interested in the alleged bankruptcy fraud which Ms. Zinnel related to them.  Investigation ensued, including undercover recordation of meetings with Zinnel and his lawyer/love interest and now co-defendant, Derian Eidson, with both making seemingly damaging admissions.  On June 8, 2011, an indictment was returned alleging bankruptcy fraud, money laundering, and transactions in criminally derived property.  Defendants have moved for discovery and Brady/Giglio disclosures, making numerous requests to the government, some of which the government has resisted.

Defendant Eidson has moved to compel further discovery/Brady-Giglio information.  Defendant Zinnel has joined the motion.  Defendant Zinnel has filed a separate motion for disclosure of the IRS tax filings of a corporation whose activities are central to this case.  The undersigned's rulings follow.

*Issues*

There are several issues which weave their way through this discovery motion.  The court will resolve those issues here and then apply the rulings to the various discovery/Brady requests.

A. *Who is the Government For Discovery/Brady Purposes*

The United State asserts that four entities are the "government" for purposes of disclosing information required by either Fed. R. Crim. P. 16 or the dictates of Brady/Giglio: The U.S. Attorneys Office, the F.B.I., the Criminal Division of the Internal Revenue Service and the U.S. Trustee.  Defendants seek to have added the bankruptcy trustee for the Zinnel bankruptcy, the entire IRS, as well as cooperating witnesses and victims.

Defendant Zinnel filed a Chapter 7 bankruptcy petition in 2005.  In such a case, a trustee is appointed, first on an interim basis by the United States Trustee, and then by creditor election or by default (the interim trustee will continue as trustee).  11 U.S.C. § § 701, 702.  In certain situations, the United States Trustee can be the trustee.  Id.  The trustee looks out for the

interests of creditors, and can even oppose a debtor's request for discharge. 11 U.S.C. § 704(a)(6). A trustee performs such duties as: collect and reduce to money property of the estate, investigate the financial affairs of the debtor, make a final report to the court and the United States Trustee regarding administration of the estate, and many others. 11 U.S.C. § 704. See also In re Castillo, 297 F.3d 940, 950-51 (9th Cir. 2002). The United States Trustee maintains a direct oversight role with respect to the actions of an estate trustee and shall "supervise the administration of estates and trustees" with respect to, *inter alia*, Chapter 7 cases. 28 U.S.C. § 586 (a)(3). See also § 586 (1). The United States Trustee(s) are appointed and ultimately supervised by the Attorney General. 28 U.S.C. § 581 et seq. In regards to criminal matters, the United States Trustee shall report criminal misdeeds related to misstatement of income, expenses or assets to the United States Attorney.

In this case a trustee was appointed for the Zinnel case. The Zinnel bankruptcy trustee, according to the government response (Opposition at page 20), has not been contacted for "substantive" purposes by the prosecution AUSAs, but more to the point, the trustee is obligated to cooperate on request of the U.S. Trustee, and the Trustee has had some apparent contact with the bankruptcy trustee. Defendants seek to include this trustee as part of the "government" for purposes of criminal discovery and Brady/Giglio obligations. The undersigned agrees that a trustee for an estate which is specifically at issue in a criminal proceeding is sufficiently "government" such that the prosecutor must affirmatively seek information from the trustee to fulfill criminal discovery and Brady/Giglio obligations.

> Defining the "government" is important in criminal discovery matters because the prosecution does not have to scour the files of every governmental agency on the chance that some pertinent information, or information that the defendant deems pertinent, may be disclosed. United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989). The prosecution does not become the FOIA (Freedom of Information Act) agent for the defense. However, "[t]he prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." Id.
>
> The above presumption is all that is needed in the vast majority of criminal cases in that it is seldom the case that federal agencies outside of the agencies interested

3

    and participating in the investigation will [possess] documents material to the case. However, the Ninth Circuit has made clear that the presumption is not necessarily the end point of the analysis depending on the case. United States v. Santiago, 46 F.3d 885 (9th Cir. 1995). In Santiago, the Ninth Circuit held that prison files in the possession of the federal Bureau of Prisons, an agency within the Department of Justice, would be "in the possession" of the United States Attorney because the BOP was a sister agency, and the prosecutor has actually acquired a good bit of information about the case by simply requesting it from the BOP. Id. at 893-94. The fact that the BOP was not the "investigating agency" was not determinative. "Access" to the requested information was the key, and such access was to be determined on a case by case basis.

