1  BENJAMIN B. WAGNER
   United States Attorney
2  MATTHEW D. SEGAL
   AUDREY B. HEMESATH
3  KEVIN C. KHASIGIAN
   Assistant United States Attorneys
4  501 I Street, Suite 10-100
   Sacramento, CA 95814
5  Telephone: (916) 554-2700
   Facsimile: (916) 554-2900

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,          2:11-CR-00234 TLN

12                    Plaintiff,       STIPULATION AND ORDER TO SETTLE THIRD
                                       PARTY CLAIM OF THOMAS J. WILBERT TO
13            v.                       SPECIFIED ASSET SUBJECT TO FORFEITURE
                                       FROM DEFENDANTS ZINNEL AND EIDSON,
14 STEVEN ZINNEL and                   46% MINORITYINTEREST IN SYSTEM 3, INC.
   DERIAN EIDSON,
15
                    Defendants.
16

17

18 THOMAS J. WILBERT,

19                    Petitioner.

20

21

22        This stipulation is entered into between the United States of America and petitioner Thomas J.

23 Wilbert as to a 46% minority interest in System 3, Inc., which was forfeited from defendants Derian

24 Eidson and Steven Zinnel based on their convictions in this case, according to the following terms:

25        1.        This is a criminal action against co-defendants Steven Zinnel and Derian Eidson.  On

26 July 16, 2013, the jury in this case found Defendant Zinnel guilty of two counts of bankruptcy fraud,

27 nine substantive money laundering counts, and three counts of transactions in criminally derived

28 property.  The jury found defendants Zinnel and Eidson jointly guilty of conspiracy to commit money

laundering, and defendant Eidson alone guilty of one count of attempted money laundering.

2.      Following trial, the United States moved for a Preliminary Order of Forfeiture regarding the 46% minority interest in System 3, Inc., Done Deal, Inc., and two real properties based on their connection to Zinnel's bankruptcy fraud and/or involvement in Zinnel's and Eidson's money laundering crimes.

3.      On September 10, 2013, the Court entered an *Amended* Preliminary Order of Forfeiture as to defendant Eidson, forfeiting Eidson's interest in System 3, Inc., a California Corporation, entity number C2360455, based on the entity's involvement in Eidson's money laundering convictions.

4.      On September 20, 2013, the Court entered a Preliminary Order of Forfeiture as to defendant Zinnel, forfeiting Zinnel's interest in System 3, Inc. based on the entity's involvement in Zinnel's bankruptcy fraud (proceeds) and money laundering convictions.

5.      System 3, Inc. has an estimated market value of $10,344,305.[1]   A 46% minority ownership interest in System 3, Inc. has an estimated market value of $3,030,000.

6.      The United States does not dispute that Thomas J. Wilbert, an individual, owns 54% of System 3, Inc.

7.      On November 7, 2013, Thomas J. Wilbert, filed a Petition for an Ancillary Hearing regarding System 3, Inc.   Wilbert claimed to own 100% of System 3, Inc. based on his $350,000 purchase of System 3, Inc. from Zinnel's bankruptcy estate in November 2011.[2]   Wilbert filed an *Amended* Petition for an Ancillary Hearing on November 18, 2013.

8.      No other party or entity has filed a petition asserting an interest in System 3, and the time in which any person or entity may file a petition has expired.

9.      Since the filing of Wilbert's petition, counsel for the United States and counsel for Thomas J. Wilbert have engaged in discussions regarding the disposition of Wilbert's petition, to include obtaining an independent audit to establish the market value for the forfeited 46% minority

[1] See Market Valuation of System 3, Inc. by Ueltzen & Company, Certified Public Accountants, attached as Exhibit A.

[2] See ECF No. 267-1 to 267-6 and 273, Wilbert's ancillary petitions and supporting exhibits filed in connection with Zinnel's bankruptcy in the United States Bankruptcy Court, Eastern District of California.

interest in System 3, Inc.  To avoid the uncertainty and expense of further litigation, the parties desire to settle Wilbert's third party claim to System 3, Inc. on the following terms:

      a.    The United States, by and through a subsequent Final Order of Forfeiture, will convey its clear title in 46% of System 3, Inc. to Thomas J. Wilbert, in exchange for sum of $2,800,000.00.  Payment of the sum of $1,500,000 is hereby acknowledged.  The balance owing to the United States of $1,300,000.00 shall be paid by Wilbert within twenty days from entry of the Final Order of Forfeiture.

