

STEVEN ZINNEL
11 Verdin Lane
Aliso Viejo, CA 92656

In pro se

**JUL 5 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN ZINNEL,<br><br>Defendant. | Case No.: 2: 11-cr-00234-TLN<br><br>**DEFENDANT STEVEN ZINNEL'S NOTICE OF MOTION AND MOTION FOR JUDICIAL DETERMINATION OF AMOUNT DUE AND CONTINUED OBJECTIONS; MEMORANDUM OF POINTS AND AUTHORITIES AND EXHIBITS**<br><br>Hearing<br><br>Date:    August 4, 2022<br>Time:    9:30 AM<br>Judge:   Troy L. Nunley<br>Ct. Rm: 2 |

To the Court, the United States of America, and any interested persons and organizations:

**PLEASE TAKE NOTICE** that on August 4, 2022 at 9:30 AM in Courtroom 2, of the United States District Court located in the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, a hearing will be held on Defendant and **alleged** judgment debtor Steven Zinnel's ("Zinnel") MOTION FOR JUDICIAL DETERMINATION OF AMOUNT DUE AND CONTINUED OBJECTIONS.

The grounds for the motion are that after eight (8) years, for the first time on June 3, 2022 during a Settlement Conference on-the-record stipulation before Chief Magistrate Judge Kendall J. Newman, Plaintiff United States of America ("government") claims and agrees on the record that

1    **the maximum amount Steven Zinnel owes** in the case entitled *United States v. Steven Zinnel*,

2    U.S.D.C. ED CA Case No. 2:11-cr-00234-TLN ("Criminal Case") is **$1,163,056.06** instead of

3    **$3,315,723.40;** an admission and stipulation by the government and its lawyers that the government

4    and its officers-of-the-court lawyers have been **overstating**, for almost a decade, the amount owed

5    by Steven Zinnel in the Criminal Case by at least **$2,152,667.34** which Zinnel maintains is a fraud

6    on the Court and blatant lying by the government lawyers including AUSA Matthew Dean Segal,

7    AUSA Audrey Benison Hemesath, former AUSA Kurt Didier (now practicing at The Law firm of

8    Knapp, Petersen & Clarke), and AUSA Lynn Trinka Ernce [1] to the Court, Steven Zinnel, David

9    Zinnel, and TD Ameritrade Clearing, Inc.

10          For over eight (8) years, Steven Zinnel has consistently and emphatically maintained that

11   the government has **marshalled $3,150,129.14 that the government has been sitting on for**

12   **almost a decade**, to be applied against $3,014,819.00 in court-ordered restitution, and fine

13   resulting in Zinnel being owed **$ 135,310.14** by the government for its over-collecting of the court-

14   ordered restitution and fine. This is a position that Zinnel has never waivered on including during

15   the Settlement Conference on June 3, 2022 before Chief Magistrate Judge Kendall J. Newman in

16   *United States v. Steven Zinnel / TD Ameritrade*, U.S.D.C. ED CA Case No. 2:21-mc-00098-TLN-

17   AC ("Misc. Case #1). The Settlement Conference parties, to wit; the United States of America,

18   Steven Zinnel, and David Zinnel, and their respective counsel, stipulated and agreed on the record

19   on June 3, 2022 that that maximum the United States of America may now seek in the underlying

20   Criminal Case is **$1,163,056.06** and Steven Zinnel continues to maintain he owes nothing and the

21   government and in fact, the government has over-collected **$135,310.14** that is owed by the

22   government to Steven Zinnel.

23

24          This Motion seeks a judicial determination, based on the government's recent judicial

25   admission [2], and before any appeal to the Ninth Circuit Court of Appeals, of the amount Steven

26

27   [1] Steven Zinnel will be reporting the Offending Attorneys conduct unbecoming a member of the State Bar and blatant misrepresentations to a Court to the State Bar of California and the Department of Justice's Office of Professional Responsibility.

28   [2] Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. The government lawyers previously citing *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988).

1  Zinnel actually owes in the criminal case entitled *United States v. Steven Zinnel*, U.S.D.C. ED CA

2  Case No. 2:11-cr-00234-TLN.  Further, this court-filing is Steven Zinnel's continued objection that

3  he does not owe any money in the Criminal Case and in fact that the government has over-collected

4  **$135,310.14** that is owed by the government to Steven Zinnel.

5      This Motion is based on this Notice of Motion and Motion, the attached Memorandum of

6  Points and Authorities and Exhibits, the stipulation and agreement reached on the record during

7  Settlement Conference on June 3, 2022 before Chief Magistrate Judge Kendall J. Newman in *United*

8  *States v. Steven Zinnel / TD Ameritrade*, U.S.D.C. ED CA Case No. 2:21-mc-00098-TLN-AC

9  ("Misc. Case #1), ), all the filings in *United States v. Steven Zinnel / TD Ameritrade*, U.S.D.C. ED

10  CA Case No. 2:21-mc-00098-TLN-AC ("Misc. Case #1), all the filings in *United States v. Steven*

11  *Zinnel / David Zinnel, Castana Trust*, U.S.D.C. ED CA Case No. 2:21-mc-00143-TLN-AC ("Misc.

12  Case #2") , all the filings in *United States v. Steven Zinnel*, U.S.D.C. ED CA Case No. 2:11-cr-

13  00234-TLN, and any oral argument at the hearing.

14      NOTICE IS FURTHER GIVEN that Steven Zinnel continues his objection to the amount

15  the government claims is due in the underlying Criminal Case entitled *United States v. Steven Zinnel*,

16  U.S.D.C. ED CA Case No. 2:11-cr-00234-TLN.

17      NOTICE IS FURTHER GIVEN that Steven Zinnel continues his objection that District

18  Court Judge Troy L. Nunley cannot hear or decide this Motion and Objection because on May 23,

19  2021, over a year ago, Zinnel filed an OBJECTION to Judge Troy L. Nunley presiding over this

20  case, Misc. Case #1, #ECF #18, that has still not been ruled on by District Court Judge other than

21  Judge Troy L. Nunley.

22

23

24  Respectfully submitted,

25

26

27  Dated: July 1, 2022

    Steven Zinnel

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I. KEY LAW

3      The right to adjudication before an Article III judge is an important constitutional right.

4  *United States v. Mortensen*, 860 F.2d 948, 950 (9th Cir. 1988); *Pacemaker Diagnostic Clinic of*

5  *America, Inc. v. Instromedix, Inc.*, 725 F.2d 537, 541 (9th Cir. 1984) (en banc). Critically, under the

6  magistrate judge system, even though a magistrate judge may be designated to determine most

7  pretrial matters directly, the parties can ask the district court to reconsider any such matter if "the

8  magistrate judge's order is clearly erroneous ·or contrary to law." 28 U.S.C. 636(b)(l)(A); *Louis*

9  *Branch v. D. Umphenour*, 936 F.3d 994 (9th Cir. 2019) (**reversing an Eastern District of**

10 **California judicial decision**). Under the magistrate judge system, no party will be denied

11 independent review by an Article III judge. *Louis Branch. Id.* This includes Zinnel who in fact is

12 the named defendant in this case. Any denial would  lack the requisite supervision by an Article III

13 officer.

14

15

16 ## 2.  **DOCKET CITATIONS IN THIS OBJECTION**

17      On a clarification matter, as this Motion cites court-filings in five (5) different cases filed in

18 the United States District Court, Eastern District of California, (Sacramento) and the Superior Court

19 of California, County of Sacramento, Zinnel will refer to court-filings in the cases:

20      • *United States v. Steven Zinnel*, Case No. 2:11-cr-00234-TLN as "**Criminal Case**;"

21      • *United States v. Steven Zinnel / TD Ameritrade*, Case No. 2:21-mc-00098-TLN-AC as

22        "**Misc. Case #1**;"

23      • *United States v. Steven Zinnel / David Zinnel, Castana Trust* Case No. 2:21-mc-00143-

24        TLN-AC as "**Misc. Case #2**;"

25      • *United States v. Steven Zinnel / David Zinnel*, Case No. 2:19-mc-00242-TLN as

26        "**Subpoena Case**;"

27      • *In The Matter of The Castana Trust Dated March 4, 2009*, Superior Court of California,

28        County of Sacramento Case No. 34-2016-00200990-PR-TR-FRC as "**Probate Case**."

3. **ANALYSIS**

    **3.1**    <u>Steven Zinnel does not owe any money in the underlying Criminal Case and</u>
               <u>the government has actually over-collected $135,310.14 in the Criminal Case</u>
               <u>that should be returned to Zinnel</u>

During the Settlement Conference on June 3, 2022, on the record the parties stipulated that Steven Zinnel maintains that Plaintiff has over-collected from Zinnel in the Criminal Case thus the government owes Zinnel **$135,310.14.** (Misc. Case #1. ECF nos. 128 & 134). The parties further stipulated on the record that now, the absolute maximum, the government can attempt to collect in the underlying Criminal Case and Misc. Cases #1 and #2 is capped at **$1,163,056.06.** (Misc. Case #1. ECF nos. 128 & 134). The agreement reached between the parties at the Settlement Conference on June 3, 2022 was that the Court would have an evidentiary hearing to make a judicial determination, before Zinnel appeals to the Ninth Circuit, as to what amount the District Court believes Zinnel owes in the Criminal Case <u>and</u> the stipulated range between the parties is between a negative $135,310.14 and a positive $1,163,056.06 which is a **delta of $1,298,366.14** for either the District Court or the Ninth Circuit Court of Appeals to adjudicate. During the June 3, 2022 Settlement Conference there was no agreement between the parties, especially Steven Zinnel, that Plaintiff United States would simply be able to garnish the government's stipulated cap of $1,163,056.06. It was never agreed to or contemplated by Steven Zinnel that after the June 3, 2022 Settlement Conference that either the Magistrate Court or the District Court would simply enter a garnishment order for the government's stipulated cap of $1,163,056.06.

To provide background to the Court, Steven Zinnel's position, and preserve the appellate record, Zinnel attaches hereto, as Attachment #1, STEVEN ZINNEL'S NON-CONFIDENTIAL SETTLEMENT CONFERENCE STATEMENT submitted to Chief Magistrate Judge Kendall J. Newman, and the parties, on or about May 31, 2022 and incorporates STEVEN ZINNEL'S NON-CONFIDENTIAL SETTLEMENT CONFERENCE STATEMENT into this Objection as if fully set forth herein.

1        On May 6, 2019, Zinnel was resentenced for a second time to the longest sentence in the

2    history of the United States for Bankruptcy Fraud. Zinnel's 152-month prison sentence exceeds the

3    longest sentence ever in a bankruptcy fraud case by 25%. (see Criminal Case, ECF #585-9, pgs. 2-

4    5).   Similarly situated bankruptcy fraud defendants were sentenced to an average of 19 months

5    imprisonment with the longest prison sentence being 78 months. (see Criminal Case ECF nos. 585-

6    7, pgs. 3-26 and 615, pgs. 11-14). Nevertheless, on May 15, 2019 the district court filed a Second

7    Amended Judgment in Criminal Case. (see Criminal Case, ECF #653).

8        The Second Amended Judgment ordered Zinnel to pay a Special Penalty Assessment of

9    $1,500, Victim Restitution of $2,513,319, and the statutory maximum fine of $500,000. (Criminal

10   Case, ECF #653). The total ordered is thus $3,014,819. A U.S. Courts Case Inquiry printed on

11   1/11/21 that reflects the Total Ordered was $3,014,819. (Misc. Case #1, ECF #84, pg. 21). U.S.

12   Courts Case Inquiry printout details a "balance" of $3,014,819 **because the government refuses to**

13   **deposit the marshalled $3,150,129.14 that the government has been sitting on for almost a**

14   **decade with the Court leaving $ 135,310.14 to be returned to Steve Zinnel**. The printout reflects

15   that since Zinnel has been incarcerated for almost nine (9) years now, the Bureau of Prisons has

16   collected $525 from Zinnel as of 1/11/21, through the Inmate Financial Responsibility Program

17   pursuant to the operative judgment. (Misc. Case #1, ECF #84, pg. 21).

18

19       In April of 2014, Zinnel and the government agreed and stipulated to restitution so that the

20   funds the government had marshalled to date, $3,025,209.86 as of March 3, 2014, would be

21   immediately paid to the restitution recipients including $150,000 to each of Zinnel's children so

22   they both had money for college. (see Criminal Case ECF #615, pg. 359; Misc. Case #1, ECF #84,

23   pg. 23). Both of Zinnel's children are college graduates now and they never received the money for

24   college **because the government refuses to deposit with the Court the marshalled $3,150,129.14**

25   **that the government has been sitting on for almost a decade.** On April 1, 2014, Zinnel's attorney

26   Suzanne Luban sent an email to government attorney AUSA Kevin Khasigian memorializing the

27   agreement. (see Misc. Case #1, ECF #84, pg. 21; Criminal Case, ECF #586-4, pg. 10). The same

28   day, Zinnel's attorney and two of the government attorneys entered into a formal Stipulation and

1  Order Re: Restitution that provided Zinnel's children with \$150,000 each for college. (see Misc.

2  Case #1, ECF #84, pgs. 25-27; Criminal Case ECF nos. 343 and 586-4, pgs. 11-13).

3      When Zinnel moved to stay the sale of real property forfeited prior to sentencing, the

4  government opposed the motion to stay (Misc. Case #1, ECF #84, pgs. 29-32; Criminal Case ECF

5  nos. 314, 586-4., pgs. 2-5). Plaintiff's Opposition filed on March 3, 2014 stated:

7      "The only way that he would be prejudiced by forfeiture and liquidation of
        these assets would be that they could generate funds that the Attorney General
8       could in his discretion direct to Zinnel's victims (including his ex-wife).
        **Zinnel's spite is a sentencing factor, not a basis for a motion to stay**."
9       (Misc. Case #1, ECF #84, pg. 29)

11     The court-filed Opposition to the Motion to Stay was signed by and filed by Plaintiff's

12  lawyer AUSA Kevin Khasigian. (Criminal Case ECF #314).