United States v. Salyer, 271 F.R.D. 148, 156 (E.D. Cal. 2010).

        The issue with respect to the bankruptcy trustee in this case is governed by the principle of Santiago. Here, the Zinnel trustee was actively supervised by the United States Trustee. The United States Trustee has a duty to inspect the files of this trustee in connection with the reporting of criminal misdeeds to the United States Attorney. There is not much doubt that the United States Trustee has had contact with the Zinnel trustee in accordance with the Trustee's statutory obligations. Here, to paraphrase the quote in Salyer above, "the prosecutor [including the U.S. Trustee] has actually acquired a good bit of information about the case by simply requesting it from the [trustee]. [Santiago] at 893-94. The fact that the [trustee] [is] not the "investigating agency" [is] not determinative. "Access" to the requested information [is] the key, and such access [is] to be determined on a case by case basis." Because the United States Trustee can require the Zinnel trustee to produce information upon request, access is sufficiently satisfied here.

        If the Zinnel trustee were legally independent of the United States Trustee/United States Attorney, the result would have been different. That is why the result here is different when analyzing the duties of affirmative acquisition of information in discussing cooperating witnesses, victims, or other players in the criminal process. For these individuals, the government does not have a legal right to require these persons to produce anything except through a process of subpoena or search warrant. While cooperating witnesses may well benefit if they accede to informal government requests for information, and may suffer practical

4

detriment if they do not, the initial decision to cooperate depends on the person along with advice that the person may receive from an attorney, if any.  Use of process or persuasion to obtain information for a criminal case does not give the prosecutor the "access" required for criminal discovery for Brady/Giglio purposes vis-a-vis the independent cooperators, witnesses or victims. Salyer, 271 F.R.D. at 156.  It is the legal relationship of the persons or entities with the prosecution which might lead to the conclusions that "access" existed; the potential use of subpoenas or search warrants against persons with information does not.  Thus, the court agrees that "[e]very person who cooperates with a federal investigation cannot be deemed a federal agent such that federal prosecutors are deemed to have constructive knowledge of everything in his or her possession, custody or control."  United States v. McCall, 2009 WL 4016616 *1 (N.D. Cal. 2009).

      Moreover, counting cooperating witnesses or victims amongst those constituting the "government" would lead to absurd results.  Defendants would have this court compel the government to use whatever process necessary to interrogate, on behalf of the defense, all persons who gave the government any information, and then to search or seize the files of all persons with whom the government acquired any information during an investigation, on the off chance that something material or exculpatory or impeaching might be found with the witnesses/victims.  The government would be turned into the reluctant defense investigator, and with much more investigative power to boot.  Nothing in Rule 16, or in the Brady/Giglio jurisprudence, suggests such a tilting of the adversary system.

      The defense contends that it is entitled to see the tax returns of witnesses in this case, and that since the IRS is the "government," it has access to all these tax returns.  The undersigned disagrees.  Only the criminal investigation side of the IRS involved in this investigation is the government here; the vast administrative arm of the IRS., i.e., ordinary tax collection, is not.  Indeed, when the prosecution desires to obtain tax files for a criminal investigation, it simply does not "access" the files, but must petition the court demonstrating

precise criteria before any access is permitted. 26 U.S.C. § 6103(i). The requirement to obtain an order before access of tax records is authorized stands as the antithesis of constructive possession. See United States v. Lochmondy, 890 F.2d 817, 823 (6th Cir. 1989). Of course, if the desired tax information had previously been disclosed from the IRS and was in the possession of the Department of Justice, the result might well be different. United States v. Bryan, supra. The undersigned does not find that otherwise non-disclosed IRS non-party tax information is in the possession of the "government," even when the Criminal Division of the IRS is considered the "government."

Accordingly, the Zinnel trustee is the "government" for purposes of the discovery/Brady/Giglio motion herein, but the other persons, including cooperators or victims, defendants seek to denominate the "government" are not.[1] The prosecution does not have access to the tax information of non-party witnesses or entities; hence, the administrative side of the IRS is not the "government."