10.    The payment by Wilbert described in Paragraph Nine above shall be in full settlement and satisfaction of any and all claims by the United States to System 3, Inc.

11.    The parties agree to execute further documents, to the extent necessary, to further implement the terms of this settlement.

12.    All parties to this stipulation hereby release plaintiff United States of America and its servants, agents, and employees and all other public entities, their servants, agents, and employees, from any and all liability arising out of or in any way connected with the forfeiture of System 3, Inc. as described herein.  This is a full and final release applying to all unknown and unanticipated injuries, and/or damages arising out of said forfeiture or sale, as well as to those now known or disclosed.  The parties to this agreement agree to waive the provisions of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

13.    All parties are to bear their own costs and attorneys' fees, if any.

Dated:  <u>March 3, 2014</u>             BENJAMIN B. WAGNER
                               United States Attorney

                           /s/ Kevin C. Khasigian
                               MATTHEW D. SEGAL
                               AUDREY B. HEMESATH
                               KEVIN C. KHASIGIAN
                               Assistant United States Attorneys

Dated:  March 3, 2014                    /s/ Donald H. Heller
                                         DONALD H. HELLER
                                         Attorney for Petitioner Thomas J. Wilbert
                                         (As authorized via email)


                                **ORDER**


        IT IS SO ORDERED.

Dated: March 4, 2014




                         Troy L. Nunley
                         United States District Judge

# EXHIBIT A



Ueltzen & Company LLP

CERTIFIED PUBLIC ACCOUNTANTS



November 15, 2013

Mr. Donald H. Heller
Donald H. Heller, a Law Corporation
3638 American River Drive
Sacramento, CA 95864

**RE:     Valuation of System 3, Inc.**

Dear Mr. Heller:

This letter summarizes our valuation of System 3, Inc. ("the Company"), dated November 15, 2013.  The purpose of the valuation is to render a conclusion as to the fair market value of a 46% stock interest ("Subject Interest") in the Company on a minority, non-marketable basis as of August 31, 2013.

> *The term "fair market value" is defined as the price at which the property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts.*

Our report is based on financial statement information provided to us by Management. Had we audited or reviewed the data underlying the financial statement information, matters may have come to our attention that would have resulted in our using amounts that differ from those provided; accordingly, we take no responsibility for the underlying data or the resulting financial statement information presented in this report.

Users of this valuation report should be aware that some business valuations are based on future earnings potential that may or may not materialize.  Therefore, the actual future operating results achieved may vary from the projected operating results used in this valuation, and the variations may be material.

3600 American River Drive, Ste. 150  ~  Sacramento, California 95864
(916) 563-7790 ~ Fax (916) 563-7799
www.ueltzen.com

Mr. Donald T. Heller
Valuation of System 3, Inc.
November 15, 2013

Page 2

Based on our analysis, we have concluded that the fair market value of the 46% Subject Interest in the Company as of August 31, 2013, on a minority, non-marketable basis was $3,030,000 (rounded).

We have no present or contemplated financial interest in the Company. Our fees for this valuation are based upon our normal hourly billing rates, and are in no way contingent upon the results of our findings. We have no responsibility to update this report for events and circumstances occurring subsequent to the date of this report.

This report has been prepared for the specific purpose of valuing the subject interest in the Company as of August 31, 2013, for litigation settlement purposes. This report is not to be copied or made available to any persons without the express written consent of Ueltzen & Company, LLP.

Attached to this letter are the following Exhibit and Appendices:

Exhibit A – Valuation Analysis and Historical Financial Statement Information

Appendix A – Statement of Assumptions and Limiting Conditions
             Independence
             Qualifications of Appraisers
             Documents Reviewed


Appendix B – Curricula Vitae for Michael G. Ueltzen, CPA/CFF, CFE, and Darci R. Keyes, CPA/ABV, CIA, JD.