13     Rule 11 of the *Federal Rules of Civil Procedure* imposes a duty upon lawyers who sign

14  court-filings. With each court-filing by a lawyer for the government, Rule 11 creates a certification

15  that the "legal contentions are warranted by existing law" and that "the factual contentions have

16  evidentiary support." Barrels of ink have been spilled in judicial opinions, scholarly journals, trade

17  publications, and legal education conferences on Rule 11 and Zinnel will not spill any more ink

18  regarding the Rule 11 certification and sanctions that may be imposed here.

19     In Plaintiff's Opposition to the Motion to Stay, AUSA Kevin Khasigian represented to the

20  court, restitution recipients, and Zinnel that any funds forfeited from Zinnel can be used to pay

21  restitution recipients and the government and its lawyers wanted to use forfeited funds to pay the

22  restitution recipients right away. However, contrary to the government lawyers' lofty

23  representations to the court about getting the victims paid, it took the government until March and

24  June of 2016 to sell the property. Therefore, it took the government 756 days to sell the property

25  that the government lawyers represented to the court on March 3, 2014 was "expensive to maintain."

27  (Misc. Case #1, ECF #84, pgs. 29-32; Criminal Case ECF nos. 615, 26 p. 359; 314).

1    Additionally, in Plaintiff's Opposition to Zinnel's Motion to Stay Forfeiture, AUSA Kevin

2    Khasigian wrote, and four government attorneys certified under Rule 11 the following:

> "After all, forfeiture is designed to create a pool of assets from which victims can be reimbursed."
>
> "Delaying forfeiture will only prolong the ability of [Zinnel's] victims to receive distributions and would serve to further harm [them]." See *United States v. Davis*, No. 07-cr-011, 2009 WL 2475340, at *3 (D. Conn. June 15, 2009)."
>
> "Simply put, the sooner the properties are sold the better off Zinnel's victims will be." [Misc. Case #1, ECF #84, pg. 32; Criminal Case ECF #314, p. 5]

**The government lawyers have made judicial admissions that they must be forced to abide by.** The Court must find the statements made by the government lawyers in a court filing in the Criminal Case on March 3, 2014 (Criminal Case, ECF #314; Misc. Case #1, ECF #84, pgs. 29-32) that the government will be applying the **$3,025,209.86** marshalled by the government from Zinnel as of **March 3, 2014**, over eight (8) years ago, to pay Zinnel's court-ordered financial obligations. See *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("**Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact**") (emphasis added, internal citation omitted); id. at 227. ("[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the district court").

Further, four (4) government lawyers have represented and certified under Rule 11 in April of 2014, that all forfeited funds in the Criminal Case would be used to pay the restitution recipients including $150,000 to each of Zinnel's children for college. Zinnel's two children have now graduated from college, but yet the government lawyers who are sitting on $3,149,604.14 in marshalled funds and refuse to pay the restitution recipients. In aggravation, the same government lawyers are attempting double-dip by trying to collect in State Court in this matter.

1    Four government lawyers have represented to Judge Troy Nunley, Zinnel's lawyers, and to

2  Zinnel in a court-filing April 2014 that "forfeiture is designed to create a pool of assets from which

3  victims can be reimbursed" and that the government lawyers wanted to get the restitution recipients

4  paid right away. (Misc. Case #1, ECF #84, pgs. 29-32; Criminal Case ECF #314).

5         The same government lawyers should be stopped from taking a contrary position here.

6         On September 21, 2016, Plaintiff's lawyer AUSA Kevin Khasigian sent an email to Zinnel's

7  attorney Suzanne Luban admitting Plaintiff United States had marshalled $3,149,604 in assets in

8  Zinnel's Criminal Case, but "**No funds have been applied to restitution or the fine**." (emphasis

9  added). (Misc. Case #1, ECF #84, pg. 34; Criminal Case ECF #586-4, p. 19). The September 16,

10  2016 email was a sentencing exhibit and was brought to the court's attention in Zinnel's Sentencing

11  Memorandum. (Criminal Case ECF nos. 586-4, p. 19, 615, p. 360).

12         After Zinnel received AUSA Khasigian's representation to another lawyer in an email

13  regarding the funds Plaintiff had marshalled for the restitution and fine, over the next year, Zinnel

14  wrote several letters to Plaintiff's lawyers trying to get Plaintiff United States to pay the restitution

15  recipients, including Zinnel's children paid. Plaintiff's counsel did not respond to Zinnel's letters.

16  Therefore, on December 5, .2017, Zinnel filed a Motion to Enforce the Judgment and Hold Plaintiff

17  and its lawyers in contempt of court for failing to pay the restitution recipients including Zinnel's

18  children $150,000 for college. (Misc. Case #1, ECF #84, pgs. 36-39; Criminal Case ECF nos. 409,

19  586-4, pgs 21-40).

20

21         The Department of Justice, Asset Forfeiture and Money Laundering Section ("AFMLS")

22  published in 2016 an "Asset Forfeiture Policy Manual" that is a compilation of policies governing

23  the Department of Justice Asset Forfeiture Program. The purpose of the Policy Manual is to provide

24  Department of Justice prosecutors with a reference manual containing the policies and procedures

25  of the DOJ. For his resentencing in May 2019, Zinnel filed relevant portions of the AFMLS "Asset

26  Forfeiture Policy Manual" as a sentencing O exhibit. (Criminal Case ECF #586-4, pgs. 58-68), In

27  this Misc. Case #1, Zinnel has previously filed with the Court the relevant portions of the Policy

28

1  Manual with Zinnel's hand-written notations on the pages. (Misc. Case #1, ECF #84, pgs. 41-51).
2  The DOJ "Asset Forfeiture Policy Manual" states in relevant part:

3       This procedure enables the Attorney General to transfer forfeited funds to a court for
4  satisfaction of a criminal restitution order. (Misc. Case #1, ECF #84, pg. 42; Criminal Case ECF
5  #586-4 p. 59). Potential victims must be notified of the opportunity to file a petition for remission. ·
6  (Misc. Case #1, ECF #84, pg. 43; Criminal Case ECF #586-4 p. 60).  The Restoration Procedures
7  enable the government to complete the forfeiture. This permits victims to obtain fair compensation
8  from the forfeited assets, in accordance with the court's restitution order. (Misc. Case #1, ECF #84,
9  pg. 46; Criminal Case, ECF #586-4 p. 63).  Payment will be made only in accordance with the
10 court's restitution order. (Misc. Case #1, ECF #84, pg. 48; Criminal Case, ECF #586-4 p. 65). Is a
11 prosecutor bound, ethically or otherwise, to forego forfeiture in favor of restitution? (Misc. Case #1,
12 ECF #84, pg. 50; Criminal Case, ECF #586-4 p. 67). Department of Justice policy is to collect and
13 marshal assets for the benefit of victims. (Misc. Case #1, ECF #84, pg. 50; Criminal Case, ECF
14 #586-4 p.67). Thus, a prosecutor who uses forfeiture tools as a means to provide remission or
15 restoration of assets to crime victims fulfills any obligation that the prosecutor may have under the
16 Justice for All Act to crime victims. (Misc. Case #1, ECF #84, pg. 51; Criminal Case, ECF #586-4
17 p. 68). The government uses forfeited property to recompense victims. (Misc. Case #1, ECF #84,
18 pg. 51; Criminal Case, ECF #586-4, pg. 68).  At Zinnel's resentencing in May of 2019, Zinnel
19 informed the Court and Plaintiff's counsel that the restitution, fine, and special assessment in this
20 case are paid. (Misc. Case #1, ECF #84, pgs. 53-55; Criminal Case, ECF #615, pgs. 359-360).

22       An attorney can never lie to another attorney Plaintiff's attorney AUSA Kevin Khasigian's
23 representations to Zinnel and his attorney in the September 21, 2016 email (Misc. Case #1, ECF
24 #84, pg. 34; Criminal Case ECF #586-4 p. 19) and Opposition to Motion to Stay (Misc. Case #1,
25 ECF #84, pgs. 29-32; Criminal Case ECF #314) are party-opponent admissions which is a hearsay
26 exception under *Federal Rules of Evidence* 801(d)(2). Further, the Court must find the statements
27 made by the government lawyers in the court filing in the Criminal Case on March 3, 2014 (Criminal
28 Case, ECF #314; Misc. Case #1, ECF #84, pgs. 29-32) as judicial admissions that now cannot be

changed. See *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("**Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact**") (emphasis added, internal citation omitted); id. at 227. ("[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the district court").

Not only is AUSA Kevin Khasigian an attorney, but he is a federal prosecutor with a heightened duty to be honest. In the Criminal Case, for Zinnel's May 2019 resentencing, Zinnel briefed that an attorney can never lie to another attorney. (Criminal Case ECF nos. 615, pgs. 244-248; 586-7, pgs. 27-66).

- Rules of professional conduct impose a duty of candor to the court and opposing counsel;
- In its simplest application, Rule 4.l(a) merely codifies a simple proposition: although **lawyers** are supposed to be zealous partisans of their clients, they **must draw the line at lying**. **A lawyer must not make misrepresentations to a court or another lawyer**. Rule 4.l (a) recodifies the traditional rule that a lawyer's word is his bond. (Criminal Case ECF nos. 615, p. 245; 586-7, p. 3).
- The failure to disclose a material fact is an ethical violation ... A lawyer's responsibility to act with candor and honesty necessarily requires disclosure of significant facts, even though the disclosure might not be in the interest of the client. (Criminal Case ECF nos. 615, p. 245; 586-7, p. 43).

Additionally, in Misc. Case #2, Zinnel requested that the Court take Judicial Notice that in the criminal case entitled *United States v. Keith Raniere*, U.S.D.C. ED NY case number 18-cr-204-NGG, Plaintiff United States of America, by and through its Department of Justice attorneys, take the position that criminal forfeited funds in the criminal case will be used to pay defendant Keith Raniere's victims $3.4 million. (Misc. Case #2, ECF #50). Again, this is a Judicial Admission by government lawyers that forfeited funds must be used to satisfy Zinnel's restitution windfall recipients.

1    Here is the proper accounting of Criminal Case funds with the U.S. Attorney's Office and

2    the amount government lawyers for the United States have over-collected:

3        $3,150,129.14
         -$3,014,819.00
4        **$ 135,310.14 (the amount the government owes Zinnel)**

5    Thus, when the government filed its first garnishment action, Misc. Case #1, Steven Zinnel

6    owed no restitution, fine, or special assessment and Zinnel was actually owed the $135,310.14 the

7    government lawyers had over-collected.

8        However, after sleeping on its perceived rights for around seven (7) years, on April 2, 2021,

9    the government initiated its first garnishment proceeding, Misc. Case #1, by filing an

10   APPLICATION FOR WRIT OF CONTINUING GARNISHMENT (BANK, IRA, STOCKS OR

11   BROKERAGE ACCOUNTS). ("Application"). (Misc. Case #1, ECF #1). In its application, the

12   government lawyers misrepresented to the Court, Zinnel, and TD Ameritrade Clearing, Inc. that as

13   of April 2, 2021, in the underlying Criminal Case Zinnel owes $3,014,294.00 as of March 24, 2021.

14   (Misc. Case #1, ECF #1, pg. 2). The government lawyers further misrepresented that Plaintiff

15   United States of America is entitled to litigation surcharge of ten percent (10%) of the amount of

16   the debt ($301,429.40) pursuant to 28 U.S.C. § 3011(a). The total amount sought by the government

17   in Misc. Case #1 was thus **$3,315,723.40** on April 2, 2021.

18       The government's math was as follows:

19
20   | Restitution | $2,513,319.00 |
     | Fine | $ 500,000.00 |
21   | Special Assessment | $ 1,500.00 |
     | 10% Litigation Surcharge | $ 301,429.40 |
22   | Less BOP IFRP payments | <$ 525.00> |
     | Total Claimed Owed | $3,315,723.40 |

23

24       After stead fasting maintaining its specious position for over a year of constant litigation in

25   both Federal Court and State Probate Court, including the two garnishment cases Misc. Case #1 and

26   Misc. Case #2, during the Settlement Conference on June 3, 2022, government lawyer AUSA Lynn

27   Trinka Ernce, in a binding admission on behalf of her client Plaintiff United States of America,

28   admits that at least **$2,152,667.34 has magically disappeared.** Further, the government refuses to

explain why the $3,150,129.14 the government has marshalled in the Criminal Case as of September 16, 2016 has not satisfied ALL of the restitution, fine, and special assessment.  Nor has the government provided any accounting. Nor does the government explain why they now think they are entitled to a Litigation Surcharge pursuant to 28 U.S.C. § 3011(a) of an arbitrary **$150,000.00** instead of the original claimed amount of **$301,429.40**.  Under the law and facts, the government is not entitled to a Litigation Surcharge $301,429.00 because when the government filed this garnishment action on April 2, 2021, Zinnel's outstanding debt was $0.00.  This is because by March 3, 2014, over eight (8) years ago, the government had marshalled $3,025,209.86. (Criminal Case, ECF #313; Misc. Case #1, ECF #84, pg. 34) and  by September 16, 2016, the government had marshalled $3,149,604.14.