### B. *Proper Parameters of Brady/Giglio Disclosure*

The government asserts that it has complied, or will timely comply, with its Brady/Giglio responsibilities; the defendant questions this assertion. The crux of the dispute centers on the breadth of the prosecution understanding of the disclosure duties. As clearly discussed at hearing, the government believes that as long as a non-disclosure would not ultimately be found to be a Brady/Giglio violation, under the facts and circumstances ultimately setting the context of the non-disclosure, the prosecutor has no duty of disclosure in the first instance. This is not correct – the duty of disclosure should be made on the basis of what a reasonable prosecuting attorney would view as exculpatory or impeaching in the first place. It is not to be made on the unilateral assumptions of the prosecutor as to what information might turn

---

[1] Of course, the government does not dispute its obligation to disclose appropriate discovery et al. contained within its *own* files no matter how it was previously procured. This motion deals with future affirmative requests by the government.

out later to be immaterial, i.e., not sufficiently damaging to the government's case to constitute a Brady violation, or cumulative.  Moreover, what might seem cumulative to one might seem like the necessary weight of the evidence to another.[2]

As explained by Strickler v. Greene, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948 (1999), there is a distinction between the ultimate finding of a Brady violation and the initial "broad duty of disclosure" that is at issue here at this stage of the case.  As pointed out by the DOJ Brady/Giglio guidelines, and as well established by case law, the *prosecution* has the duty to *affirmatively* scour those records of the agencies considered the "government" for purposes of the criminal case in order to determine and acquire those materials which would be considered Brady exculpatory and Giglio impeaching.  Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555 (1995); United States v. Price, 566 F.3d 900, 908-909 (9th Cir. 2009).  Indeed, the most recent Department of Justice guidelines, fashioned after some embarrassing non-disclosures in other cases, command an *actual review* of the materials acquired during investigation of a criminal case for the purpose of disclosing Brady/Giglio materials.[3]  See *Memorandum for Department Prosecutors*, dated January 4, 2010, Section B,  e.g., items, 1 ("The prosecutor can personally review the file or documents or may choose to request production of ... materials from the case agent"), 3 ("[g]enerally, all evidence and information gathered during the investigation should be reviewed, including anything obtained during searches or via subpoenas, etc.").  Tellingly, nowhere in the memorandum does it even suggest that the prosecutor may make an anticipatory determination that otherwise disclosable Brady/Giglio material might be ultimately "cumulative"

---

[2] Under the government's theory, in a hypothetical bank robbery prosecution, the defendant would be entitled to one witness statement that the robber had a different physical description than that actually possessed by the defendant, but the government could withhold the statements of witnesses two and three to the same effect because the subject matter was cumulative.  Not so.  Moreover, even if the same witness were involved with multiple statements seemingly at odds with the conflicting statement of another witness, the government would contend that only one of the multiple statements would have to be disclosed.  Again, not so.

[3] The undersigned understands that the Guidelines are not binding on the undersigned; however, they mirror the obligations in the case law that are binding.

7

or non-prejudical to the defense ("immaterial") in the context of evidence actually presented at trial, and thus, no disclosure need be made.

Of course, a reasonable determination has to be made at *this time* that a document or other information is exculpatory or impeaching. But prosecutors have to make that judgment call on the face of the information subject to possible disclosure, and the teaching of Kyles is not to "tack[] too close to the wind," id. at 439, 115 S.Ct. 1568, when making that determination. In other words, when in doubt, hand it out.

C. *Timing of Rule 16 and Brady/Giglio Disclosures*

There is no dispute that Rule 16 discovery is due when requested, or shortly thereafter, with the exception of statements whose disclosure is governed by the Jencks Act or other rules regarding disclosure of grand jury transcripts, and Rule 16(a)(2) and (3). Therefore, the real timing dispute involves Brady (exculpatory) and Giglio (impeachment) materials.