Ueltzen & Company LLP

Mr. Donald F. Heller
Valuation of System 3, Inc.
November 15, 2013

Page 3

## COMPANY OVERVIEW

System 3, Inc. ("Company") is a California corporation that began operations in late 2001. It operates as an S Corporation (pass-through entity) for Federal Tax purposes. The Company is an electrical contractor that specializes in serving clients in the Utility, Wind and Solar energy sectors. Although the Company has been highly successful – it has constructed more than 40 electrical substations and hundreds of miles of transmission lines - its future success is uncertain due to the changing nature of the alternative energy sectors. First, the future of critical tax credits which have fueled the growth of the industry is not positive.[1] Second, vertical integration within its customer base is beginning to occur as the market matures. This means that general contractors are sub-contracting significantly less work out to electrical contractors, like System 3, Inc.

The Company is managed by Tom Wilbert, the founder of the Company. Mr. Wilbert owns the remaining 54% interest in the Company. The remaining 46% interest is what is being valued herein.

The Company's revenue has grown from a low of $12.6 million in 2004 (first year reviewed) to a high of $113.5 million in 2008. In 2009, the revenue fell to $42.1 million, then $30.1 million in 2010, and back up to $68.2 million and $80 million in 2011 and 2012, respectively. For the first eight months of 2013, revenue has been almost $34.4 million.

The Company's net income (before income taxes) has ranged from a loss of almost $1.0 million in 2010 to a net income high of $10.4 million in 2008. In both 2010 and 2011, net income was about $3.1 million. For the first eight months of 2013, the Company had a loss of about $200,000.

Summaries of the Company's financial statements can be found in Exhibit A - Schedules 3-5.

---

[1] Until the passage of the American Taxpayer Relief Act of 2012, signed into law on January 2, 2013, the fate of the Production Tax Credit ("PTC") for 2013 and beyond was unknown. With the passage of the law, tax credits have been extended for the near term but many believe that these may be the last PTC credits.

Mr. Donald F. Heller
Valuation of System 3, Inc.
November 15, 2013

Page 4

## VALUATION APPROACH - INTRODUCTION

Our approach has been to determine the fair market value of the Company on a minority, non-marketable basis, taking into account economic conditions, the risk factors facing the Company, and the risks inherent in holding the subject interest in the Company, in light of the facts available to us at the time.

We considered the following valuation approaches:

- ➢ The Income Approach;
- ➢ The Asset Approach; and
- ➢ The Market Approach.

Within each of these approaches there are different methods used to determine value. The application and reconciliation of these approaches and methods are set forth below.

## THE INCOME APPROACH

The Income Approach is suited to valuing operating companies on a going-concern basis and income producing assets with predictable earnings streams.  This approach emphasizes the earnings streams and cash distributions available to a potential acquirer of an interest in an entity and the rate of return required by an investor.  In the case of a hypothetical investor, market derived returns are frequently used.

The two most common methods used under the income approach are the Capitalized Cash Flow (or Earnings) Method and the Discounted Cash Flow Method.  The latter is used when future years' cash flow can be forecasted and is likely to vary from year to year.  When cash flow is relatively steady, or variations cannot be forecasted, the use of a single period capitalization is more common if the income approach is appropriate.

Given the state of the alternative energy industry (and related tax credits which drive the industry), as well as loss of work from one of the Company's major customers, we did not use the income approach as a primary valuation method.  However, we did a "reasonableness check" of the final valuation conclusion using the income approach.

Ueltzen & Company LLP

Mr. Donald H. Heller
Valuation of System 3, Inc.
November 15, 2013

Page 5

# THE MARKET APPROACH

The Market Approach is most appropriate when data on sales of comparable entities or multiples of publicly-traded companies are available for comparative purposes. In this case, any application of the Market Approach is problematic given the small size of the Company as compared to its sizeable major public competitors, concerns as to the timeliness and comparability of transactional data, and the future cash flow of the Company's operations. Given these facts, we did not value the Company under the Market Approach.

# THE ASSET APPROACH

The Asset Approach is best suited to valuing non-operating entities, such as investment companies, non-income producing assets, asset-intensive businesses (e.g., construction companies), and for companies where neither the income nor market approaches are appropriate.

We believe the tangible assets likely yield a higher result than the income approach and therefore establish a minimum value of the Company.