During the Settlement Conference on June 3, 2022, government lawyer AUSA Lynn Trinka Ernce, stipulated on the record on behalf of her client Plaintiff United States of America, that the maximum Plaintiff United States could attempt to collect is now capped at **$1,163,056.00.**

The government's math and cap is as follows:

| | | |
|---|---|---|
| Restitution | $   513,056.06 | (no explanation how govt. determined) |
| Fine | $   500,000.00 | |
| Special Assessment | $          0.00 | (no explanation how govt. determined) |
| 10% Litigation Surcharge | $   150,000.00 | (no explanation how govt. determined) |
| Total Maximum | **$1,163,056.06** | |
| The government | | |
| Can argue for | | |

Therefore, Plaintiff United States of America has stipulated on the record that its position is restitution is reduced from $2,513,319.00 to $513,056.06; a **$2,000,262.94 reduction without explanation or an accounting**, Special Assessment is reduced from $1,500 to $0.00; a $1,500.00 reduction without explanation or an accounting, and the claimed 10% Litigation Surcharge is reduced from 301,429.40 to **$150,00.00 without explanation or accounting**.

Again, after taking an absurd position for over a year in garnishment litigation, Plaintiff United States of America, admits that at least **$2,152,667.34 has magically disappeared** from the alleged amount owing by Zinnel.  Zinnel also understands that recently government lawyer AUSA

1  Lynn Trinka Ernce has made an admission on behalf of her client that *the Attorney General (acting*

2  *through the DOJ Money Laundering and Asset Section) exercised discretion to transfer some*

3  *forfeited funds to **some victims**. See 28 C.F.R. § 9.8;* an admission previously made by another

4  government lawyer on March 3, 2014. (see Criminal Case ECF #314). **The Court should ask why**

5  for many years now, the government lawyers, including AUSA Lynn Trinka Ernce, have

6  represented to the Court that Zinnel's outstanding debt was $3,014,294.00?

7  <u>**Zinnel requests that Court order the government, including it lawyer AUSA Lynn**</u>

8  <u>**Trinka Ernce, provide Zinnel and the Court with an accounting of all funds that have been**</u>

9  <u>**recently paid to the restitution windfall recipients and provide Zinnel with all documents that**</u>

10  <u>**evidence said payments forthwith**</u>. Further, Zinnel requests that the government lawyers explain

11  why "some victims" were paid, but not all.

12  The District Court should **hold an evidentiary hearing to make a judicial determination**

13  on how much Plaintiff United States owes Zinnel or how much Zinnel owes in the underlying

14  Criminal Case and how much the government can garnish in Misc. Case #1 and Misc. Case #2.

15

16

17  **3.2**    **The United States is not entitled to any 10% Litigation Surcharge and the**

18  **$150,000 the United States now claims it is entitled to is pulled from thin air**

19

20  Zinnel incorporates all the law and facts contained in Section 3.1 above as of fully set forth

21  herein.

22  Even though Zinnel owed nothing in the Criminal Case when this garnishment action, Misc.

23  Case #1, was filed on April 2, 2021, for over a year of constant litigation in both Federal Court and

24  State Probate Court, the government lawyers have misrepresented that Plaintiff United States of

25  America is entitled to litigation surcharge of ten percent (10%) of the amount of the debt

26  ($301,429.40) pursuant to 28 U.S.C. § 3011(a). The government evidently calculated this fictitious

27  amount by taking 10% of an alleged outstanding balance in the Criminal Case for restitution, fine,

28  and special assessment of $3,014,294.00.

1    During the Settlement Conference on June 3, 2022, on the record the parties stipulated that

2    Steven Zinnel maintains that Plaintiff is not entitled to any 28 U.S.C. §3011(a) Litigation Surcharge

3    and the maximum the government can claim is $150,000. (Misc. Case #1. ECF nos. 128 & 134).

4    The agreement reached between the parties at the Settlement Conference on June 3, 2022

5    was that the Court would have an evidentiary hearing to make a judicial determination, before Zinnel

6    appeals to the Ninth Circuit, as to what amount the District Court believes Zinnel owes in 28 U.S.C.

7    §3011(a) Litigation Surcharge.

8    During the Settlement Conference on June 3, 2022, the government provided no explanation

9    or rational for its claim now that it is entitle to $150,000 surcharge. **It appears the government**

10   **has pulled the $150,000 figure out of thin air**.

11   If Zinnel is correct that he owes nothing in the underlying Criminal Case, the 10%, 28 U.S.C.

12   §3011(a) Litigation Surcharge, is zero. If Zinnel owes a $500,000 fine, the 10%, 28 U.S.C. §3011(a)

13   Litigation Surcharge is $50,000. If Zinnel owes $513,056.06 in restitution and a $500,000 fine, for

14   a total of $1,013,056.06, the 10%, 28 U.S.C. §3011(a) Litigation Surcharge, is $101,305.60. There

15   is no way it can be $150,000 as government lawyers claim and a Magistrate Judge recommends.

16   The District Court should hold an evidentiary hearing to make a judicial determination on

17   how much 3011(a) Litigation Surcharge Plaintiff United States is entitled to if any.

18

19       **3.3    Objection to Judge Troy L. Nunley ruining on any matter in this case**

20   On May 3, 2021, Zinnel filed an Objection to Judge Troy L. Nunley presiding over the

21   garnishment case. (Misc. Case #1, ECF #18). To date, over a year has passed since Zinnel's

22   objection, but his objection has never been ruled on. Zinnel continues his objection to Judge Troy

23   L. Nunley making any rulings in this case including ruling this motion.

24

25   Fighting for what is Right…Seeking Justice in an unjust case,

26

27

28   Steven Zinnel, In Pro Se                                Dated:  July 1, 2022

# ATTACHMENT

# 1

1   STEVEN ZINNEL
2   420 S. Center Street
    Orange, CA 92866
3
    In pro se
4

5   **IN THE UNITED STATES DISTRICT COURT**

6   **EASTERN DISTRICT OF CALIFORNIA**

7

8   UNITED STATES OF AMERICA,          Case No.: 2:21-mc-00098-TLN-AC

9        Plaintiff,                     **STEVEN ZINNEL'S**
                                        **NON-CONFIDENTIAL SETTLEMENT**
10       v.                             **CONFERENCE STATEMENT**

    STEVEN ZINNEL,
11
         Defendant and [**alleged**]
12       Judgment Debtor.               Zoom Settlement Conference

13                                      Date: June 3, 2022
14   _____   Time: 10:00 AM
                                        Judge: Hon Kendall J. Newman
15   TD AMERITRADE CLEARING, INC.,

16   Garnishee.

17

18   _____

19        Steven Zinnel ("Zinnel") hereby submits his Settlement Conference Statement:

20

21   **1.   INTRODUCTION**

22        **First**, Steven Zinnel, the Alleged Judgement Debtor in the above-referenced case,

23   completely and unequivocally disputes that he owes any restitution or fine in the underlying

24   Criminal Case because the court-ordered restitution and fine have been paid in full years ago because

25   by September 21, 2016, the government had marshalled $3,150,129.14 that the government / the

26   Court must apply to the court-ordered restitution and fine of $3,014,819.00 **leaving $ 135,310.14 to**

27   **be returned to Steve Zinnel** and thus there is no garnishment action and **the government should**

28   **leave Steve and David Zinnel f\*cking alone**.   Further, **the government should spend its**

1    **apparently unlimited resources** on **stopping mass-shootings and grade-school killings by**

2    **shooters with assault riffles** [1] and **not on specious garnishment proceedings where the alleged**

3    **debt has been satisfied eight long years ago**. As Zinnel told Judge Troy L. Nunley on May 6,

4    2019, Zinnel wants to stop litigating with the government, but Zinnel's resolve is strong, and if

5    forced, **Zinnel will fight for what is right and litigate for the next half or decade or so**. **It is the**

6    **government's choice**, and Zinnel hopes the government lawyers will choose wisely.

7    **Second**, this Court **does not have jurisdiction** because Zinnel timely requested to transfer

8    this case to the District of Oregon under 28 U.S.C. 3004(b)(2) because that is where the government

9    forced Zinnel to reside.  Transfer is mandatory and it is/was reversible error not to transfer this case

10   out of the Eastern District of California.  Zinnel is quite confident, that on this record, the Ninth

11   Circuit Court of Appeals will reverse when the appeal is ripe for appellate review.  Since the

12   pendency of this case, the government has forced Zinnel to be incarcerated within the jurisdiction

13   of the Central District of California and thus  Zinnel will be filing motions in this case and Misc.

14   Case # 2,  *United States v. Steven Zinnel / David Zinnel, Castana Trust* Case No. 2:21-mc-00143-

15   TLN-AC, to transfer both garnishment cases to the United States District Court for the Central

16   District of California which is mandatory under 28 U.S.C. 3004(b)(2) and the well-settled decisional

17   law.

18

19   **Third**, it is a scientific certainty that Zinnel will immediately timely appeal this case to the

20   Ninth Circuit Court of Appeals as soon as there is a *disposition order directing release of the*

21   *garnished funds* which according to the government, and the Ninth Circuit, concludes a garnishment

22   writ proceeding thus making this case ripe for appellate review. (government and Ninth Circuit cite

23   *States v. Swenson*, 971 F.3d 977, 982 (9th Cir. 2020)).  In fact, early on in this case, Zinnel gave

24   notice on May 20, 2021, that he is appealing this case (see Misc. Case #1, ECF #38). Further, Zinnel

25

---

26   [1] Who evidently have no problem legally possessing a firearm, but yet Zinnel, with a bankruptcy fraud conviction,
     perhaps cannot legally possess a firearm in this country for the rest of his life. Though, this is legally debatable
27   under the holdings by a District Court judge concerning former Brocade CEO Gregory Reyes, with a fraud
     conviction, getting his gun rights back. (see *Forbes* Magazine article at
28   https://www.forbes.com/sites/walterpavlo/2018/10/05/ruling-clarifies-that-some-white-collar-felons-can-possess-a-
     firearm/?sh=1635b213367a. As the government forces Zinnel to litigate, Zinnel will litigate his gun rights too after
     his 28 USC §2255 petition is decided, if necessary.

has already appealed Magistrate Judge Allison Claire's erroneous rulings. (see Misc. Case #1, ECF #111). The Ninth Circuit dismissed citing *States v. Swenson*, 971 F.3d 977, 982 (9th Cir. 2020) which was perfectly fine with Zinnel as he did not want to litigate an appeal at that time anyway and only filed the Notice of Appeal in the abundance of caution. [2] Zinnel is now more than ready to litigate an appeal arising out of this case and **is grateful that the government moved to dismiss the appeal providing Zinnel the time, resources, and place to prosecute an appeal**.

**Fourth,** this magistrate court does not have jurisdiction because on June 24, 2021 Zinnel filed a Motion to Vacate the Reference of this case to a magistrate judge. (Misc. Case #1, ECF # 70). In further evidence of Judge Troy L. Nunley's improper bias against Zinnel, even though the motion has been pending for almost a year now, Judge Troy L. Nunley has never ruled on the motion. Nevertheless, Zinnel stands on his motion and contends that the magistrate court does not have jurisdiction to rule in this case. It is axiomatic that this will be an issue on appeal as well.

**Fifth,** under the law and facts, **the government is not entitled to a Litigation Surcharge $301,429.00** because when the government filed this garnishment action on April 2, 2021, Zinnel's outstanding debt was $0.00. This is because by **March 3, 2014,** over eight (8) years ago, the government had marshalled **$3,025,209.86**. (Criminal Case, ECF #313; Misc. Case #1, ECF #84, pg. 34) and by September 16, 2016, he government had marshalled **$3,149,604.14** (Misc. Case #1, ECF #84, pgs. 11 & 34). Thus, by the time the government solely chose to file this garnishment case seven (7) years after its claimed perceived rights, the government had **over-collected $135,310.14** in the Criminal Case **that must be ordered returned to Zinnel**. (Misc. Case #1, ECF #84, pgs. 11 & 34). Therefore, as the monetary obligation in Zinnel's Criminal Case was below $0.00 on April 2, 2021 when the government filed this garnishment case, **the government is not entitled to any Litigation Surcharge let alone $301,429.00 for sleeping on their perceived rights for seven (7) long years.**

---

[2] Zinnel certainly did not oppose the government's motion to dismiss the appeal.