> A misconception that runs throughout the defense argument at hearing is that there is no conceptual or procedural difference between Brady (exculpatory) and Giglio (impeaching) information.[footnote 1 omitted] The former relates to evidence which directly tends to lessen a defendant's guilt, e.g., a statement from another person which tends to relieve the defendant of responsibility for the crime, and the latter to witness credibility type evidence of a collateral nature, e.g., evidence that the government's witness who is implicating the defendant is not to be trusted in his implications because of bias, previous misrepresentations in similar matters, and so forth, i.e., indirectly making it less likely that the defendant is guilty. Indeed, the two cases themselves involve facts which demonstrate the conceptual difference. [footnote 2 omitted] While each type of "favorable" evidence stands on equal Constitutional footing, and is not distinguished in that regard, United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), there is an important procedural and conceptual difference which attaches to the two types of "favorable-to-the-defendant" evidence. Brady evidence is to be disclosed to the defense at a time such that the defendant is able to put the evidence to meaningful use, i.e., perform the necessary investigation and follow-up. United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir.1988). However, Giglio evidence need not be disclosed until a witness testifies: "[s]ince information concerning favors or deals merely goes to the credibility of the witness, it need not be disclosed prior to the witness' testifying." United States v. Rinn, 586 F.2d 113, 119 (9th Cir. 1978).

United States v. Hopkins, 2008 WL 4453583 *2 (E.D. Cal. 2008).

\\\\

1  Witness statements, impeaching or not, are also similarly timed pursuant to the
2  Jencks Act, 18 U.S.C. § 3500.  The Ninth Circuit has explicitly held that even <u>Brady</u> material,
3  with respect to witness statements, is subject to the strictures of the Jencks Act.  <u>United States v.</u>
4  <u>Jones</u>, 612 F.2d 453, 454 (9th Cir. 1979).  A significant part of the information sought by
5  defendants runs afoul of the above "timing" authority.

6  Defendants argue that the undersigned has the discretion to fashion timing
7  requirements pursuant to its inherent authority to control the manner of pretrial proceedings due
8  to the circumstances of the case.  In the absence of an express referral by the trial judge, court
9  ordered variances from the above authority, if permissible at all, must be made by the trial judge
10 who has a bigger picture of the logistical difficulties in this case than does the undersigned, or
11 who might handle the logistics of pretrial disclosures et al. differently than the undersigned.

12 Accordingly, <u>Brady</u> exculpatory information, to the extent it has not been
13 disclosed to date, and with the exception of Jencks Act statements, shall be disclosed within 20
14 days of the filed date of this order.  Jencks Act exculpatory statements and all other impeaching
15 information, shall be disclosed in accordance with the default dates above, or as otherwise agreed
16 to by the parties, or as otherwise ordered by the district judge.

17  D. *What is Exculpatory or Impeaching Information*

18 The operative definition for what is exculpatory or impeaching has been
19 extensively set forth in <u>United States v. Salyer</u>, 2010 WL 3036444 *5 (E.D. Cal. 2010)
20 (confirming on reconsideration 271 F.R.D. 148):

> Although the <u>Brady</u> rule often is phrased in terms of evidence "favorable to the defense," the case law has made clear that such evidence is that which tends to exculpate guilt *of the offense charged by the government*.  <u>See</u> <u>Brady v. Maryland</u>, 378 U.S. 83, 87, 83 S.Ct. 1194-1196-97 (1963) (exculpatory evidence is that evidence material to guilt or punishment).  <u>See</u> also <u>Cone v. Bell</u>, __U.S.__, 129 S.Ct. 1782-83 (2009).  Thus, the prosecution knows, as any litigator would know, what evidence, on its face, significantly detracts from the factual elements which must be proven in a particular case.  Indeed, one cannot prepare a case without thinking about how to counteract, i.e., explain away, evidence inconsistent with proving the elements of the charged crime.  That determination is made from *the prosecution's vantage point,* not a speculative insight into defense counsel's

9

theory of the defense.  That is why it is the *prosecution's* initial, unquestionable, and affirmative duty to "learn of any favorable [defense] evidence known to the others acting on the government's behalf in the case."  Kyles v. Whitley, supra.  The Supreme Court most assuredly did not hold that because it is not possible to look into defense counsel's mind about possible defenses, there is no duty to look for exculpatory evidence.  When the prosecution, in good faith, determines that a piece of evidence, on its face, significantly tends to controvert what it is attempting to prove, disclosure (and in this case, identification as well) is mandated.  Similarly, for Giglio information, the prosecution knows, from its vantage point, what information is significantly inconsistent with the testimony it expects *its* potential witnesses to present or with their credibility generally.  The Supreme Court has directed prosecutors to err on the side of disclosure, but it has not held that exculpatory or impeaching evidence is to be speculatively gauged by what defense counsel may desire to argue.[4]