<u>Assets</u>

As of August 31, 2013, the Company reported $24,676,331 of assets, before adjustments. A large portion of the assets ($17,379,614) consisted of accounts receivable. At this point, Management believes that the entire amount is collectible. There was $2,797,313 for "Costs and estimated gross profit in excess of billings on contracts in progress." This represents amounts earned, but not yet billed to customers. Prepaid expenses accounted for $671,000 of assets. The original cost of total property, plant and equipment (fixed assets) was 6,714,266.[2] The net value (after depreciation) is $3,610,788. Management estimates that the fair market value of the fixed assets is approximately 50% of their original cost – we have adjusted the net value of the fixed assets to $3,357,133 (50% of their original cost). The final asset on the balance sheet is "Other Assets" of $447,314 which reflects the goodwill and covenant not to compete of a

---

[2] Of the $6.7 million in fixed assets (at original cost), over $4 million is for automobiles and trucks (of which almost $2 million are for vehicles purchased in 2008 or earlier), $1.1 million is for major tools, $0.7 million for office furniture and $0.6 million for leasehold improvements.

Ueltzen&Company LLP

Mr. Donald H. Heller
Valuation of System 3, Inc.
November 15, 2013

Page 6

construction company acquired by the Company as well as $100,100 for an interest in Trinity Palm Partners. We have assumed that the construction company goodwill and covenant have no value and have assumed the value of Trinity Palm Partners is its acquisition cost.

Adjusted assets, as of August 31, 2013 were $24,075,462.

Liabilities

As of August 31, 2013, the Company reported $13,731,157, before adjustments. There were $9,157,482 and $2,731,397 in Accounts Payable and Accrued Expenses, respectively. Billings in excess of costs and estimated gross profit (amounts billed but not yet earned) equaled $814,555. The Company had a $350,000 balance on its line of credit and $677,723 in long term debt. Although there may be a potential deferred tax liability, it has not been included in this analysis. We made no adjustments to liabilities.

Adjusted liabilities, as of August 31, 2013 were $13,731,157.

Net Asset Value

The resulting Net Asset Value (100% interest on a controlling/marketable basis) as of August 31, 2013 was $10,344,305. The calculation of the Asset Approach can be found in Exhibit A – Schedule 1.

## CONCLUSION OF VARIOUS APPROACHES

After considering the various approaches as discussed above, we have concluded that the value of the Company (100% interest) on a controlling/marketable basis as of August 31, 2013 was **$10,344,305**. However, this value does not include the minority discount or discount for lack of marketability which must be considered when valuing a minority interest.

Ueltzen&Company LLP

Mr. Donald H. Heller
Valuation of System 3, Inc.
November 15, 2013

Page 7

## MINORITY DISCOUNT

The value of the Company determined represents a controlling value. The Subject Interest is a minority interest - an interest that lacks the capacity to initiate and control the liquidation of an entity, or control the use of an entity's underlying assets. The holder of a minority interest in a company does not have the ability to affect the day-to-day operations of the company, control compensation for management, appoint or change management, acquire or liquidate assets, or pay discretionary cash distributions. Therefore, a minority discount is required to reflect the investment characteristics of the Subject Interest. A minority interest in a privately held company is almost always worth less than its proportionate share in the entire company.

A minority discount, as defined by the Business Valuation Committee of the American Society of Appraisers, is:

> *The reduction from the pro-rata value of the entire business to reflect the absence of the power of control.*

System 3, Inc., has a controlling shareholder and the purchaser of a 46% interest would not have significant control over the actions of the Company. Based upon our review of studies of minority discounts and our professional judgment, we believe that an investor would consider a minority discount of at least 15%.

## DISCOUNT FOR LACK OF MARKETABILITY

The discount for lack of marketability results from the fact that there is little or no market for a minority shareholder's interest in a private-held company. Thus a prospective buyer of such an interest would factor this limited marketplace into the pricing for a minority shareholder interest in the Company.

We have reviewed studies typically used in determining discounts and believe a reasonable investor would apply a discount for lack of marketability of at least 25% in determining the value of the subject interest in the Company.

As discussed earlier in this section, we concluded on a controlling, marketable value of $10,344,305 for a 100% interest in the Company – a 46% pro-rata interest would be valued at $4,758,380. Applying the indicated minority discount of 15% and a discount

Ueltzen & Company LLP

Mr. Donald H. Heller
Valuation of System 3, Inc.
November 15, 2013

Page 8

for lack of marketability of 25% results in a minority, non-marketable value of $3,033,467 [$3,030,000 (rounded)] for a 46% interest in the Company.