**Sixth,** even though the government and its lawyers have forced Zinnel to litigate for over a decade now, [3] Zinnel is still well-within his statutory time limit in which to file a petition for habeas corpus pursuant to 28 U.S.C. § 2255.  Zinnel intends to timely file a **massive** petition for habeas corpus pursuant to 28 U.S.C. § 2255 in the underlying Criminal Case based on the undebatable ineffective assistance of counsel Zinnel received in his Criminal Case from lawyer Thomas A. Johnson and the blatant prosecutorial misconduct in the underlying Criminal Case during trial, sentencing, and on appeal committed by AUSA Matthew Dean Segal, AUSA Audrey Benison Hemesath, and AUSA Kevin Christopher Khasigian.  Further, Zinnel will be reporting the aforementioned offending Department of Justice attorneys to the State Bar of California and the Department of Justice's Office of Professional Responsibility.  Therefore, if the government paid any money to the restitution windfall recipients, the government has assumed the risk and not getting the money back when Zinnel prevails on his 28 U.S.C. § 2255 petition.  Zinnel recognizes that the litigation in this case, and the underlying Criminal Case, will likely go on for years.  However, at Zinnel's resentencing in May 2019, Zinnel told Judge Troy L. Nunley and the government lawyers:

> *If the litigation ends today, then there is no excuse for the Government or for AUSA Matthew Segal not to get the victims paid. However my resolve to fight for what's right is still strong and I will litigate if necessary. This litigation can end today at this resentencing if just punishment is imposed and the sentence promotes respect for the law. And if I was sentenced to what similarly situated bankruptcy fraud defendants received which was between 19 and 36 months of imprisonment.*

Zinnel further stated:

> *If the right sentence is imposed, the litigation will stop. This case will end today. I will be unhappy. I will be angry. I will grumble loudly. I will have a bitter taste in my mouth for the rest of my life of how justice was served in this case, but I will go away. I will live a law abiding life. I will do everything in my power not to be in the United States Government's cross hairs again. I will stay out of any United States Courthouse.*
>
> *I want my life, my work, my family to mean something. My present circumstances don't determine where I can go. They merely determine where I can start.*

---

[3] Actually **eleven (11) long years** as the government filed the underlying Criminal Case on June 8, 2011

1

*I plead with you to end this case today. Stop the horror that's been inflicted on me and my loved ones. My incarceration has been long and wrong.*

2

3

4

*Your Honor, every saint has a past, every sinner has a future; I plea for compassion. I plea for a just sentence. I plea to end this case today. Justice is not the way we punish those who do wrong. It is the way we try to save them.*

5

6

7

8

*Courage and conviction are rare qualities in a man. God has blessed me with both. I trust God's perfect plan and timing. I believe that suffering is part of something bigger. My children, my family, and I have suffered excessively in this case for a long time now. However, justice, like the will of God, does not always manifest itself in the spur of the moment. You've got to wait it out, and when it does, I will still be standing without a doubt.*

9

10

*I implore you to end this case today with a sentence that is reasonable, rational, and right.*

11

12

13

14

Thereafter, Judge Troy L. Nunley sentenced Steven Zinnel to almost thirteen (13) years in prison which is the longest sentence in the history of the United States for Bankruptcy Fraud by 25%. **The litigation continues, three (3) years later, unabated.; and likely will continue for the next half a decade.**

15

16

17

18

19

20

21

22

23

24

25

26

**Seventh**, it is expected, the government lawyers, because of their absurd and untenable factual and legal positions, will play no meaningful role in the settlement conference and will refuse to agree to any settlement. The United States' lawyers have continued and perpetuated this wasteful litigation, abuse of process, and have demonstrated a willingness to misrepresent to multiple courts. This garnishment proceeding is the court equivalent of a visit from Goldilocks; unwanted, unwarranted, disruptive, and unlawful. To paraphrase Adlai Stevenson, *If the United States' government lawyers stop lying about me, I will stop telling the truth about them*. Both in this matter, and the underlying criminal case, the United States government lawyers, now at seven, have lied to courts, including this Court, cheated, and tried to win at all costs. There is a Latin legal principle that states: *False in uno, falsus in omnibus*, which translates to *False in one thing, false in everything*. As demonstrated herein, this Latin legal principle applies in this matter.

27

28

**Eighth**, in aggravation, the government and its lawyers have slept on their perceived rights for seven (7) long years. California *Civil Code* § 3527 states:

> *The law helps the vigilant, before those who sleep on their rights.*

Even though the government claims to have a perceived right to collect millions of dollars from Zinnel since April 2, 2014 (Criminal Case ECF #343), the government slept on its perceived rights from April 2, 2014 until April 2, 2021 when it initiated this case by filing its Application for Writ Of Garnishment (TD Ameritrade Clearing, Inc.). (Misc. Case #1, ECF #1). Thus, **the government lawyers slept on their client's perceived rights for 2,557 days; seven (7) long years of doing nothing.**

## 2. RELEVANT CASES CITED IN THIS SETTLEMENT CONFERENCE STATEMENT

On a clarification matter, as this Settlement Conference Statement cites court-filings in five (5) different cases filed in the United States District Court, Eastern District of California, (Sacramento) and the Superior Court of California, County of Sacramento, Zinnel will refer to court-filings in the cases:

- *United States v. Steven Zinnel*, Case No. 2:11-cr-00234-TLN as "**Criminal Case**;"
- *United States v. Steven Zinnel / TD Ameritrade*, Case No. 2:21-mc-00098-TLN-AC as "**Misc. Case #1**;"
- *United States v. Steven Zinnel / David Zinnel, Castana Trust* Case No. 2:21-mc-00143-TLN-AC as "**Misc. Case #2**;"
- *United States v. Steven Zinnel / David Zinnel*, Case No. 2:19-mc-00242-TLN as "**Subpoena Case**;"
- *In The Matter of The Castana Trust Dated March 4, 2009*, Superior Court of California, County of Sacramento Case No. 34-2016-00200990-PR-TR-FRC as "**Probate Case**."

3. **SALIENT FACTS RELATED TO THE UNDERLYING CRIMINAL CASE**

- *Because we can:*

   *The motto of power since the idea of power over others was born in our kind.*

- *Distrust all in whom the impulse to punish is strong.*  Friedrich Nietzsche

- *The degree of civilization in a society can be judged by entering its prisons.*

   Russian writer Fyodor Dostoevsky

Zinnel was indicted on June 8, 2011 and the government has forced Zinnel to litigate ever since. The events and documents giving rise to the indictment date back to 1999; twenty-three (23) years ago. On July 16, 2013, as a result of ineffective assistance of counsel and massive prosecutorial misconduct by AUSA Matthew Dean Segal and AUSA Audrey Benison Hemesath, Zinnel was convicted in this Court of bankruptcy fraud and related money laundering counts; to wit a check written from one corporation to another in the amount of $4,826 with Zinnel's signature nowhere on he check. (Criminal Case, ECF #585-2, Ex. 312). Based on the government lawyers cheating and winning at all costs, Zinnel was convicted of concealing unknown properties, with an unknown value, when the bankruptcy court has consistently found that Zinnel's estate's liabilities exceed the value of the estate's assets. As a result, the bankruptcy court consistently ruled that Zinnel lacked standing to participate in his own bankruptcy case. **Post-conviction**, the bankruptcy court has stated in orders:

December 5, 2016 bankruptcy court order made 1,238 days (40 months) after conviction

- *The debtor's contention that this is a surplus case is not correct.*

   (Criminal Case, ECF #585-5, Ex. 794);

- *There are insufficient funds to warrant a finding of a surplus estate.*

   (Criminal Case, ECF #585-5, Ex. 795);

<u>October 11, 2016 bankruptcy court order made 1,183 days (39 months) after conviction</u>

- *The debtor has opposed the fee application on the basis that counsel did nothing that benefited the estate and should not be compensated.* (Criminal Case, ECF #585-5, Ex. 796);

- *The debtor lacks standing to oppose the application because he would not be adversely and pecuniarily affected by any award.* (Criminal Case, ECF #585-5, Ex. 796);

- *The record reflects that assets available for distribution under 11 U.S.C. §726(a), on no theory sufficient to enable a distribution to the debtor under 11 U.S.C. § 726(a)(6).* (Criminal Case, ECF #585-5, Ex. 796);

- *The debtor lacks standing.* (Criminal Case, ECF #585-5, Ex. 797).

However, on March 4, 2014, Zinnel was sentenced to 212 months imprisonment which is the longest sentence in the history of the United States for bankruptcy fraud by almost double. (Criminal Case, ECF #321). On May 6, 2019, Zinnel was re-sentenced to 152 months imprisonment which still is the longest sentence in the history of the United States for bankruptcy fraud by almost 25%. (Criminal Case, ECF #651).

Thus far, this is a bankruptcy fraud case that went horribly wrong. This case presents a vicious duel, between two government prosecutors hell-bent on winning-at-all-costs, in violation of Congress' statutes, well-settled sentencing law, and their legal and ethical duties, and Steven Zinnel. Steve Zinnel, now a fifty-eight year-old entrepreneur and job-creator with no criminal history, but a long history as a productive, decent human being and devoted father of two was convicted by a jury for bankruptcy fraud and related money laundering counts. After rejecting two five-year plea offers, which was represented by the government as a "reasonable" and "appropriate sentence" (Criminal Case, ECF #585-5, Ex. 1006, 1007, 1009, & 1016), Zinnel was convicted at trial and

remanded into custody out of the courtroom to spend 274 days, over nine months, in the harsh conditions of Sacramento County Main Jail locked in a concrete box for 23 hours a day.[4]  (Criminal Case, ECF #585-4, Ex. 605 A-605 E).  As a first-time offender, Zinnel was originally sentenced to a mid-range sentence of 212 months (17.67 years), the maximum three (3) years of supervised release, $2,513,319 in restitution and the maximum $500,000 fine. Judge Troy L. Nunley provided the following ten-word explanation for his record-setting sentence for a 50-year old defendant with no criminal history: "*Due to the nature, circumstances, and seriousness of the offense*." (Criminal Case, ECF #585-6, Ex. 1089; ECF # 330, Statement of Reasons).  The Ninth Circuit reversed.

Trials are supposed to be for the search of truth. Here, however, as a result of the government lawyers' lies to the jury and two Courts and the fatally flawed jury instructions and verdict form, there is no way anyone or any Court can say beyond a reasonable doubt that the jury did not convict Zinnel solely on the uncharged $256 WAMU personal checking account. Then, based on an alleged $256 property concealment, the government claims that there is over $3.6 million in loss in this case with eleven victims resulting in 20 levels in enhancements increasing Zinnel's sentence from 2 years to almost 18 years in prison. The $3.6 million invalid "Claims Register," the government and the three-judge panel erroneously claim was the amount scheduled for discharge, was never before the district court at sentencing and is entirely disputed by Zinnel under penalty of perjury.  In aggravation, neither the trustee nor the bankruptcy court determined a single debt on Zinnel's bankruptcy schedules was valid.

---

[4] Zinnel's restrictive jail cell was a tiny concrete box akin to a dog kennel at the County's animal shelter. There is no fresh air or natural light, no clocks, and no method to track time.  There is lack of ventilation and inadequate temperature control leading to sweltering temperatures in the summer and freezing conditions in the winter.  There was no sun exposure. No natural vitamin D.  Zinnel never felt the rain or the wind.  No pleasant smells.  Zinnel has been celled up with many prisoners detoxing from heroin addiction and men with mental illness. No music.  The jail sometimes fails to provide mattresses, leaving people to sleep on hard, cold, dirty floors for days. There is a lack of basic cleanliness and sanitation. Prisoners are subject to housing in cells that are covered in feces and urine, old food, garbage, and bugs.  Many jail cells lack outside windows or visibility from one cell to another.  There is no news from the outside world.  The world literally changes without you and passes you by.

Zinnel's original sentence was the longest sentence in the history of the United States for bankruptcy fraud by almost double. (Criminal Case, ECF #585-5, Ex. 1051-1054). Within hours of Zinnel being sentenced, the government issued a press release bragging the "*sentence is believed to be the longest prison sentence ever imposed in a bankruptcy fraud case*" thus demonstrating the prosecutors' advance knowledge that Zinnel's sentence was disparate. (Criminal Case, ECF #586-1, Ex. 1776). Similarly, the Ninth Circuit Court of Appeals opinion in this case states: "*We need not reach Zinnel's challenge to the substantive reasonableness of his sentence.* [5] *We note, however, that Zinnel's 212-month sentence is the longest sentence ever imposed for bankruptcy fraud in the Eastern District of California.*"

According to the government lawyers' representations to the Court of Appeals, "*the court found nothing atypical about this case.*" (Criminal Case, ECF #585-5, Ex. 751). At Zinnel's March 4, 2014 sentencing, the Court was able to easily compare Zinnel to Letantia Bussell as Judge Troy L. Nunley made the following finding: "*This case is factually similar to Bussell.*" (Criminal Case, ECF #585-5, Ex. 1004). As Zinnel informed Judge Nunley, Ms. Bussell was sentenced to 36 months in prison. (Criminal Case, ECF #585-5, Ex. 1006; Criminal Case, ECF #585-7, Ex. 1223; ECF #307-1, p. 52). Therefore, the Court easily compared Zinnel's facts and conduct to that of Letantia Bussell, but ignored the disparity between Bussell's 36-month sentence for sophisticated bankruptcy fraud and Zinnel's 212-month term. This resulted in Judge Nunley sentencing Zinnel to six times as much time in prison as "factually" similar Bussell.

The sentence of twenty (20) years urged by the government lawyers was a product of out-of-control guidelines untethered to any realistic basis, is excessive, and is out of line with both the conduct the jury found Zinnel guilty of, and the range of sentences imposed for similar conduct. In fiscal 2017 (the most recent year reported), the highest sentences for bankruptcy fraud, were four

---

[5] Because the Court of Appeals reversed on procedural grounds.

offenders receiving between 37 to 72 months in prison and **the national median bankruptcy fraud sentence in 2017 was <u>12.5 months</u>**. (Criminal Case, ECF #585-8, Ex. 1371). That same year, the median sentence nationwide for money laundering, including cases involving many millions of dollars and cases that went to trial, was 40.5 months. (Criminal Case, ECF #585-8, Ex. 1375). According to the Sentencing Commission, the average sentence for fraud offenders in 2017 was 23 months in prison and in 2015 it was 24 months in prison. (Criminal Case, ECF #586-1, Ex. 1778 B and 1780).

Over an eight year period, the median sentence for bankruptcy fraud was 19 months. (Criminal Case, ECF #585-8, Ex. 1312). It is noteworthy, that no one other than Zinnel, received more than 145 months in prison over the eight-year period. (Criminal Case, ECF #585-8, Ex. 1312). Similarly situated bankruptcy fraud defendants, that can easily be compared apples to apples to Zinnel, were sentenced to probation, <u>15</u> months, <u>12</u> months, <u>21</u> months, <u>36</u> months, <u>21</u> months, <u>48</u> months, and <u>36</u> months.[6]

Zinnel strongly disputes that he hid any assets from his ex-wife and Zinnel has never been charged, let alone convicted of hiding assets from his ex-wife. Further, Zinnel has never been charged with or convicted of failing to pay child support. But if he had, the median sentence for failure to pay child support is 12 months. (Criminal Case, ECF #585-5, Ex. 1039). The draconian sentence the Court meted out is simply not justified by the bad motives, which are totally false, attributed to Zinnel by AUSA Matthew D. Segal.

It is significant that after AUSA Matthew D. Segal told this Court and the public that fraudster Scott Salyer, the self-proclaimed "Tomato King," poisoned this nation's food supply, lied a lot, threatened his daughter, and used his grandchild as a weapon against his ex-wife, that AUSA

---

[6] (Criminal Case, ECF #585-7,, Ex. 1231, #13, Ex. 1225, #7, Ex. 1240, #27, Ex. 1224, #3, Ex. 1223, #2, Ex. 1225, #6, Ex. 1234, #16,    Ex. 1237, #22).