E. *Rule 16 (a)(1)(E) and  Materiality under subsection (I)*

The last two subsections of Rule 16(a)(1)(E) are easily defined.  Subsection (ii) requires disclosure of information which the government "intends" to use in its case in chief.  This subsection does not require a binding promise on the part of the government that a document or other information disclosed will appear on an exhibit list; it does require a good faith determination of what the government presently possesses and might use at trial, i.e., a reasonable possibility.  Any stricter definition than a reasonable possibility would render this subsection a dead letter – the government could always argue pretrial that it is not absolutely sure what it will use at trial and therefore, subsection (ii) never comes into play.[5]

Subsection (iii) simply means what it says.  If the government took a requested item from the defendant, or it otherwise belongs to the defendant, it is to be disclosed.

Accordingly, the government shall re-review the requests made by the defense to see if any of the requested items (or items within a described category) fit within the above two

---

[4] While potential disputes concerning the prosecution's decisions about what is Brady/Giglio may always exist, a Brady non-disclosure cannot be cause for sanctions unless it can be said that a later determined non-disclosure(s) materially affected the confidence in the verdict either singularly or cumulatively.  Kyles v. Whitley, supra.

[5] It also may be the case that the government sees the "relevance" light late in the game, and may seek to add the information/item to its discovery response at a later time.

subsections. The government shall disclose such items/information within 20 days from the filed date of this order.

In its opposition, the government focused on subsection (i) – "material to the defense." This concept is disclosed at length below. In reality, there will be little disclosure under this subsection because exculpatory information will have been already disclosed, and impeaching (to a witness) material will be disclosed at an appropriate time. To the extent that information/items the government plans to use in its case in chief are "material" to the defense, it will have also been disclosed under the second subsection, as will items/information taken from the defendant under subsection (iii). Similarly, statements of the defense, under Rule 16(a)(1) will have been disclosed. One could ask – what's left that could be "material" to the defense?

The undersigned turns nevertheless to subsection (iii). As noted by the government, Rule 16 "is not the equivalent of a 'request for production' in a civil suit, in that the defendant is not entitled to issue a generally worded request for production of documents or things of which their existence is only generally surmised, and might lead the defendant to relevant evidence." United States v. Hopkins, 2008 WL 4453583 (E.D. Cal. 2008). Materiality under Rule 16 was extensively discussed in United States v. Salyer, 271 F.R.D. at 157-158, and applies with full force here:

> United States v. Santiago, 46 F.3d 885, 894 (9th Cir.1995) sets the paradigm for disclosure of documents or evidence material to the defense:
>
> A defendant must make a threshold showing of materiality, which requires a presentation of "facts which would tend to show that the Government is in possession of information helpful to the defense." United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir.1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." Id.
>
> The undersigned has previously opined on what "helpful to the defense" means as the term could be utilized in an under or over inclusive manner. As set forth above, "helpful" is something less than "exculpatory"; if this were not the case, there would be no need to have the discovery rule. On the other hand, "helpful" could be construed to mean nearly everything the government has looked at. Therefore, "helpful" is properly construed as evidence:
>     which is significantly helpful to an understanding of important
>     inculpatory or exculpatory evidence. " 'The materiality

11

requirement typically 'is not a heavy burden,' rather, evidence is material as long as there is a strong indication that ... [the evidence] will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.' " United States v. Jackson, 850 F.Supp. 1481, 1503 (D.Kan.1994) quoting United States v. Lloyd, 992 F.2d 348, 351 (D.C.Cir.1993) (emphasis added).

United States v. Liquid Sugars, 158 F.R.D. 466, 471 (E.D. Cal.1994). "On the other hand, requests which are designed to generally cast for impeachment material ... are not material. Such requests are simply speculative inquiries without basis in fact to believe that the information acquired will be significantly helpful." Id. at 472. In determining materiality, a court will view the demonstrated or obvious burden of production on the government in light of the demonstrated need for the evidence, United States v. Jack, 257 F.R.D. 221 (E.D.Cal. 2009) (Drozd, J.), i.e., burden of production may require greater demonstration of specific need.