## REASONABLENESS CHECK USING INCOME APPROACH

Although we did not use the Income Approach to arrive at our conclusion of value, we did review the valuation conclusion in light of the Income Approach as a reasonableness check.

We reviewed the after-tax net income for the Company from 2009 to 2012 and the first eight months of 2013. Although net income (after income taxes) was about $2.2 million in 2009, it has not exceeded $2.0 million since. There was a loss of $550,000 in 2010, as well as a loss of about $130,000 for the first eight months of 2013.

To test the reasonableness of the net asset value, we reviewed values under the income approach. The five year average (2009-2013) was slightly under $1.1 million. If we assume that the Company can continue to make this average ($1.1 million after taxes) going forward, the value of the Company (using a capitalization multiple of 4 – a 25% capitalization rate) would be $4.4 million. A 46% interest, after a 25% discount for lack of marketability, would be valued at $1.16 million. Using a multiple of 5.0 (capitalization rate of 20%), the value of the 46% interest would increase to $1.54 million. Both of these values are significantly under the value of the 46% interest using the Asset Approach.

We noted that the ongoing income would need to double that of the average for the last five years (i.e. exceed $2.2 million after taxes) before the value using the income approach would exceed the net asset value.[3]

The reasonableness check (using the income approach) is detailed in Exhibit A – Schedule 2.

---

[3] This calculation uses the midpoint of the two capitalization multiples (4.5).

Ueltzen & Company LLP

Mr. Donald H. Heller
Valuation of System 3, Inc.
November 15, 2013

Page 9

## CONCLUSION

In conclusion, we have considered the Income, Asset and Market Approaches to valuation in order to determine the value of the Company on a minority, non-marketable basis.

Our conclusion of value, based on the Asset Approach, is summarized in Exhibit A. As discussed in the Valuation Analysis section, we concluded a minority, non-marketable value of **$3,030,000 (rounded)** for a 46% interest in System 3, Inc.

**46% Interest**
**Minority, Non-Marketable Basis**
**As of August 31, 2013**

**$3,030,000**

Sincerely,

UELTZEN & COMPANY, LLP

Michael G. Ueltzen, CPA/CFF, CFE

Darci R. Keyes, CPA/ABV, CIA, JD

Ueltzen & Company LLP

SYSTEM3, INC.
VALUATION REPORT
NOVEMBER 15, 2013

# APPENDIX A

---

- ➢ STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS

- ➢ INDEPENDENCE

- ➢ QUALIFICATIONS OF APPRAISERS

- ➢ DOCUMENTS REVIEWED

## APPENDIX A – (CONTINUED)

### STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS

We have no present or contemplated financial interest in the Company covered by this report, or other conflicts, which could cause a question as to the valuation analyst's independence or objectivity. Our fees for this engagement are based on our normal hourly billing rates, and are in no way contingent upon our conclusion of value. We have no responsibility to update this report for events and circumstances occurring subsequent to the date of this report.

The conclusion of value rendered in this report is based on information provided in whole or in part by the management of the Company and also by third parties. We have relied upon the representations of management concerning the value and useful condition of the assets and the amounts and terms of liabilities except as specifically stated to the contrary in this report. We have not attempted to confirm whether or not all assets are free and clear of liens and encumbrances, or that the owners have good title to all assets.

Ueltzen & Company, LLP does not purport to be a guarantor of value. The valuation of closely-held entities and property interests is an imprecise science; value being a blend of facts and informed judgements. Reasonable persons can differ in their estimates of value. Ueltzen & Company, LLP has, however, endeavored to apply conceptually sound and commonly accepted methods of valuation in determining the estimate of value included in this report.

The valuation opinion included in this report assumes that the management of the Company will maintain the character and integrity of the Company through any sale, renovation, or reduction of any owner's participation in the Company.

This valuation is valid only for the valuation date indicated and for the purpose stated.

Economic, industry, and statistical information have been gathered from sources that are deemed to be reliable. We have not attempted to audit or otherwise verify the accuracy of this information and, therefore, make no representations as to its accuracy or completeness.