Matthew D. Segal  still gave Salyer a break resulting in Salyer being sentenced to a well-below guideline sentence of 72 months in prison for crimes that the government could have sought close to life imprisonment.

In aggravation, offenders in Massive Fraud and/or High Guideline Fraud cases have been sent to prison for significantly less time than Zinnel originally and what the government demands now.  Zinnel has provided the Court with forty-seven (47) cases of massive fraud with comprehensive detail. (Criminal Case, ECF #585-7, Ex. 1291-1304; Criminal Case, ECF #586-M, Ex. 1651-1710).

- Charles Ponzi was sentenced to 36 months in federal prison. (Criminal Case, ECF #585-7, Ex. 1291);

- Andrew Fastow, the true architect of the once-in-a-generation fraud within Enron, which ultimately forced Zinnel to file bankruptcy, with losses in excess of $2 billion and 20,000 victims, was sentenced to 72 months in prison. (Criminal Case, ECF #585-7, Ex. 1293);

- Peter Madoff played a starring role in Bernie Madoff's massive fraud which is the world's largest fraud. According the IRS's website, the loss was $143.1 billion. (Criminal Case, ECF #586-M, Ex. 1651);

- Peter Madoff was sentenced to ten (10) years in prison and one year of supervised release; **43% less** than what Judge Troy L. Nunley sentenced Zinnel to. (Criminal Case, ECF #585-7, Ex. 1291);

- Jordon Belfort, the "*Wolf of Wall Street*," was convicted of defrauding 1,513 investors out of more than $200,000,000.00. (Criminal Case, ECF #585-7, Ex. 1294; Criminal Case, ECF #586-M, Ex. 1662). Mr. Belfort was sentenced to 48 months in prison. *Id.*;

- Raj Rajaratnam, convicted of the largest insider trading case in this nation's history was sentenced to 132 months. (Criminal Case, ECF #585-7, Ex. 1294; Criminal Case, ECF #586-2, Ex. 1922);

- Barry Minkow, a three-time convicted con man, who was a FBI fraud finder and pastor of a church at one time was sentenced on his third fraud conviction to 60 months in prison with loss at $580 million. (Criminal Case, ECF #585-7, Ex. 1295); and

- Michael Binday was the organizer of a massive insurance fraud scheme with intended loss of $142 million and was sentenced to 144 months in prison. (Criminal Case, ECF #585-7, Ex. 1296).

For perspective, violent offenders that have forever severely harmed people, have received substantially less prison time than what the government seeks to have imposed on Zinnel and what the Court imposed on Derian Eidson on April 4, 2019:

- Zinnel has had two cell-mates in federal prison that were each convicted of murder. One was a drug cartel assassin and the other shot his wife on an Indian reservation. Both men were sentenced to less prison time than Zinnel was last time;

- A beating at Dodger Stadium that almost killed a San Francisco Giants fan and left him disabled with brain damage (8 years and 4 years). (Criminal Case, ECF #586-M, Ex. 1728-1729);

- Sex trafficking a 14 year old girl to work as a prostitute and forcing the girl to have sex with the offender (12 years 7 months) (Criminal Case, ECF #586-M, Ex. 1765);

- Sexual assault on multiple occasions on 7 year old girl (3 to 10 years) (Criminal Case, ECF #586-M, Ex. 1735);

- A boyfriend kills girlfriend in drunk driving accident (4 years) (Criminal Case, ECF #586-M, Ex. 1732);

- Bank robber, with prior extensive history of larceny, bank fraud, and marijuana distribution (4 years) (Criminal Case, ECF #586-M, Ex. 1733-1734);

- One of the largest and most sophisticated identity theft/ credit card fraud cases (5 years) (Criminal Case, ECF #586-M, Ex. 1738);

- Convicted of membership in a terrorist organization and accessory to the murder of 246 passengers and crew on the four jetliners used in the 9/11 attacks. (15 years) (Criminal Case, ECF #586-M, Ex. 1755); and

- GM's fraud of hiding a defect that killed 124 people, but no one went to prison for the many deaths caused by GM's employees criminal fraud. (Criminal Case, ECF #586-M, Ex. 1761).

Zinnel's government manipulated Offense Level 36, <u>advises</u> he be sentenced as if he committed a kidnapping resulting in permanent or life-threatening bodily injury. (Criminal Case, ECF #586-2, Ex. 1902). For Zinnel to have received a sentence several times higher than massive fraudsters or violent offenders, **does not** provide **just punishment** for the offense or **promote respect for the law** as required by 18 U.S.C. § 3553 (a)(2)(A). Any sentence higher than Enron's Andrew Fastow's of six (6) years or Peter Madoff's of ten (10) years would "**strike as more than probably wrong, it would strike as wrong with the force of a five-week old unrefrigerated dead fish**." *United States v. Bussell*, 504 F.3d 956, 962 (9 CA, 2007) ("Bussell").

On May 6, 2019, it was possible that the litigation and the Criminal Case could have ended at resentencing if Zinnel was sentenced to what similarly situated bankruptcy fraud defendants received, which is between 19 and 36 months of imprisonment and no supervised release. If this right sentence was imposed, the litigation would have stopped. This Criminal Case would have

ended at Zinnel's resentencing. Zinnel would have been unhappy. Zinnel would have been angry. Zinnel would have grumbled loudly. Zinnel would have a bitter taste in his mouth for the rest of his life because of how justice was served. **But, Zinnel would have gone away**.

The longer an individual languishes in prison, the less effective the intended punishment becomes. As the months turn into years, and the years turn into decades, the prisoner becomes alienated from society and retreats into a kind of hibernation, accepting the prison environment as the only world he knows. For nonviolent, fraud offenders with minimal impact, it doesn't serve any interest other than vengeance. And who wins when the pursuit is vengeance? History has shown vengeance does not work to the benefit of anyone. It is not the Christian way, and yet it is frequently those who proclaim to uphold the Christian faith that call for the pound of flesh. Shakespeare illustrated the errors of vengeance in his timeless play "The Merchant of Venice" more than 400 years ago.

On May 6, 2019, Judge Troy L. Nunley re-sentenced Steven Zinnel to almost thirteen (13) years in prison which is still the longest sentence in the history of the United States for Bankruptcy Fraud by 25%. (Criminal Case, ECF #651). **The litigation continues, three (3) years later, unabated; and likely will continue for the next half a decade or so.**

## 4. SALIENT FACTS RELATING TO THE GARNISHMENT PROCEEDINGS

First, **Steven Zinnel does not owe any money** in the underlying Criminal Case **and the government has actually over-collected $135,310.14** in the Criminal Case **that should be returned to Zinnel**. Second, Zinnel as a trust beneficiary, has no legal title or ownership interest in trust assets.

Steven Zinnel ("Zinnel") and David Zinnel are Ardith Ferris's only children. In August of 2005, Zinnel's mom Ardith Ferris lived with Zinnel at Zinnel's home at 11966 Old Eureka Way. This is reflected on Zinnel's Statement of Financial Affairs ("SOFA") filed in bankruptcy court on August 18, 2005. Zinnel's SOFA was the government's admitted trial exhibit no. 203 in the

1    underlying Criminal Case. (Criminal Case, ECF #585-1, page 87). Zinnel also filed the SOFA as a

2    resentencing exhibit for his May 2019 resentencing. (Criminal Case, ECF #585-1, page 87). The

3    reason Zinnel's mom lived with him on Old Eureka Way, is Zinnel's mom was completely

4    remodeling her house and her house was un-livable.

5          Around August of 2005, Zinnel's mom Ardith Ferris received a retirement distribution from

6    a previous employer that had to be rolled over into an IRA account. Zinnel's mom Ardith Ferris

7    authorized Steven Zinnel to open an account at TD Ameritrade, sign her name, and pick the stocks

8    for her retirement portfolio. Steven Zinnel's mom also told him to manage the account and to receive

9    the monthly account statements electronically at Steven Zinnel's email account. On or about August

10   12, 2005 Steven Zinnel did as his mother instructed.

11         Zinnel received the TD Ameritrade account application contained in when Plaintiff United

12   States of America filed the document in the underlying Criminal Case on March 24, 2021 as ECF

13   #670-1, pgs. 4 & 8. When Zinnel received the TD Ameritrade application from Plaintiff, for an

14   account that was opened almost seventeen (17) years ago, Zinnel had not seen the document in over

15   a decade and Zinnel did not even know that the account was still open or had any assets in it. When

16   Steven Zinnel filled out the TD Ameritrade application in August of 2005, as authorized by his

17   mother, Ameritrade only allowed the applicant to list one beneficiary in case of death of the account

18   holder, so Steven Zinnel listed himself.

19         Since the account was opened in August 2005, Zinnel's mom, always knew about the

20   account, Steven Zinnel told his mom what stocks he bought on her behalf and why, and how the

21   retirement account was doing financially. i.e. how Ardith Ferris' investments were working out. It

22   would be a vast understatement to say that Zinnel's mom was not very organized and was forgetful.

23   Over the years, from time to time, Steven Zinnel had to provide his mom the account numbers for

24   her financial, accounts, along with the account user-name and password.

25

26         Zinnel has a degree in business management, a Masters in Business Administration

27   ("MBA"), and went to law school. Further, Zinnel was a Chief Financial Officer of a company for

28   about a decade. Based on the account value of around $1,400,000 it is axiomatic that Zinnel's stock-

picking was exceptional and Zinnel's mom's financial interests were well-taken care of by her son Steven Zinnel.

In 2009, for estate planning purposes, Steven Zinnel told his mom she should put all her assets in a family trust including her retirement accounts. Zinnel's mom, Ardith Ferris, agreed. Zinnel's mom wanted to name her trust the "Castana Trust." With his mom's input, Steve Zinnel drafted the trust documents. The Castana Trust documents provided that in the case of Ardith Ferris' death, the Castana Trust equally go to Ardith Ferris' sons who are Steven Zinnel David Zinnel. Steven Zinnel was with his mom when she signed the Castana Trust documents on March 4, 2009. Steve Zinnel received the documents from Plaintiff United States of America when its attorneys filed them in support of the government's opposition to Zinnel's Motion for Bail pending Appeal on March 15, 2021. (Criminal Case,  ECF #668-1). In March 2021, was the first time Zinnel had seen the Castana Trust documents in years as Zinnel has been incarcerated since July 13, 2013. Also on March 4, 2009, Zinnel's mom Ardith Ferris executed her Last Will and Testament of Ardith Louise Ferris.

In opposing Zinnel's bail motion in the criminal case, Plaintiff's government lawyers filed Ardith Ferris' Last Will. (Criminal Case, ECF #668-1, pgs. 41, 42, and 48).  In Paragraph 2.1 of Ardith Ferris' Last Will, upon her death, Ardith Ferris Gifted her Entire Estate to the trustees of the Castana Trust. Sadly, with her oldest son in federal prison, on September 21, 2016, Ardith Ferris died. Steven Zinnel could not fulfill his duties as the successor Trustee of the Castana Trust. So with Zinnel's support and request, David P. Zinnel became the sole Trustee of the Castana Trust.  The Probate Court issued an order removing Steven Zinnel as the Castana Trust Trustee and appointing David Zinnel as the successor Trustee of the Castana Trust. The government also filed this court order in opposing Zinnel's bail motion which is how Zinnel obtained the document. (Criminal Case, ECF #668-1, pg. 93).

Since Steven Zinnel's mom's death on September 21, 2016, Zinnel's brother David Zinnel has told Zinnel nothing about the Castana Trust assets. As Zinnel told the court at his May 6, 2019 resentencing, since October 29, 2013, Steven Zinnel has had almost no communication with his

1    brother David Zinnel; a period of almost nine years now. Since Zinnel's mom's death, Steven Zinnel

2    has received no distributions from the Castana Trust or Ardith Ferris' estate.

3        Since Zinnel was incarcerated on July 16, 2013, the first time he knew the TD Ameritrade

4    account***0613 still existed and has substantial assets, was when the Plaintiff's government

5    lawyers filed a TD Ameritrade Account statement in the underlying Criminal Case on March 23,

6    2021. (see Criminal Case, ECF #670-1, pgs. 11-13).

7        Steven Zinnel's mom used to live with him. Steven Zinnel spent a significant amount of time

8    talking with his mother, including about her financial affairs and estate planning. Zinnel's brother,

9    David Zinnel, was not privy to the conversations and discussions Zinnel had with his mom Ardith

10   Ferris concerning her financial affairs and estate planning. Therefore, David P. Zinnel does not have

11   personal knowledge of Steven Zinnel's conversations and discussions with his mother Ardith Ferris

12   concerning her financial affairs or estate planning nor does David Zinnel know what authorizations

13   Ardith Ferris gave her eldest son Steven Zinnel regarding opening retirement accounts, signing for

14   her, and managing her financial affairs.

15       Neither the government nor David Zinnel informed this Court that on April 7, 2022, t**he**

16   **Probate Court flatly rejected the Government's specious *ex parte* application be dropping the**

17   ***ex parte* from its calendar without ruling on the merits** and **denied David Zinnel's motion on**

18   **the merits because it was procedurally flawed.** Thus, nine months and thousands of dollars in

19   attorneys' fees were completely wasted. Further, at the April 7, 2022 Probate Court hearing Zinnel

20   was not under any subpoena to testify and was given no notice he would be asked to testify. Further,

21   no one else present at the Probate Court hearing was requested to testify. Finally, Zinnel is in BOP

22   custody and prosecuting attorneys were present at the hearing. Zinnel has *Fifth Amendment* rights

23   that he will exercise especially since there may be a Criminal Case do-over as a result of Zinnel's

24   28 U.S.C. § 2255 petition.