Santiago and another recent Ninth Circuit case, United States v. Stever, 603 F.3d 747 (9th Cir. 2010), are good examples of the application of the above paradigm and explanation of materiality. In Santiago, a case involving the murder of a prison inmate, the defendant had asked to see the prison files of all inmates to be called as witnesses by the government because evidence of gang affiliations would be introduced by the prosecution. Santiago reasoned that he would need this information for impeachment purposes, i.e., whether any of the witnesses were linked with rival gangs. The Ninth Circuit held:

> These assertions, although not implausible, do not satisfy the requirement of specific facts, beyond allegations, relating to materiality. See Mandel, 914 F.2d at 1219. Although the defense did have access to other documents relating to the government witnesses and interviewed several other prison inmates, it did not cite any fact, such as a statement by the defendant or one of the interviewed witnesses, that might link one of the witnesses to a rival gang. Thus, since the defense has only asserted "conclusory allegations" without grounding in fact, Mandel, 914 F.2d at 1219, we cannot find that the information sought was material to the case.

Santiago, 46 F.3d at 894–895.

In other words, simply having an educated guess about documents' helpfulness was insufficient.

Stever demonstrates when sought information would be helpful. In this case, defendant had announced a specific defense that the marijuana grown on his large tract of land had been grown by another. He sought specific reports in the possession of the government showing the problem of Mexican gangs using the property of others for their grow operations. The Ninth Circuit found the reports to be manifestly relevant to the defense.

Materiality shall be judged in light of the above standards.

*General Orders and The Specific Requests Remaining at Issue*

Because the government has not responded to all requests, or supplied Bardy/Giglio material as defined by the undersigned, or in accordance with the definition of the "government" for response purposes (includes the Zinnel bankruptcy trustee), the following general orders are issued prior to recitation of particular Rule 16 requests remaining at issue:

1. All Brady exculpatory material not encompassed by the Jencks Act, as defined by the undersigned and in accordance with the definition of "government " defined by the undersigned (includes the Zinnel bankruptcy trustee), shall be disclosed to the extent it has not already, within 20 days of the filed date of this order, unless specifically excluded below.

2. All Giglio impeaching material and Brady Jencks Act material, as defined by the undersigned and in accordance with the definition of "government " defined by the undersigned (includes the Zinnel bankruptcy trustee), shall be disclosed to the extent it has not already, on the schedule set forth by the district judge for disclosure of impeachment material.

3. The government shall review all Rule 16 requests within the framework of "government" as defined herein, and supplement any disclosures within 20 days of the filed date of this order as appropriate except to the extent that the Rule 16 requests are not precluded in their entirety below; the court recognizes that the expanded definition of government to include the Zinnel bankruptcy trustee.  The review should include *all* subsections of Rule 16(a)1(E).

4. If after review the government determines that no further supplementation is appropriate, i.e., there are no further documents/information which meet the court's criteria, that fact shall be made known to defendants.

5. The government need not produce the tax returns, or tax return information, possessed by the IRS with respect to System 3 or any other person/entity related to this case.[6]

\\\\

---

[6] This ruling does not preclude the requesting by Fed. R. Crim. P. 17 of the same information.  The undersigned does not review here the propriety of such a request.

13

The undersigned now turns to the disputed requests set forth in the Eidson Reply.

**2.  Ms. Eidson's emails and correspondence to and from Mr. Radoslovich concerning the settlement discussions and all versions of the proposed settlement agreement(s) exchanged between or prepared by the parties.**

The government has agreed to produce these items but only to the extent that Radoslovich[7] has provided them to the government. Under the definition of government set forth above, no further response need be made.

**5.  All statements or alleged admissions made by any other alleged co-conspirator, including Mr. Zinnel and Mr. Wilbert, the government contends are admissible at trial pursuant to Federal Rules of Evidence Section 801, including all communications secured by all members of the prosecution team, and all handwritten notes memorializing such statements.**

Prospective witness statements are governed by the Jencks Act. United States v. Mills, 810 F2d 907, 910 (9th Cir. 1987). Scheduling the disclosure of those statements will be made by the trial judge. Because defendants do not, in this Rule 16 motion, seek identification of the government's case-in-chief evidence pursuant to Fed. R. Civ. P. 12(b)(4), the undersigned need not determine whether that Rule would somehow abrogate Mills.