This report is not to be copied, in whole or in part, or made available to anyone without the express written consent of Ueltzen & Company, LLP.

The valuation analyst, by reason of performing this valuation and preparing this report, is not required to give expert testimony nor to be in attendance in court or at any government hearing with reference to the matters contained herein, unless prior arrangements have been made with Ueltzen & Company, LLP.

Ueltzen & Company LLP

VALUATION OF SYSTEMS, INC.

## APPENDIX A – (CONTINUED)

We have performed a valuation engagement and prepared this detailed report, as those terms are defined in the Statement on Standards for Valuation Services (SSVS) issued by the American Institute of Certified Public Accountants, and the Professional Standards issued by the National Association of Certified Valuation Analysts.

Our valuation engagement was performed solely for the purpose described in this report, and should not be used for any other purpose; we have no obligation to update this report or conclusion of value for any information that comes to our attention subsequent to the date of this report.

Ueltzen & Company LLP

VALUATION OF SYSTEMS, INC.

## APPENDIX A – (CONTINUED)

### INDEPENDENCE

Neither Ueltzen & Company, LLP, nor any individuals involved with this appraisal have any present or contemplated future interest in the subject Company or any other interest, which might tend to prevent making a fair and unbiased appraisal.

Ueltzen & Company LLP

## APPENDIX A – (CONTINUED)

---

**QUALIFICATIONS OF APPRAISERS**

This appraisal report was prepared by Ueltzen & Company, LLP, a Certified Public Accounting Firm, specializing in litigation support and valuation services. Various members of the firm have been offering valuation services going as far back as the 1970's. These individuals have valued a variety of businesses in a range of industries including professional services, manufacturing, real estate, wholesaling, distribution, and retailing. Valuations have been prepared in connection with estate and gift tax planning and compliance, partner/shareholder disputes, marital dissolutions, ESOP transactions, and mergers and acquisitions.

Michael G. Ueltzen, CPA/CFF, CFE, and Darci R. Keyes, CPA/ABV, CIA, JD, are the authors of this report. For further information, see the curricula vitae included as Appendix B.

## APPENDIX A – (CONTINUED)

**DOCUMENTS REVIEWED**

> ➢ CPA-Prepared Reviewed Financial Statements for the years ending December 31, 2004 – 2012.

> ➢ Internally-Prepared Financial Statements for the 8 months ending August 31, 2013.

> ➢ Corporate tax returns, and amended returns, for the years ending December 31, 2006-2008.

> ➢ Fixed asset schedule as of August 31, 2013.

> ➢ Information regarding PTC credits provided by Company's lobbying firm.

> ➢ Other information and documents provided by Management.

SYSTEM 3, INC.
VALUATION REPORT
NOVEMBER 15, 2013

# APPENDIX B

CURRICULUM VITAE OF MICHAEL G. UELTZEN, CPA/CFF, CFE

CURRICULUM VITAE OF DARCI R. KEYES, CPA/ABV, CIA, JD





CERTIFIED PUBLIC ACCOUNTANTS

# Michael G. Ueltzen
## Certified Public Accountant

**Professional Credentials and Certifications**

Certified Public Accountant (CPA) – licensed in California, Nevada, New York and Washington, D.C. with practice privileges in other states

Certified in Financial Forensics (CFF) – American Institute of Certified Public Accountants

Certified Fraud Examiner (CFE) – Association of Certified Fraud Examiners

**Employment**

Ueltzen & Company, LLP
Consultants and Accountants to Management and Counsel
1997 - Present - Partner - Forensic Accounting Practice

John Waddell & Co., An Accountancy Corporation
Local Accounting and Consulting Firm
1977 - 1997 - Managing Director of the Firm and its Accounting and Audit Practice

Peat, Marwick, Mitchell and Company, CPAs
International Accounting and Consulting Firm
1970 - 1977 - Audit Supervisor

**Professional Activities**

American Institute of Certified Public Accountants

AICPA Sustained Contribution Award (2011) and AICPA Forensic and Litigation Services Committee Volunteer of the Year (2003)

Commissioner - National Accreditation Commission (2011 – Present)

Chair of the Certified in Financial Forensics Credential Committee (2008 – 2011)

Chair of the Forensic and Valuation Services (FVS) Executive Committee (2004 - 2007)