25

26       Based on this Settlement Conference Statement, the attached exhibits, and all the court-

27   filings in the above delineated cases, a federal court that actually has jurisdiction should stop all

28

1    collection efforts by the United States of America and its plethora of attorneys and order the United

2    States to **return to Zinnel the $135,310.14 that it has over-collected in the Criminal Case**.

3

4    **5. THIS COURT DOES NOT HAVE JURISDICTION TO DECIDE THIS CASE, OR MISC.**

5    **CASE #2, BECAUSE ZINNEL TIMELY MADE A REQUEST UNDER 28 U.S.C.**

6    **3004(b)(2) TO TRANSFER THE CASE TO THE DISTRICT THE GOVERNMENT**

7    **SOLELY CHOSE TO INCARCERATE HIM IN**

8          In both garnishment cases, Zinnel requested under 28 U.S.C. 3004(b)(2) that the actions and

9    proceedings be transferred to the Federal Judicial District of Oregon because Plaintiff had forced

10   Zinnel to live in Sheridan, Oregon which is outside the Eastern District of California. Zinnel would

11   be greatly prejudiced if the case is not transferred. (Misc. Case #1, ECF #21; Misc. Case #2, ECF

12   #19). Since the pendency of this case, the government has forced Zinnel to be incarcerated within

13   the jurisdiction of the Central District of California and thus, Zinnel will be filing motions in this

14   case and Misc. Case # 2, to transfer both garnishments case to the United States District Court for

15   the Central District. Under 28 U.S.C. 3004(b)(2) and decisional law, transfer is mandatory.

16   **A. KEY LAW**

17

18         28 U.S.C. 3004(b)(2) of the *Federal Debt Collection Procedure Act* ("FDCPA") states:

19   "If the debtor so requests, within 20 days after receiving the notice described in section 28 U.S.C.

20   3202(b), the action or proceeding in which the writ was issued **shall be transferred** to the district

21   court for the district in which the debtor resides." (emphasis added). The phrase "shall be

22   transferred" indicates that, upon the filing of a written request under 28 U.S.C. 3004(b)(2), transfer

23   is mandatory and a district court would abuse its discretion in not transferring this case to the District

24   of Oregon. The Supreme Court has found "shall to be the language of command." *Escoe v. Zerbst*,

25   295 U.S. 490, 493 (1935). "The word 'shall' generally indicates a command that admits of no

26   discretion on the part of the person instructed to carry out the directive." *Association of Civilian*

27   *Technicians v. FLRA*, 22 F.3d 1150, 1153 (D.C. 1994). The Ninth Circuit has of course held the

28   same: "The word 'shall' is ordinarily the language of command." *United States v. Kowalczyk*, 805

F.3d 847, 857 (9th Cir. 2015). The district court must assume that Congress meant what it said when it used the term "shall be transferred to the district court for the district in which the [alleged] debtor resides." *United States v. Gonzales*, 520 U.S. 1, 5 (1997).

28 U.S.C. 3202(b) of the FDCPA requires the "Clerk's Notice of Instructions to the Judgment Debtor" to provide the above-cited section 3004(b)(2) notice to the debtor.

In drafting the "Clerk's Notice," the government lawyers complied with the 28 U.S.C. 3202(b) requirement. (Misc. Case #1, ECF #2). On April 5, 2021, the Court Clerk signed the "Clerk's Notice of Instructions to Judgment Debtor" containing the required 28 U.S.C. 3202(b) notice. (Misc. Case #1, ECF #3, pg. 3, lines 10-12).

A district court judge has confirmed what Zinnel's exhaustive research reveals:

> "The only court of appeals to address the issue of mandatory transfer under 28 U.S.C. 3004(b)(2) is *United States v. Nash*, 175 F.3d 440 (6th Cir. 1999). The *Nash* court concluded that transfer is mandatory." United States District Court Judge John D. Bates in his order of transfer to the Eastern District of California under 28 U.S.C. 3004(b)(2). *United States of America, on behalf of its agency, the U.S. Small Business Administration v. EDF Resource Capital, Inc. et.al.*, United States District Court for the District of Columbia, 2013 U.S. Dist. LEXIS 202299 (May 30, 2013)"

In *Nash* Id., ·the same government as here, conceded that Nash's request was timely, and that the district court erred in not granting the mandatory transfer request of the debtors. In *Nash*, the Sixth Circuit held in its published opinion that because the plain language of U.S.C. 3004(b)(2) is mandatory, the district court must grant such a transfer as long as it is timely made. Id.

Since *Nash* Id. was decided, the Eleventh Circuit has weighed in holding that under 28 U.S.C. 3004(b)(2), transfer to the district where the alleged debtor is incarcerated is mandatory if timely requested. In *United States v. Peters*, 783 F.3d 1361, (11th Cir. 2015), the Eleventh Circuit wrote:

> "If the debtor so requests, ... the action or proceeding shall be transferred to the district in which the debtor resides. 28 U.S.C. 3004(b)(2)" [emphasis added by the Court of Appeals]

Shall creates an obligation not subject to judicial discretion. *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

Peters' request required the district judge to transfer his case to California where he is incarcerated. (emphasis added). The case is remanded to the district judge to enter an order transferring Peters' proceeding to the California district court with jurisdiction for a hearing and decision. VACATED AND REMANDED."

On February 10, 2020, a district judge in Idaho ordered a garnishment case transferred to the Northern District of California pursuant· to 28 U.S.C. 3004(b)(2) because the debtor timely requested and the debtor resided in California. *United States v. Vigil*, U.S.D.C. D. Idaho, 2020 U.S. Dist. LEXIS 24537 (D. Idaho, 2/10/20). The district judge wrote "authority is relatively sparse on the issue" and "the Ninth Circuit has not yet weighed in on the issue." Id. Nevertheless, the district judge, as opposed to a magistrate judge, relied on the plain language of 28 U.S.C. 3004(b)(2), the Sixth Circuit's holding in *Nash* supra., and the Supreme Court's directive concerning "shall" in *Lexecon Inc. v. Milberg Weiss* supra. and ordered the case transferred.

Here, Zinnel's request to transfer under 28 U.S.C. 3004(b)(2) is timely made. (Misc. Case #1, ECF #21)

## B. THE FEDERAL VENUE STATUTE DOES NOT APPLY IN THIS CASE

Although the federal venue statute, 28 U.S.C. 1391(b) provides that a civil action "may be brought in (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject to the action is situated," the statute also states the action is to be brought" (l) in a judicial district in which the defendant resides." In this case, Plaintiff itself has solely chosen to force Zinnel to live first in San Pedro, California, then in Sheridan, Oregon, and finally in Garden Grove / Orange, California.

Even though Plaintiff improperly chose to bring this action in a district that defendant Zinnel does not reside, because Zinnel timely requested to transfer this case to the District of Oregon under 28 U.S.C. 3004(b)(2), it is reversible error on appeal that this case was not transferred to first the District of Oregon and the Central District of California.

1    **6.  ZINNEL DOES NOT OWE ANY MONEY IN THE UNDERLYING**

2    **"CRIMINAL CASE" AND THE GOVERNMENT HAS ACTUALLY**

3    **OVER-COLLECTED $135,310.14 THAT SHOULD BE RETURNED**

4    On May 6, 2019, Zinnel was resentenced for a second time to the longest sentence in the

5    history of the United States for Bankruptcy Fraud. Zinnel's 152-month prison sentence exceeds the

6    longest sentence ever in a bankruptcy fraud case by 25%. (see Criminal Case, ECF #585-9, pgs. 2-

7    5).  Similarly situated bankruptcy fraud defendants were sentenced to an average of 19 months

8    imprisonment with the longest prison sentence being 78 months. (see Criminal Case ECF nos. 585-

9    7, pgs. 3-26 and 615, pgs. 11-14). Nevertheless, on May 15, 2019 the district court filed a Second

10   Amended Judgment in Criminal Case. (see Criminal Case, ECF #653).

11   The Second Amended Judgment ordered Zinnel to pay a Special Penalty Assessment of

12   $1,500, Victim Restitution of $2,513,319, and the statutory maximum fine of $500,000. (Criminal

13   Case, ECF #653). The total ordered is thus $3,014,819. A U.S. Courts Case Inquiry printed on

14   1/11/21 that reflects the Total Ordered was $3,014,819. (Misc. Case #1, ECF #84, pg. 21). U.S.

15   Courts Case Inquiry  printout details a "balance" of $3,014,819 **because the government refuses**

16   **to deposit the marshalled $3,150,129.14 that the government has been sitting on for almost a**

17   **decade with the Court leaving $ 135,310.14 to be returned to Steve Zinnel**. The printout reflects

18   that since Zinnel has been incarcerated for almost nine (9) years now, the Bureau of Prisons has

19   collected $25 from Zinnel as of 1/11/21, through the Inmate Financial Responsibility Program

20   pursuant to the operative judgment. (Misc. Case #1, ECF #84, pg. 21).

21   In April of 2014, Zinnel and the government agreed and stipulated to restitution so that the

22   funds the government had marshalled to date, $3,025,209.86 as of April 2014, would be immediately

23   paid to the restitution recipients including $150,000 to each of Zinnel's children so they both had

24   money for college. (see Criminal Case ECF #615, pg. 359; Misc. Case #1, ECF #84, pg. 23). Both

25   of Zinnel's children are college graduates now and they never got the money for college **because**

26   **the government refuses to deposit with the Court the marshalled $3,150,129.14 that the**

27   **government has been sitting on for almost a decade.** On April 1, 2014, Zinnel's attorney Suzanne

Luban sent an email to government attorney AUSA Kevin Khasigian memorializing the agreement. (see Misc. Case #1, ECF #84, pg. 21; Criminal Case, ECF #586-4, pg. 10). The same day, Zinnel's attorney and two of the government attorneys entered into a formal Stipulation and Order Re: Restitution that provided Zinnel's children with $150,000 each for college. (see Misc. Case #1, ECF #84, pgs. 25-27; Criminal Case ECF nos. 343 and 586-4, pgs. 11-13).

When Zinnel moved to stay the sale of real property forfeited prior to sentencing, the government opposed the motion to stay (Misc. Case #1, ECF #84, pgs. 29-32; Criminal Case ECF nos. 314, 586-4., pgs. 2-5). Plaintiff's Opposition filed on March 3, 2014 stated:

> "The only way that he would be prejudiced by forfeiture and liquidation of these assets would be that they could generate funds that the Attorney General could in his discretion direct to Zinnel's victims (including his ex-wife). **Zinnel's spite is a sentencing factor, not a basis for a motion to stay**."
> (Misc. Case #1, ECF #84, pg. 29)

The court-filed Opposition to the Motion to Stay was signed by and filed by Plaintiff's lawyer AUSA Kevin Khasigian. (Criminal Case ECF #314).

Rule 11 of the *Federal Rules of Civil Procedure* imposes a duty upon lawyers who sign court-filings. With each court-filing by a lawyer for the government, Rule 11 creates a certification that the "legal contentions are warranted by existing law" and that "the factual contentions have evidentiary support." Barrels of ink have been spilled in judicial opinions, scholarly journals, trade publications, and legal education conferences on Rule 11 and Zinnel will not spill any more ink regarding the Rule 11 certification and sanctions that may be imposed here.

In Plaintiff's Opposition to the Motion to Stay, AUSA Kevin Khasigian represented to the court, restitution recipients, and Zinnel that any funds forfeited from Zinnel can be used to pay restitution recipients and the government and its lawyers wanted to use forfeited funds to pay the restitution recipients right away. However, contrary to the government lawyers' lofty representations to the court about getting the victims paid, it took the government until March and June of 2016 to sell the property. Therefore, it took the government 756 days to sell the property

that the government lawyers represented to the court on March 3, 2014 was "expensive to maintain."

(Misc. Case #1, ECF #84, pgs. 29-32; Criminal Case ECF nos. 615, 26 p. 359; 314).

Additionally, in Plaintiff's Opposition to Zinnel's Motion to Stay Forfeiture, AUSA Kevin

Khasigian wrote, and four government attorneys certified under Rule 11 the following:

> "After all, forfeiture is designed to create a pool of assets from which victims can be reimbursed."

> "Delaying forfeiture will only prolong the ability of [Zinnel's] victims to receive distributions and would serve to further harm [them]."
> See *United States v. Davis*, No. 07-cr-011, 2009 WL 2475340, at *3 (D. Conn. June 15, 2009)."

> "Simply put, the sooner the properties are sold the better off Zinnel's victims will be." [Misc. Case #1, ECF #84, pg. 32; Criminal Case ECF #314, p. 5]

**The government lawyers have made judicial admissions that they must be forced to abide by**. The Court must find the statements made by the government lawyers in a court filing in the Criminal Case on March 3, 2014 (Criminal Case, ECF #314; Misc. Case #1, ECF #84, pgs. 29-32) that the government will be applying the **$3,025,209.86** marshalled by the government from Zinnel as of **March 3, 2014**, over eight (8) years ago, to pay Zinnel's court-ordered financial obligations. See *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("**Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact**") (emphasis added, internal citation omitted); id. at 227. ("[S]tatements of fact contained in a brief may be considered admissions of the party in the discretion of the district court").

Further, four (4) government lawyers have represented and certified under Rule 11 in April of 2014, that all forfeited funds in the Criminal Case would be used to pay the restitution recipients including $150,000 to each of Zinnel's children for college. Zinnel's two children have now graduated from college, but yet the government lawyers who are sitting on $3,149,604.14 in

1 │ marshalled funds and refuse to pay the restitution recipients. In aggravation, the same government

2 │ lawyers are attempting double-dip by trying to collect in State Court in this matter.