In addition, the weight of authority does not count statements of a co-conspirator as statement of the witness to be disclosed in Rule 16 discovery. Although the Ninth Circuit has apparently not directly ruled on the issue, the circuit case law is nevertheless squarely against reading Rule 16(a)(1)(A) in this fashion, and has squarely rejected the lower court cases cited by Eidson/Zinnel. See United States v. Williams, 90 F.3d 490, 513 (D.C. Cir. 1996); United States v. Manthei, 979 F.2d 124, 126 (8th Cir. 1992); United States v. Gaddis, 877 F.2d 605, 610 (7th

---

[7] Frank Radoslovich is the civil attorney of cooperating witness Tom Wilbert. The undersigned understands that Wilbert was an officer of a company called "System 3," an electrical utility infrastructure company. It is alleged that Zinnel attempted to hide from the bankruptcy estate hundreds of thousands of dollars which he invested in System 3 as a silent partner. The indictment further alleges that payments were made to Zinnell from System 3 via a shell company called "Done Deal" – a company allegedly formed by defendant Eidson. Eidson has been alleged to be Zinnel's attorney and romantic interest. Apparently, Wilbert secretly taped Zinnel at a meeting designed to discuss a buyout of Zinnel's secret interest. Radoslovich arranged meetings between the government agents in an undercover capacity and defendant Eidson to again discuss the buyout.

Cir. 1989), In re United States, 834 F.2d 283, 286 (2nd Cir. 1987); United States v. Roberts, 811 F.2d 257, 258-59 (4th Cir. 1987) (en banc).  See also United States v. Cerna, 2009 WL 2998929 (N.D. Cal. 2009).

**8.    The criminal records, if any exist, for Mr. Wilbert, or any person the government contends is a co-conspirator in this case.**

**9.    The criminal record, if any, of the government's key witnesses, including Ms. Zinnel, Ms. Zinnel's boyfriend, Mr. Giovanini, Mr. Wilbert's attorney, Mr. Radoslovich, and, Mr. Zacharias and his attorney, Don Wanland.[8]**

The timing of disclosure of impeachment evidence, and criminal records of witnesses would be characterized as impeachment, is a matter of scheduling for the trial judge.

**10.   All correspondence, documents, emails and communications exchanged between any government agent or the Assistant United States Attorneys prosecuting this case, and the Bankruptcy Trustee or his counsel or the United States Trustee, and all reports or documents detailing any contacts between them.**

**11.   All correspondence, documents, emails and communications exchanged between any government agent, including the FBI and IRS-CID agents investigating this case, or the United States Attorneys prosecuting this case, and any creditor involved in the bankruptcy proceedings and all reports or documents detailing any contacts between them.**

The disclosure of Brady/Giglio material from the bankruptcy trustee has been ordered or deferred as set forth above.  To the extent that the government plans to use any evidence obtained from the bankruptcy trustee in its case-in-chief, which has not been heretofore disclosed, that evidence shall be identified and disclosed within 30 days from the filed date of this order.  Insofar as defendants ask for documents "material to the defense," this type of "all documents" request is the antithesis of the specificity that need be shown for Rule 16(a)(1)(E).  It also treads on government work product, Rule 16(a)(2), without any factual showing as to why such work product could be overcome.

This civil case type documents request is denied except as set forth above.

---

[8] The undersigned is unsure about the nature of the alleged involvement of Zacharias and Wanland in the events set forth in the indictment.

**12.   All correspondence, documents, emails and communications exchanged between Ms. Zinnel or Mr. Giovanini and any government agent or the United States Attorney's Office during the investigation and all reports, memoranda, or notes concerning such exchanges.**

This request is denied for the reasons set forth to Requests Nos.10, 11 with an additional comment. The government supplied the "confession" to a medical privacy HIPAA violation engaged in by Ms. Zinnell in her divorce proceedings (seeking medical insurance information to aid her divorce case). The undersigned has reviewed the statement and finds no <u>Brady</u> exculpatory information therein. To the extent that it contains impeachment information, that information will be disclosed on the schedule indicated by the trial judge. To the extent that the government plans to use any evidence fitting the category described in its case-in-chief, which has not been heretofore disclosed, that evidence shall be identified and disclosed within 30 days from the filed date of this order.