Michael G. Ueltzen, CPA/CFF, CFE
Curriculum Vitae
Page 2

**Professional Activities (continued)**

Member of the AICPA Council (the governing body) (1992 - 1999)

Member on national committees dealing with regulatory affairs and professional standards including the National Steering Committee on Regulation of the Profession, Special Committee on Interstate Mobility, Committees on Relations with the Judiciary, Forensic and Litigation Services, Relations with the Bar, State Legislation, and two Professional Ethics Committee Task Forces

California Society of Certified Public Accountants

Distinguished Service Award (2002)

President (1996 - 1997) and prior service as Vice President and Treasurer

Chair of the Accounting Principles and Auditing Standards, California Bankers Liaison, Forensic and Litigation Services, Government Relations, Professional Conduct, and Finance Committees

Chair of the Professional Accountability and Curriculum Development Task Forces

Member of the Executive Committee and Board of Directors

National Judicial College (1993 - 2005) and Federal Judicial Center (1993 - 2002) Faculty Member

California Board of Accountancy

Ethics Curriculum Committee (Governor's Appointment) (2010 – 2012)

**Civic Activities**

Accounting Advisory Council, California State University, Sacramento (1992 – 2006)

BloodSource Board of Trustees – President (2002 – 2004 and 1990 - 1992), member of the Executive Committee and other leadership positions (1985 - 1993 and 1999 - 2010)

**Education**

Master of Business Administration, California State University, Sacramento - June 1970

Bachelor of Science Degree with Honors in Accounting, California State University, Sacramento - June 1969; awarded membership in the Honor Fraternities Phi Kappa Phi, Beta Gamma Sigma, and Beta Alpha Psi (President)

**Contact Information**

Email: mueltzen@ueltzen.com

Rev. 08/12

 Ueltzen & Company LLP



## Ueltzen & Company LLP

CERTIFIED PUBLIC ACCOUNTANTS



### Darci R. Keyes
### Certified Public Accountant

**Professional Credentials**

Certified Public Accountant (CPA) – State of Indiana and California

Accredited in Business Valuation (ABV) – American Institute of Certified Public Accountants

Certified Internal Auditor (CIA) – Institute of Internal Auditors

Juris Doctor (JD) – State of New York, State of Pennsylvania, and State of Michigan

**Employment**

Keyes Consulting Group
*Consulting Services and Affiliated Expert for Ueltzen & Company, LLP*
2013 - Present – Consultant

Ueltzen & Company, LLP
*Consultants and Accountants to Management and Counsel*
2012 - 2013 – Director – Litigation Consulting and Forensic Accounting Practice

Plante and Moran, PLLC
*Public Accounting Firm (with Consulting Group)*
2008 - 2012 – Senior Manager

Anderson Economic Group, LLC
*Business Valuation and Litigation Support Firm*
2007 - 2008 – Senior Manager

Ford Motor Company
*Automotive Company*
2000 - 2007 – Financial Analyst/Internal Auditor

Law Office of Darci Keyes
1997 - 2000 – Attorney at Law (Pennsylvania)

Darci R. Keyes, CPA/ABV, CIA, JD
Curriculum Vitae
Page 2

**Professional Activities**

American Institute of Certified Public Accountants

Forensic and Valuation Services (FVS) Section, Member

**Professional Activities (continued)**

Michigan Association of Certified Public Accountants, Member

National Association of Certified Valuators and Analysts, Member

Oakland County Bar Association (Michigan), Member

**Education**

Masters of Business Administration, University of Pittsburgh, Joseph M. Katz Graduate School of Business, 2000. Recipient of the Katz Business Alliance Fellowship – Full scholarship based on academic achievement, work experience and GMAT scores.

Juris Doctor, University at Buffalo School of Law – State University of New York, 1996. Magna Cum Laude. Government Law Certificates (Concentrations) in Real Estate & Finance, and Taxation. Senior Associate Desmond Moot Court Board – Best Brief, Best Orator, Fall 1994.

Bachelor of Arts, Nazareth College, Rochester, New York, 1992. Major in French and minor in Business. Cum Laude.

**Contact Information**

Email: dkeyes@ueltzen.com

Rev. 10/13

Ueltzen Company LLP