3 │     Four government lawyers have represented to Judge Troy Nunley, Zinnel's lawyers, and to

4 │ Zinnel in a court-filing April 2014 that "forfeiture is designed to create a pool of assets from which

5 │ victims can be reimbursed" and that the government lawyers wanted to get the restitution recipients

6 │ paid right away. (Misc. Case #1, ECF #84, pgs. 29-32; Criminal Case ECF #314).

7 │     The same government lawyers should be stopped from taking a contrary position here.

8 │     On September 21, 2016, Plaintiff's lawyer AUSA Kevin Khasigian sent an email to Zinnel's

9 │ attorney Suzanne Luban admitting Plaintiff United States had marshalled $3,149,604 in assets in

10 │ Zinnel's Criminal Case, but "**No funds have been applied to restitution or the fine**." (emphasis

11 │ added). (Misc. Case #1, ECF #84, pg. 34; Criminal Case ECF #586-4, p. 19). The September 16,

12 │ 2016 email was a sentencing exhibit and was brought to the court's attention in Zinnel's Sentencing

13 │ Memorandum. (Criminal Case ECF nos. 586-4, p. 19, 615, p. 360).

14 │     After Zinnel received AUSA Khasigian's representation to another lawyer in an email

15 │ regarding the funds Plaintiff had marshalled for the restitution and fine, over the next year, Zinnel

16 │ wrote several letters to Plaintiff's lawyers trying to get Plaintiff United States to pay the restitution

17 │ recipients, including Zinnel's children paid. Plaintiff's counsel did not respond to Zinnel's letters.

18 │ Therefore, on December 5, .2017, Zinnel filed a Motion to Enforce the Judgment and Hold Plaintiff

19 │ and its lawyers in contempt of court for failing to pay the restitution recipients including Zinnel's

20 │ children $150,000 for college. (Misc. Case #1, ECF #84, pgs. 36-39; Criminal Case ECF nos. 409,

21 │ 

22 │ 586-4, pgs 21-40).

23 │     The Department of Justice, Asset Forfeiture and Money Laundering Section ("AFMLS")

24 │ published in 2016 an "Asset Forfeiture Policy Manual" that is a compilation of policies governing

25 │ the Department of Justice Asset Forfeiture Program. The purpose of the Policy Manual is to provide

26 │ Department of Justice prosecutors with a reference manual containing the policies and procedures

27 │ of the DOJ. For his resentencing in May 2019, Zinnel filed relevant portions of the AFMLS "Asset

28 │ Forfeiture Policy Manual" as a sentencing O exhibit. (Criminal Case ECF #586-4, pgs. 58-68), In

1  this Misc. Case #1, Zinnel has previously filed with the Court the relevant portions of the Policy

2  Manual with Zinnel's hand-written notations on the pages. (Misc. Case #1, ECF #84, pgs. 41-51).

3  The DOJ "Asset Forfeiture Policy Manual" states in relevant part:

4       This procedure enables the Attorney General to transfer forfeited funds to a court for

5  satisfaction of a criminal restitution order. (Misc. Case #1, ECF #84, pg. 42; Criminal Case ECF

6  #586-4 p. 59). Potential victims must be notified of the opportunity to file a petition for remission.

7  (Misc. Case #1, ECF #84, pg. 43; Criminal Case ECF #586-4 p. 60).  The Restoration Procedures

8  enable the government to complete the forfeiture. This permits victims to obtain fair compensation

9  from the forfeited assets, in accordance with the court's restitution order. (Misc. Case #1, ECF #84,

10  pg. 46; Criminal Case, ECF #586-4 p. 63).  Payment will be made only in accordance with the

11  court's restitution order. (Misc. Case #1, ECF #84, pg. 48; Criminal Case, ECF #586-4 p. 65). Is a

12  prosecutor bound, ethically or otherwise, to forego forfeiture in favor of restitution? (Misc. Case #1,

13  ECF #84, pg. 50; Criminal Case, ECF #586-4 p. 67). Department of Justice policy is to collect and

14  marshal assets for the benefit of victims. (Misc. Case #1, ECF #84, pg. 50; Criminal Case, ECF

15  #586-4 p.67). Thus, a prosecutor who uses forfeiture tools as a means to provide remission or

16  restoration of assets to crime victims fulfills any obligation that the prosecutor may have under the

17  Justice for All Act to crime victims. (Misc. Case #1, ECF #84, pg. 51; Criminal Case, ECF #586-4

18  p. 68). The government uses forfeited property to recompense victims. (Misc. Case #1, ECF #84,

19  pg. 51; Criminal Case, ECF #586-4, pg. 68).  At Zinnel's resentencing in May of 2019, Zinnel

20  informed the Court and Plaintiff's counsel that the restitution, fine, and special assessment in this

21  case are paid. (Misc. Case #1, ECF #84, pgs. 53-55; Criminal Case, ECF #615, pgs. 359-360).

22       An attorney can never lie to another attorney Plaintiff's attorney AUSA Kevin Khasigian's

23  representations to Zinnel and his attorney in the September 21, 2016 email (Misc. Case #1, ECF

24  #84, pg. 34; Criminal Case ECF #586-4 p. 19) and Opposition to Motion to Stay (Misc. Case #1,

25  ECF #84, pgs. 29-32; Criminal Case ECF #314) are party-opponent admissions which is a hearsay

26  exception under *Federal Rules of Evidence* 801(d)(2). Further, the Court must find the statements

27  made by the government lawyers in the court filing in the Criminal Case on March 3, 2014 (Criminal

1  Case, ECF #314; Misc. Case #1, ECF #84, pgs. 29-32) as judicial admissions that now cannot be
2  changed. See *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("**Judicial**
3  **admissions are formal admissions in the pleadings which have the effect of withdrawing a fact**
4  **from issue and dispensing wholly with the need for proof of the fact**") (emphasis added, internal
5  citation omitted); id. at 227. ("[S]tatements of fact contained in a brief may be considered admissions
6  of the party in the discretion of the district court").

7      Not only is AUSA Kevin Khasigian an attorney, but he is a federal prosecutor with a
8  heightened duty to be honest. In the Criminal Case, for Zinnel's May 2019 resentencing, Zinnel
9  briefed that an attorney can never lie to another attorney. (Criminal Case ECF nos. 615, pgs. 244-
10  248; 586-7, pgs. 27-66).

- Rules of professional conduct impose a duty of candor to the court and opposing counsel;
- In its simplest application, Rule 4.l(a) merely codifies a simple proposition: although **lawyers** are supposed to be zealous partisans of their clients, they **must draw the line at lying**. **A lawyer must not make misrepresentations to a court or another lawyer**. Rule 4.l (a) recodifies the traditional rule that a lawyer's word is his bond. (Criminal Case ECF nos. 615, p. 245; 586-7, p. 3).
- The failure to disclose a material fact is an ethical violation ... A lawyer's responsibility to act with candor and honesty necessarily requires disclosure of significant facts, even though the disclosure might not be in the interest of the client. (Criminal Case ECF nos. 615, p. 245; 586-7, p. 43).

22  Additionally, in Misc. Case #2, Zinnel requested that the Court take Judicial Notice that in
23  the criminal case entitled *United States v. Keith Raniere*, U.S.D.C. ED NY case number 18-cr-204-
24  NGG, Plaintiff United States of America, by and through its Department of Justice attorneys, take
25  the position that criminal forfeited funds in the criminal case will be used to pay defendant Keith
26  Raniere's victims $3.4 million. (Misc. Case #2, ECF #50). Again, this is a Judicial Admission by
27  government lawyers that forfeited funds must be used to satisfy Zinnel's restitution windfall
28  recipients.

1    Here is the proper accounting: funds with U.S. Attorney's Office the Court ordered in

2  judgment Amount Plaintiff has over-collected Zinnel addressed getting the victims paid at his

3  resentencing on May 3 & 6, 2019

4        $3,150,129.14

5        -$3,014,819.00

6    **$ 135,310.14 (the amount the government owes Zinnel)**

7

8    It is Zinnel's understanding that even though the government lawyers have represented to

9  this Court throughout the pendency of this Misc. #1, Misc. Case #2, and in the underlying Criminal

10  Case that Zinnel Zinnel's outstanding debt was $3,014,294.00, recently the seventh government

11  lawyer involved in Zinnel's case, AUSA Lynn Trinka Ernce, has taken the position that Zinnel now

12  owes **$1,314,485.06** to pay victim restitution, the $500,000 fine, and the alleged section 3011

13  litigation surcharge.  Thus, evidently, government lawyer AUSA Lynn Trinka Ernce, in a binding

14  admission on behalf of her client Plaintiff United States of America, admits that at least

15  **$1,699,808.94 has magically disappeared** from the alleged amount owing by Zinnel.  Zinnel also

16  understands that recently government lawyer AUSA Lynn Trinka Ernce has made an admission on

17  behalf of her client that *the Attorney General (acting through the DOJ Money Laundering and Asset*

18  *Section) exercised discretion to transfer some forfeited funds to **some victims***. *See* 28 C.F.R. § 9.8;

19  an admission previously made by another government lawyer on March 3, 2014. (see Criminal Case

20  ECF #314).  **The Court should ask why** for many years now, the government lawyers, including

21  AUSA Lynn Trinka Ernce, have represented to the Court that Zinnel's outstanding debt was

22  $3,014,294.00?

23

24    **Zinnel requests that Court order the government, including it lawyer AUSA Lynn**

25  **Trinka Ernce, provide Zinnel with an accounting of all funds that have been recently paid to**

26  **the restitution windfall recipients and provide Zinnel with all documents that evidence said**

27  **payments forthwith**.  Further, Zinnel requests that the government lawyers explain why "some

28  victims" were paid, but not all.

1    During his resentencing proceeding, Zinnel told the court and Plaintiff's counsel that "if the

2   litigation ends today, then there is no excuse for the Government or for AUSA Matthew Segal not

3   to get the victims paid." (Misc. Case #1, ECF #84, pgs. 57-63). However, Zinnel also stated his

4   resolve to fight for what's right is still strong and Zinnel will litigate if necessary. (Misc. Case #1,

5   ECF #84, pg. 60).

6    Zinnel told the court that this litigation can end today at this resentencing if just punishment

7   is imposed and the sentence promotes respect for the law. And if Zinnel was sentenced to what

8   similarly situated bankruptcy fraud defendants received which was between 19 and 36 months of

9   imprisonment. (Misc. Case #1, ECF #84, pg. 60).

10    Zinnel further stated:

11

12    If the right sentence is imposed, the litigation
      will stop. This case will end today. I will be
13    unhappy. I will be angry. I will grumble loudly.
      I will have a bitter taste in my mouth for the
14    rest of my life of how justice was served in this
      case, but I will go away. I will live a law
15    abiding life. I will do everything in my power not
      to be in the United States Government's cross hairs
16    again. I will stay out of any United States
      Courthouse." (Misc. Case #1, ECF #84, pgs. 60-61)
17
      "I want my life, my work, my family to mean something.
18    My present circumstances don't determine where I
      can go. They merely determine where I can start.
19    I plead with you to end Misc. Case #1, ECF #84, pg. 60case today. Stop the
      horror that's been inflicted on me and my loved ones.
20    My incarceration has been long and wrong."
      (Misc. Case #1, ECF #84, pg. 61)
21

22    "Your Honor, every saint has a past, every sinner
      has a future; I plea for compassion. I plea for
23    a just sentence. I plea to end this case today.
      Justice is not the way we punish those who do
24    wrong. It is the way we try to save them."
      (Misc. Case #1, ECF #84, pg. 62)
25

26    "Courage and conviction are rare qualities in a man.
      God has blessed me with both. I trust God's
27    perfect plan and timing. I believe that suffering is
      part of something bigger. My children, my family, and
28

---

1  I have suffered excessively in this case for a long
   time now. However, justice, like the will of God,
2  does not always manifest itself in the spur of the
   moment. You've got to wait it out, and when it
3  does, I will still be standing without a doubt.
   I implore you to end this case today with a sentence
4  that is reasonable, rational, and right."
5  (Misc. Case #1, ECF #84, pgs. 62-63)

6

7      Thereafter, Judge Troy L. Nunley sentenced Steve Zinnel to almost thirteen (13) years in

8  prison which is the longest sentence in the history of the United States for Bankruptcy Fraud by

9  25%. **The litigation continues, three (3) years later, unabated.; and likely will continue for the**

10 **next half a decade, or so.**

11

12 **7.    THE GOVERNMENT IS NOT ENTITLED TO A LITIGATION SURCHARGE IN ANY**

13 **AMOUNT LET ALONE $301,429.00 FOR SLEEPING ON ITS RIGHTS FOR 7 YEARS**

14      Under the law and facts, **the government is not entitled to a Litigation Surcharge**

15 **$301,429.00** because when the government filed this garnishment action on April 2, 2021, Zinnel's

16 outstanding debt was $0.00 because by **March 3, 2014** the government had marshalled

17 **$3,025,209.86** (Criminal Case, ECF #313; Misc. Case #1, ECF #84, pg. 34) and by September 16,

18 2016, he government had marshalled **$3,149,604.14** (Misc. Case #1, ECF #84, pgs. 11 & 34). Thus,

19 by the time the government filed this garnishment case seven (7) years after its claimed perceived

20 rights, the government had **over-collected $135,310.14** in the Criminal Case **that must be ordered**

21 **returned to Zinnel**. (Misc. Case #1, ECF #84, pgs. 11 & 34). Therefore, as the monetary obligation

22 in Zinnel's Criminal Case was below zero on April 2, 2021 when the government filed this

23 garnishment case, **the government is not entitled to any Litigation Surcharge let alone**

24 **$301,429.00 for sleeping on their perceived rights for seven (7) long years** and wasting a forest

25 full of trees litigating and generating paper.