**13.   All correspondence, documents, emails and communications exchanged between Mr. Zacharias or Mr. Wanland and any government agent or the United States Attorney's Office during the investigation, and all reports, memoranda, or notes concerning such exchanges. This request includes copies of any script or list of questions provided or reviewed by the agents to use in connection with pending litigation with Mr. Zinnel.**

**14.   All correspondence, documents, emails, text messages, communications and faxes exchanged between Mr. Wilbert and any government agent, including the FBI and the IRS-CID investigators, or the United States Attorney's Office during the investigation and all reports, memoranda, or notes concerning such exchanges. This request includes copies of any script or list of questions provided by the agents to Mr. Wilbert to use in connection with his recorded meeting with Mr. Zinnel held on December 3, 2008.**

**18.   All correspondence, documents, emails and communications exchanged between Mr. Radoslovich and any government agent or the Untied States Attorneys' Office during the investigation, and all reports, memoranda, or notes concerning such exchanges. This request includes copies of any script or list of questions provided by the agents to Mr. Radoslovich to use in connection with the two recorded settlement meetings with Ms. Eidson held in February and March 2009.**

These requests are denied for the same reasons given for Request No. 10 with one addition. The undersigned would find that a "script" or list of questions" given to undercover

government informants would be material to the defense; however, the government has stated that no such items exist. To the extent that the government plans to use any evidence fitting the category described in its case-in-chief, which has not been heretofore disclosed, that evidence shall be identified and disclosed within 30 days from the filed date of this order.

**22.    As to Mr. Wilbert, identification and production of all Brady/Giglio materials, including reports, notes and memoranda of promises, offers, or threats not set forth in the formal proffer agreement or which records any statements made by the informant's counsel or the informant in emails, letters or conversations to induce the government to make the agreement in the first instance.**

The Brady/Giglio information sought is encompassed in the general rulings, supra.

**23.    Documents relating to the informant authorization process, including (a) any authorization to record conversations by an attorney (Ms. Eidson) engaged in civil settlement discussion with opposing counsel; (b) all documents, including authorizations relating to the identification and approved use of Mr. Wilbert as a confidential informant; and (c) the confidential informant files for Mr. Wilbert, including the terms and conditions of his services, including confirmation of whether he was approved or paid as an informant by the government, is plainly material to the defense.**

To the extent the request seeks Brady/Giglio, the information sought is encompassed in the general rulings, supra. Otherwise, the request does not set forth a sufficient basis to require disclosure pursuant to Rule 16(a)(1)(E)(I). It is simply an "all documents" request. To the extent that the government plans to use any evidence fitting the category described in its case-in-chief, which has not been heretofore disclosed, that evidence shall be identified and disclosed within 20 days from the filed date of this order.

**24.    As to Ms. Zinnel: (a) her signed confession of illegal activity referenced in the FBI report (dated June 30, 2006, Bate # SZ034727); and (b) all notes, reports, and memoranda related to the HIPAA violation and the government's investigation.**

**25.    As to Ms. Zinnel, all information and documents she provided to the government, including all reports memorializing same (only one is provided, dated 6/30/06, which only states that an interview took place) or which memorialize statements made by her or her counsel in emails, letters or conversations to induce the government to decline prosecution, or in furtherance of her cooperation with the government.**

The "confession" has been previously identified as potential <u>Giglio</u> material subject to disclosure according to the schedule of the district judge.[9]  The other information sought, to the extent not <u>Giglio</u>, has not been demonstrated "material" pursuant to Rule 16(a)(1)(E)(I).  To the extent that the government plans to use any evidence fitting the category described in its case-in-chief, which has not been heretofore disclosed, that evidence shall be identified and disclosed within 30 days from the filed date of this order.

*CONCLUSION*

The Eidson discovery motion (Docket #42), joined by Zinnel, and Zinnell's separate tax information disclosure motion (Docket #53), is granted in part and denied in part as set forth above.

DATED: November 16, 2011

        /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:ggh
zinnel.ord

---

[9]The undersigned has reviewed the "confession" *in camera* and finds no exculpatory information therein.