26 ///

27 ///

28 ///

## 8. ZINNEL AS AN ALLEGED TRUST BENEFICIARY, HAS NO LEGAL TITLE OR OWNERSHIP INTEREST IN TRUST ASSETS

In this case, government lawyers for Plaintiff United States of America improperly seek to garnish property now held by Castana Trust. This includes a TD Ameritrade IRA account ending in *0613. This, the government cannot do. Under California law, a trust beneficiary has no legal title or ownership interest in trust assets. *Saks v. Damon Raike & Co.*, 7 Cal.App. 4th 13 419, 427 (1992). Therefore, Steven Zinnel owns none of the Castana Trust Assets and Steven Zinnel is not the Trustee of the Castana Trust.

## 9. IT IS COMPLETELY DISPUTED THAT THE IRA IS "CURRENTLY HELD BY STEVEN ZINNEL"

It is Zinnel's understanding that a government lawyer, to wit ASUA Lynn Trinka Ernce, is again misrepresenting to a Court by filing papers with the Court stating that "There is no dispute that the IRA currently held by Steven Zinnel, not the Castana Trust, because their mother never changed the beneficiary designation to the Trust or took the steps required by the Trust to make the IRA trust property. Au contraire.

**Both Steven Zinnel and David Zinnel dispute that the TD Ameritrade IRA Rollover account ending in *0613 is held solely by Steven Zinnel.**

Further, Article 2.1 of Ardith Ferris' Last Will gifts her entire estate to the Castana Trust. This includes the TD Ameritrade IRA account ending in *0613. According to the Castana Trust and Last Will of Ardith Ferris, the Castana Trust owns all of Ardith Ferris' assets including the TD Ameritrade IRA Rollover account ending in *0613. Therefore, under California law, the Castana Trust beneficiaries, Steven and David Zinnel, have no legal title or ownership interest in the trust assets. *Saks v. Damon Raike & Co.*, (1992) 7 Cal. App. 4th 419, 427.

///

///

///

1

## 10. THE GOVERNMENT LAWYERS CONTINUE TO LIE TO THE COURT

2      Many times in the Criminal Case, Zinnel has informed the court that the government lawyers

3 continue to lie to the court· in an attempt to win at all costs and malign Zinnel with the court.

4 Prosecutors, as servants of the law, are subject to constraints and responsibilities that do not apply

5 to other lawyers; they must serve truth and justice first. *United States v. Kojayan*, 8 F.3d 1315, 1323

6 (9th Cir. 1993). Their job is not just to win, but to win fairly, staying within the rules. *Berger v.*

7 *United States*, 295 U.S. 78, 88 (1935). It was almost 80 years ago, when in 1940 the U.S. Attorney

8 General, Robert Jackson stated:

9      "The prosecutor has more control over life, liberty, and reputation, than any other

10      person in America. Therein is the most dangerous power of the prosecutor; he will

11      pick the people that he thinks he should get, rather than cases that need to be

12      prosecuted....It is in this realm—in which **the prosecutor picks some person whom**

13      **he dislikes or desire to embarrass**, then looks for the offense, that the greatest

14      danger or abuse of prosecuting power lies. **It is here that law enforcement becomes**

15      **personal**, and the real crime becomes that of being unpopular.

16      As the Ninth Circuit has opined, "Much of what the United States Attorney's Office does

17 isn't open to public scrutiny or judicial review." *United States v. Redondo-Lemos*, 955 F.2d 1296

18 (9 CA, 1992). It is therefore particularly important that the Department of Justice attorneys

19 discharge their responsibilities fairly, consistent with due process. But the temptation is always

20 there: It's the easiest thing in the world for people trained in the adversarial ethic to think a

21 prosecutor's job is simply to win. "It is disturbing to see the Justice Department change the color

22 of its stripes to such a significant degree, portraying an individual as virtuous and honorable

23 [government witnesses Thomas and Julia Wilbert] or as corrupt and perfidious [Zinnel and Eidson],

24 depending on the strategic necessities of the separate litigation." *United States v. Katter*, 840 F.2d

25 118, 137 (1 CA, 1988).

26

27 ///

28 ///

1

California *Business and Professions Code* § 6068 defines the duties of an attorney:

2

A. California *Business and Professions Code* § 6068 and

3

California *Rules of Professional Conduct,* Rule 5-200

4

Under the *State Bar Act*, an attorney may only use arguments and methods that "are

5

consistent with truth, and [may] never seek to mislead the judge or any judicial officer by an artifice

6

or false statement of fact or law" *Cal. Bus. & Prof. Code* § 6068(d)  and "to advance no fact

7

prejudicial to the honor or reputation of a party or witness, unless required by the justice of the case

8

with which he or she is charged." *Cal. Bus. & Prof. Code* § 6068(f).

9

Under the Rules of Professional Conduct, "[i]n presenting a matter to a tribunal, a member:

10

(A) Shall employ, for the purpose of maintaining the causes confided to the member such means

11

only as are consistent with truth; (B) Shall not seek to mislead the judge, judicial officer, or jury by

12

an artifice of false statement of fact or law; (C) Shall not intentionally misquote to a tribunal the

13

language of a book, statute, or decision ..." *Cal. Rules of Professional Conduct,* Rule 5-200.

14

This subsection "unqualifiedly require[s] an attorney to refrain from acts which mislead or

15

deceive the Court." *Oliner v. Kontrabecki (In re Cent. European Indus. Dev. Co.)*, 51 Bankr. Ct.

16

Dec. 31, 2009 Bankr. LEXIS 639, *17 (Bankr. N.D. Cal. 2009), citing *Di Sabatino v. The State Bar*,

17

27 Cal.3d 159, 162, 162 Cal. Rptr. 458, 606 P.2d 765 (1980). "Furthermore, it is settled that

18

concealment of material facts is just as misleading as explicit false statements . . . ." *Oliner, 2009*

19

*Bankr.* LEXIS 639, at *18, citing *Di Sabatino*, 27 Cal.3d at 163. "These same rules of candor and

20

truthfulness apply when an attorney is communicating with opposing counsel." *Oliner*, 2009 Bankr.

21

22

LEXIS 639, at *18, citing *Hallinan v. State Bar*, 33 Cal. 2d 246, 249, 200 P.2d 787 (1948).

23

California *Business and Professions Code* § 6128 concerns misdemeanors in practice and

24

deception or corruption and states in relevant part:

25

Every attorney is guilty of a misdemeanor who either:

26

**(a) Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent**

27

**to deceive the court <u>or</u> any party**.

28

1         Any violation of the provisions of this section is punishable by imprisonment in the county

2 jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500),

3 or by both.

4        B. <u>Rule 11 Sanctions</u>

5         The top left of the government's filings list the California licensed attorneys filing papers

6 with the Court. Pursuant to Rule 11 of the *Federal Rules of Civil Procedure (b)*, by presenting a

7 pleading, written motion, or other paper to the Court, the attorney or unrepresented party certifies

8 that to the best of the person's knowledge, information, and belief, formed after an inquiry

9 reasonable under the circumstances:

10         (1) it is not being presented for any improper purpose, such as to harass, cause

11         unnecessary delay, or needlessly increase the cost of litigation;

12         (2) the claims, defenses, and other legal contentions are warranted by existing law

13         or by a nonfrivolous argument for extending, modifying, or reversing existing law

14         or for establishing new law;

15         (3) **the factual contentions have evidentiary support** or, if specifically so

16         identified, will likely have evidentiary support after a reasonable opportunity for

17         further investigation or discovery;

18 Rule 11(c)(3) concerns sanctions and states in relevant part:

19

20         **On the Court's Initiative**. On its own, the court may order an attorney, law firm, or

21         party **to show cause why conduct specifically described in the order has not**

22         **violated Rule 11(b).**

23         Fed. R. Civ. P. 11 "imposes on any party who signs a pleading, motion, or other paper . .

24 an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and

25 that the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v.*

26 *Chromatic Comm'ns. Enterprises, Inc.*, 498 U.S. 533, 551 (1991).

27

28

---

1

2       The Ninth Circuit has explained that

3       ... sanctions should be imposed if (1) "after reasonable inquiry, a competent attorney

4       could not form a reasonable belief that the pleading is [or other paper] is well

5       grounded in fact and is warranted by existing law or a good faith argument for the

6       extension, modification or reversal of existing law" or if (2) "a pleading [or other

7       paper] has been interposed for any improper purpose." *Golden Eagle Dist. Corp. v.*

8       *Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986); *Townsend v. Holman*

9       *Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). A pleading is frivolous if it

10      is baseless and made without a reasonable and competent inquiry. Id. The subjective

11      intent of the pleader or movant to file a meritorious document is irrelevant; the

12      standard is one of "reasonableness." *Zaldivar v. City of Los Angeles*, 780 F.2d 823,

13      830 (9th Cir. 1986) (abrogated on other grounds).

14      **These basic requirements of candor and honesty leave no room for playing games with the facts. They do not permit a lawyer to mention a technically true fact and then blow it out of all proportion to mislead the Court.**

15      The government lawyers represent to the court that Zinnel

16      "still owes $3,014,294" in the Criminal case. However, Zinnel has demonstrated herein and at his resentencing in May of 2019.

17      Again, a government lawyer misrepresented .to the court that "[Zinnel] owes over $3M in unpaid criminal monetary penalties." (Criminal Case ECF #670, pg. 1). Lawyer Didier continued with his lies by stating Zinnel "is the sole beneficiary of an account with a current balance of over $1.3 M." (Criminal Case ECF #670, pf. 1). This is a bald-faced lie. In the government's opposition to Zinnel's recent bail motion, the government attached a copy of Zinnel's mother's Trust entitled "Castana Trust. (Criminal Case ECF #668-1, pgs. 18-40). The government also filed Zinnel's mom's Last Will and Testament. (Criminal Case ECF #668-1, pgs. 41-49).

18      Both the Castana Trust and will were executed in March 2009. As of March 2009, the Castana Trust owned all of Ardith Ferris's assets. However, attorney Kurt Didier ignores this by

1    filing an exhibit for a TD Ameritrade account in the name of Ardith Ferris that was signed on August
2    12, 2005. (Criminal Case ECF #670-1, pg. 8). Thus, the TD Ameritrade account document pre-
3    dates the creation of the Castana Trust by almost four (4) years. Compare Criminal Case ECF nos.
4    670-1, pg. 8 to 668-1, pg. 39. In aggravation, AUSA Kurt Didier filed the Ex Parte Application
5    AFTER Zinnel filed his Reply to the Government's Opposition to Zinnel' s ,bail motion which cites
6    binding law that Zinnel as a trust beneficiary has no legal title or ownership interest in trust assets."
7    (Criminal Case ECF #669, pg. 4 citing *Saks v. Damon Raike & Co*, 7 Cal. App. 4th 24 419, 427
8    (1992). As the Reply states, Zinnel owns none of the Castana Trust Assets and Zinnel is not the
9    Trustee of the Castana Trust. (ECF #669).

10       AUSA Kurt Didier continues his lies by claiming Zinnel "failed to disclose his future
11   interest in an account." (Criminal Case ECF #670, pg. 3). That's absurd. That would be like saying
12   Zinnel should have disclosed in 2019, that he was going to win the California mega-millions lottery
13   on April 3, 2061! Zinnel has received no assets from the Castana Trust and Zinnel has essentially
14   no contact whatsoever with the sole Trustee of the Castana Trust. AUSA Kurt A. Didier also lies to
15   the Court when he writes "The United States recently discovered he is the sole beneficiary ... "
16   (Criminal Case ECF 670, pg. 1.) On December 19 1 2019, AUSA Kurt A. Didier filed an Application
17   to take the deposition of the Trustee of the Castana Trust Trustee. (see Subpoena Case, ECF #1).
18   Kurt Didier subpoenaed 27 categories of documents. (Subpoena Case ECF #1, pgs. 7-10). Document
19   requests numbers 26 and 27 requested documents relating to any inheritance or money payable to
20   Steven Zinnel. (ECF #1, pg. 10). Again, in the Application for Subpoena, AUSA Kurt Didier lied
21   to the court and represented that Zinnel owed over $3,000,000 when in fact AUSA Kurt Didier knew
22   Zinnel owed nothing. (Subpoena Case ECF #1, pg.2).
23

24       According to the application, the Trust's Trustee's deposition was set for January 3, 2020.
25   Id. Thus, the United States did not just discover the Trust's, as opposed to Zinnel's, TD Ameritrade
26   Account. Zinnel requests that the Court admonish the government lawyers and report the
27   misconduct of the government lawyers to the State Bar and the DOJ's Office of Professional
28   Responsibility.

1   Fighting for what is Right...Seeking Justice in an unjust case,

2

3   *Steven Zinnel*

4

5   Steven Zinnel, In Pro Se                                    Dated: May 31, 2022

1

2

## CERTIFICATE OF SERVICE

3    I hereby certify that at the date of service, I was over the age of 18. I further certify that on

4    the date specified executed below, I served the foregoing document(s) on the following persons

5    and/or organization:

6

| Matthew D. Seagal | Kenneth Gregory Peterson |
|---|---|
| Lynn Trinka Ernce | K. Greg Peterson, APC |
| United States Attorney's Office | 455 Capitol Mall, Suite 325 |
| 501 I Street, Suite 10-100 | Sacramento, CA 95814 |
| Sacramento, CA 95814 | |
| Attorneys for the United States of America | Attorneys for David Zinnel |

11

12    I further certify I served the foregoing document(s) by the following method checked:

13    ☑ **BY MAIL**: I deposited such envelope in a U.S. Mail receptacle, with postage prepaid,
14    and addressed as above described.

15    [ ] **BY ELECTRONIC MAIL**: I caused such documents listed above to be transmitted via
      electronic mail to the e-mail address(es) as above described.

16

17    Executed on **July 1, 2022**, at Aliso Viejo, California. I certify under penalty of perjury under

18    the laws of the United States of America that the foregoing is true and correct.

19

20

21    Steven Zinnel
      11 Verdin Lane
22    Aliso Viejo, CA  92656

23

24

25

26

27

28